# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

December 18, 2015

VIA ECF AND HAND DELIVERY

Judge Paul G. Gardephe
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007-1312

Re:   *United States v. Kaleil Isaza Tuzman*, No. S1 15 Cr. 536 (PGG)

Dear Judge Gardephe:

On behalf of Mr. Isaza Tuzman, we write in response to the government's submissions of December 11 and 14, 2015. With the utmost respect for the federal prosecutors at the U.S. Attorney's Office ("USAO"), we respectfully submit that, in their latest submissions, the government: (1) mistakenly overlooks the most salient facts that warrant Mr. Isaza Tuzman's immediate return to the United States; (2) mistakenly fails to address inaccuracies in its prior statements to this Court based on information they likely were provided by other authorities; and (3) unfortunately, in the course of defending the apparent position of authorities outside the USAO, minimizes the past and continuing abuse resulting from the unprecedented request to provisionally arrest Mr. Isaza Tuzman, a U.S. citizen, in Colombia on U.S. securities and accounting fraud charges. Tragically, unfortunately, and somewhat shockingly, the U.S. authorities are continuing to miss a fundamental point—Mr. Isaza Tuzman is begging for their assistance to come home now to face the charges and clear his name. And, although the government does not suggest for a moment that they would seek his detention in the United States on the pending charges, it is a terrible tragedy that Mr. Isaza Tuzman has suffered abuse ███████████████████████████████████████████████████████████ in a super-maximum facility in Colombia. In the interests of justice, the U.S. Department of *Justice* should do all it can to expedite Mr. Isaza Tuzman's immediate return and make sure other U.S. authorities live up to their responsibility to protect and safeguard U.S. citizens abroad.

Despite submitting over 200 pages of briefing and supporting documents to this Court, the government has yet to identify any effort by the U.S. State Department and Office of International Affairs to find a "creative solution" to ensure Mr. Isaza Tuzman's immediate

# GIBSON DUNN

Judge Paul G. Gardephe
December 18, 2015
Page 2

return to the United States.[1] *See* Nov. 20, 2015 Hr'g Tr. at 26:12-27:5. For the reasons set forth in this letter, despite the government's contentions otherwise and with great respect for the federal prosecutors handling this matter, we respectfully request the Court's assistance to ensure Mr. Isaza Tuzman's swift return to the United States. We respectfully renew our request that (1) the Court temporarily dismiss the arrest warrant to enable Mr. Isaza Tuzman to voluntarily surrender (with handcuffs, if required) to law enforcement at the U.S. Embassy one block from the facility where he is currently detained, or (2) U.S. and Colombian authorities agree to a combination of reasonable conditions that would permit Mr. Isaza Tuzman to be released on secured bail pending extradition.

## Omissions and Other Undisputed Facts

The government's most recent submissions serve to confirm Mr. Isaza Tuzman's main contentions about his arrest, extradition, and detention. Significantly, the government elides over or effectively concedes certain critical contentions by Mr. Isaza Tuzman:

- By omission, the government appears to assent to the fact that there is no substantiation for their previous statement on November 18th that Mr. Isaza Tuzman "is not the only United States citizen being held *right now* at La Picota pending extradition to the United States on 'white collar' fraud charges" and that "[i]n recent years, approximately one dozen United States citizens, including numerous 'white collar' defendants . . . have been held at La Picota pending extradition." 11/18/15 USAO Ltr. at 3. Whoever provided that information to the USAO did so inaccurately, and the government should acknowledge that its sources of information in Colombia or elsewhere failed to provide correct and complete information to them and, in turn, this Court. *See* 12/2/15 Tuzman Ltr. at 2-5.

- It now appears to be undisputed that the provisional arrest of Mr. Isaza Tuzman in Colombia was unprecedented, and that (a) the four other Americans who were extradited on so-called "white collar" charges from Colombia over the last 11 years had all been fugitives at the time of their extradition (evading an arrest warrant by fleeing to Colombia); (b) that none were charged with remotely comparable white

---

[1] The government contends that the "primary concern" motivating the Court's "creative solution" directive was the preservation of Mr. Isaza Tuzman's safety. *See* 12/14/15 USAO Ltr. at 1. That is not entirely accurate. The Court was clear in its directive that the government "think creatively," Hr'g Tr. at 26:12-13, to immediately return Mr. Isaza Tuzman to the United States "to answer the charges that are brought against him," *id.* at 26:21-22. *See also id.* at 50:10-15 ("What I have asked the government to do" is to determine "whether there is anything else further that could be done to expedite Mr. Tuzman's arrival in the United States to stand trial on the charges against him. That's what I am asking you to do.").

## GIBSON DUNN

Judge Paul G. Gardephe
December 18, 2015
Page 3

    collar offenses; and (c) that two of them (the 76-year-old 
    )² were apparently never even housed at Patios 12 or 16 at La
    Picota.³  *See* 12/2/15 Tuzman Ltr. at 2-5.

- Despite submitting numerous reports and memoranda from U.S. and Colombian officials,⁴ the government appears to have dropped any claim that Mr. Isaza Tuzman's immediate transfer to U.S. authorities in Colombia would "imperil . . . one of the Government's strongest bilateral law enforcement relationships in the Western Hemisphere." *See* 11/18/15 USAO Ltr. at 1-2.

- And it now appears that the government acknowledges and is comfortable exercising its extraordinary influence and suasion over Colombian authorities. Indeed, the transfer of Mr. Isaza Tuzman from La Picota to the Colombian Attorney General's "Bunker" where Mr. Isaza Tuzman is currently held the very next day after this Court's hearing seems to reflect that the U.S. government has far more influence than they originally gave themselves credit for to ensure that U.S. citizens in Colombian prisons are not subjected to ▮▮▮▮ while detained in Colombia at the U.S. government's request.

In addition to these notable concessions, there are several critical facts that appear to be undisputed:

- Both parties agree that Mr. Isaza Tuzman is currently housed in a cell cluster within the Bunker that consists primarily of an approximately 65 square foot cell attached to a locked and solitary 15-foot long corridor leading to an approximately 100 square foot "common room" (which is effectively accessible only to Mr. Isaza Tuzman). *See* 12/2/15 Tuzman Ltr. at 9; 12/11/15 USAO Ltr., Exs. A at 1 & C at 2.

- It is undisputed that Mr. Isaza Tuzman is the only prisoner housed in his holding area, and that aside from lawyer and other scheduled outside visits, Mr. Isaza Tuzman is

---

² The government has not attempted to explain the public interest in continuing to seal Exhibit A to the Boynton Declaration. *See* 12/2/15 Tuzman Ltr. at 3 n.1.

³ The government has not explained where ▮▮▮▮ was, in fact, housed and why Mr. Isaza Tuzman was not detained in the same location. *See* 12/2/15 Tuzman Ltr. at 4 n.3.

⁴ The government does not appear to dispute that the summary of U.S. Embassy Vice-Consul Cassandra Payton's October 29, 2015 meeting with Mr. Isaza Tuzman at La Picota was not accurate in the government's November 18, 2015 letter. *See* 12/2/15 Tuzman Ltr. at 13 n.15.

**GIBSON DUNN**

Judge Paul G. Gardephe
December 18, 2015
Page 4

effectively detained in solitary confinement. *See* 12/2/15 Tuzman Ltr. at 9.

- It appears to be undisputed that this form of long-term confinement has been proven to be psychologically damaging, and not warranted by any penological interest. *See id.* at 10-11.

- Both parties agree that the fluorescent lights in Mr. Isaza Tuzman's holding area remain on 24-hours a day, and that Mr. Isaza Tuzman has access to only cold running water. *See* 12/2/15 Tuzman Ltr. at 9; 12/11/15 USAO Ltr., Ex. A at 1.

- It appears to be undisputed that it could still take 6 months and more—even under "simplified extradition"[5]—for Mr. Isaza Tuzman to be extradited to the United States, *see* 11/25/15 Boynton Declaration at ¶ 13, and that the extradition period will be delayed by the upcoming holidays (when the court will be closed from December 18 through January 10), *see* 11/25/15 Bernate Ochoa Declaration at ¶ 17.

### Conditions of Mr. Isaza Tuzman's Detention in Colombia

Unfortunately, those whom the federal prosecutors rely on for their position here devote much of their submissions to a discussion of minutiae that has little bearing on Mr. Isaza Tuzman's actual welfare. For example, the emphasis on Mr. Isaza Tuzman's wardrobe and occasional access to coffee and donuts (provided by his lawyer to Bunker staff and other

---

[5] The government acknowledges, as it must, that simplified extradition is not the same as waiver of extradition, and that it still typically takes at least six to nine months under simplified extradition for a detainee to be extradited from Colombia. *See* 11/25/15 Boynton Declaration at ¶¶ 13, 17. The government offers no timeframe by which Mr. Isaza Tuzman would be extradited to the United States under simplified extradition. That is because the Supreme Court of Colombia must still make a determination in simplified extradition that extradition complies with Colombian law. *See* 11/25/15 Bernate Ochoa Declaration at ¶ 16. As a result, we have been informed that traditional extradition can actually proceed faster than simplified extradition (where identity verification has been waived, as in Mr. Isaza Tuzman's case) because in traditional extradition, unlike simplified extradition, the Supreme Court of Colombia benefits from the defendant's timely and full briefing and argument on the issues (as opposed to relying almost exclusively on the Inspector General's Office and court staff to analyze the issues on a defendant's behalf). For avoidance of doubt, should the Court grant immediate relief as requested in this letter (i.e., vacating the arrest warrant or granting a bail hearing), Mr. Isaza Tuzman will move to waive any objections to the extradition proceedings, and voluntarily surrender to U.S. authorities for immediate return to the United States. However, if required to go through the extradition process in Colombia, Mr. Isaza Tuzman will seek to expedite the process by enabling his counsel in Colombia to explain numerous failures in connection with the requested extradition.

**GIBSON DUNN**

Judge Paul G. Gardephe
December 18, 2015
Page 5

inmates as a Thanksgiving treat) are ill-advised and disappointing. *See* 12/11/15 USAO Ltr. at 1 & Exs. C at 3, D at 2, 3; 12/14/15 USAO Ltr. at 2.[6]

Focusing on these and other trivial details diminishes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ to which Mr. Isaza Tuzman has already been subjected and the inhumane conditions to which he continues to be subjected. Unfortunately, those U.S. authorities responsible for failing to come up with a "creative solution" to expedite Mr. Isaza Tuzman's extradition continue to overlook that the ends do not justify the means and, for whatever reason, fail to distinguish the "forest" from the "trees." Relying on trite and petty allegations distracts from the fundamental issue here: A U.S. citizen, who has been subject to abuse in intolerable, subhuman conditions, is being denied his repeated requests for an immediate return to the United States so that he can face the charges against him and clear his name. This is unfortunately the same attitude and approach that resulted in the government's disregard for weeks to months when Mr. Isaza Tuzman ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Only after Mr. Isaza Tuzman's counsel finally brought these circumstances and conditions to this Court's attention, and after this Court made significant and compelling statements regarding those circumstances, did the authorities in the U.S. Department of State (and perhaps Colombia) seem to take the necessary steps to ensure that Colombian authorities understood the seriousness of the matter—such that Mr. Isaza Tuzman was immediately moved out of La Picota.

Further proving the United States' effective ability to control or influence Colombian authorities is the fact that many marginal improvements to the detention conditions in the Bunker were implemented immediately following Mr. Isaza Tuzman's December 2 submission to this Court complaining of those conditions. It was only on or after December 4, 2015, that Mr. Isaza Tuzman was given greater freedom of movement within his enclosed cell area, was provided a blanket to hang on his cell bars (referred to as a "curtain," *see* 12/14/15 USAO Ltr., Ex. B at 3) to help block the fluorescent light at night, and that his belongings were placed in the previously off-limits adjoining cell.[7] These changes to his

---

[6] Despite making repeated references to "coffee" and "donuts" (of which they partook), the memoranda submitted by Colombian Inspector General's Office officials Germán Mateus and Arquimedes Sepulveda—representatives of a body within the Colombian government described in the government's submission as an independent "watchdog" agency, *see* 12/14/15 USAO Ltr., Ex. C at ¶ 16—failed to document the vast majority of their interview with Mr. Isaza Tuzman, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. One would think that such information would be most relevant to the Inspector General's Office and its "mission" in visiting Mr. Isaza Tuzman. Even more troubling, however, is that the Colombian Inspector General's Office did not submit (or perhaps even provide the U.S. government) with the report signed by Mr. Isaza Tuzman for review by this Court.

[7] Mr. Isaza Tuzman's belongings were moved to the adjoining cell by Mr. Rodríguez (or his agent), not Mr. Isaza Tuzman, shortly before the filming of Mr. Isaza Tuzman's holding area.

GIBSON DUNN

Judge Paul G. Gardephe
December 18, 2015
Page 6

conditions of confinement occurred immediately before the Director of the Bunker, Mr. Miguel Rodríguez, took pictures and videos of Mr. Isaza Tuzman's holding area for the benefit of the government's December 14 submission.

Similarly, it was not until after our December 2 submission that Mr. Isaza Tuzman received any meaningful medical visits. There are two noteworthy points that must be emphasized in this regard. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This is absolutely intolerable and we would hope that the U.S. authorities would understand why Mr. Isaza Tuzman would urgently need such assistance at this point in time. *Second*, despite multiple urgent requests for medical attention since mid-October ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Mr. Isaza Tuzman received for the first time on December 15—more than two months later—appointments at a local hospital with a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The doctors further stated that the lack of treatment of this condition over the past two months may have resulted in other complications that now require additional medical attention.[8]

Unfortunately due to the USAO's reliance on others for information, there are several additional inaccuracies in and misimpressions left from the government's submissions:

1) Mr. Isaza Tuzman does not regularly have 2-3 hours of access to the "patio" (which is an approximately 20 by 25 foot caged, concrete enclosure with limited direct sunlight and cold temperatures) each day, contrary to the memorandum by U.S. Embassy American Citizen Services ("ACS") Chief Robin Busse, *see* 12/11/15 USAO Ltr., Ex. A at 1, and report by Mr. Rodríguez, *see* 12/14/15 USAO Ltr., Ex. B at 13. The only times Mr. Isaza Tuzman has had such stretches of access to the patio is during certain outside visits (e.g., by counsel). *See* 12/2/15 Tuzman Ltr. at 9. Otherwise, he is



[8] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

# GIBSON DUNN

Judge Paul G. Gardephe
December 18, 2015
Page 7

    typically granted between 15 minutes and one hour per day of "outside" time on the patio.

2) There is no natural light in Mr. Isaza Tuzman's cell or holding area. *See* 12/2/15 Tuzman Ltr. at 9. The cell and holding area are entirely encased in cinder blocks, aside from an approximately 3 by 4 foot highly opaque and barred glass pane in the "common room" that faces the wall of an adjacent structure.

3) ACS Chief Mr. Busse (whom the government mistakenly referred to as a female in its December 11 letter) did not meet with Mr. Isaza Tuzman during his "welfare visit" to the Bunker, despite Mr. Isaza Tuzman and his counsel's repeated requests for such a meeting. *See* 12/2/15 Tuzman Ltr. at 12 n.14.

4) Although Mr. Rodríguez purportedly denied making statements to Mr. Isaza Tuzman and his U.S. counsel Ms. Blaurock when questioned by the FBI about those statements, *see* 12/14/15 USAO Ltr., Ex. C at ¶¶ 8-13, those denials should not be credited. Tellingly, those denials did not appear in a sworn declaration or even in Mr. Rodríguez's signed report attached to the government's December 14 submission, *see* 12/14/15 USAO Ltr., Ex. B. Rather, these hearsay statements from Mr. Rodríguez have been submitted through an FBI agent.[9] But it is unclear whether Mr. Rodríguez was informed of the purpose of the interview or that his statements to the FBI would be communicated to and relied upon by the Court. Is it any wonder that, when unexpectedly questioned by the FBI about his statements arguably impugning other actors within the Colombian criminal justice system and undermining the United States' position in this case, Mr. Rodríguez would deny or change the tone of those statements? Respectfully, there were multiple obvious pressures on Mr. Rodríguez during that FBI interview and he had ulterior motivations for his denials. The FBI agent's hearsay statements do nothing to credibly undermine Ms. Blaurock's sworn testimony regarding Mr. Rodríguez's comments made in the presence of both Ms. Blaurock and Mr. Isaza Tuzman, and read back to Mr. Rodríguez at the time to ensure accuracy.[10]

---

[9] Despite assurances from the government that the FBI would visit Mr. Isaza Tuzman at La Picota ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *see* 11/10/15 Tuzman Ltr. at 10, 12 & Ex. 8, to date the FBI has not met with Mr. Isaza Tuzman in Colombia, even though an FBI agent apparently went to lengths to interview Mr. Rodríguez.

[10] Mr. Isaza Tuzman has extensively cooperated with Colombian investigations and inquiries. Specifically, he has been interviewed by and/or has made declarations to officials of: 1) the local Judicial Police of INPEC at La Picota; 2) the Judicial Police assigned to INPEC's national headquarters; 3) the U.S. Embassy to Colombia; 4) the Judicial Police of the Fiscalia, Cuerpo Técnico de Investigación ("CTI"); 5) the Attorney General of

*(Cont'd on next page)*

# GIBSON DUNN

Judge Paul G. Gardephe
December 18, 2015
Page 8

### Requested Remedial Conduct

Finally, no "creative solution[s]" appear to have been considered or evaluated to ensure Mr. Isaza Tuzman's safe and immediate return to the United States, and there has been no real showing that such a "creative solution" cannot be devised.

In its December 14, 2015 letter, the government relies heavily on a "memorandum" from Ana Fabiolo Castro Rivera, Director of International Affairs for the Colombian Attorney General's Office. Director Castro claims that Colombian authorities would be unable "to intervene" to facilitate Mr. Isaza Tuzman's voluntary surrender *after* his extradition request is vacated.[11] *See* 12/14/15 USAO Ltr. Ex. D at 2-3. But that misses the point. Director Castro tellingly does not deny that Colombian authorities *have the ability* to deliver Mr. Isaza Tuzman to U.S. authorities (e.g., to the U.S. embassy across the street from the Bunker) *immediately before* this Court vacates any arrest warrant, and that once vacated, there is no impediment to the transfer of Mr. Isaza Tuzman from Colombian authorities to U.S. authorities for his immediate and safe transport to the United States.[12] It is further

---

*(Cont'd from previous page)*

Colombia; 6) and the Colombian Inspector General's Office. Despite Mr. Isaza Tuzman addressing systemic corruption and individual abuse, to date none of these interviews have resulted in a single follow-up of which Mr. Isaza Tuzman is aware. Instead, there appears to be muzzling of the concerns raised. For example, Mr. Isaza Tuzman was threatened to be moved to La Combita prison when he first reported the abuse against him. Furthermore, the report that was provided to the Colombian Inspector General's office detailing Mr. Isaza Tuzman's inhumane treatment was not submitted to this Court, nor was the document Mr. Isaza Tuzman provided to Mr. Rodríguez ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (and was generated at Mr. Rodríguez's suggestion to further the alleged investigations of both corruption within INPEC and alleged security threats to Mr. Isaza Tuzman), yet seems to have been ignored.

[11] Based solely on Director Castro's claim that Colombian authorities "would be unable to intervene in the [voluntary surrender] process to ensure [] compliance" if an extradition request is withdrawn, *see* 12/14/15 USAO Ltr., Ex. D at 3, the government concludes that the "Attorney General . . . will not participate in any effort to arrange a voluntary surrender outside its well established extradition process," *see* 12/14/15 USAO Ltr. at 3. That is a broad and illogical leap. Surely Colombian law enforcement has previously assisted the United States in voluntary surrenders from Colombia "outside its well established extradition process."

[12] The government has not shown that the Court lacks authority to vacate the arrest warrant in order to ensure Mr. Isaza Tuzman's return to the United States. The government's reliance on *United States v. Santtini*, 963 F.2d 585 (3d Cir. 1992), a non-binding Third Circuit case, is misplaced. There, the Third Circuit found that the district court did not have the authority to order the government to refrain from acting on a valid arrest warrant, which would have had the effect of preventing the subject's arrest. *Id.* at 595. Here, Mr. Isaza Tuzman requests that the Court dismiss a previously acted-upon arrest warrant—a situation not addressed by Federal Rule of Criminal Procedure 9—only for a very temporary period of time to permit Mr. Isaza Tuzman to be arrested by U.S. authorities on U.S. soil (the embassy), in order to expedite his return to the United States.

*(Cont'd on next page)*

**GIBSON DUNN**

Judge Paul G. Gardephe
December 18, 2015
Page 9

noteworthy that Director Castro—who, according to the government, "handles extraditions and international affairs for the Colombian Attorney General's Office," *see* 12/14/15 USAO Ltr. at 3—never once suggests in her memorandum that the dismissal of Mr. Isaza Tuzman's arrest warrant and his subsequent transfer to U.S. authorities would remotely harm diplomatic or law enforcement relations between the United States and Colombia.

Nor does the government dispute that, even if Mr. Isaza Tuzman simply were released from Colombian detention with the government's consent, there are a combination of reasonable conditions that this Court (or a Colombian court) can impose to ensure Mr. Isaza Tuzman's swift and voluntarily appearance before Your Honor. The government has never suggested that they would seek to detain Mr. Isaza Tuzman in the United States on the pending charges. The government thus should not be able to take the position that there is no combination of conditions that would secure his return to the United States.

We thank the Court in advance for its consideration of these issues and request a conference at the Court's earliest availability.

---

*(Cont'd from previous page)*

Such action would not interfere with the government's right to enforce the law or prosecute Mr. Isaza Tuzman. In any event, the government submits that the Court has the authority to vacate an arrest warrant upon its motion. The government's continued refusal to file such a motion, despite no demonstrable risk to the U.S.-Colombian diplomatic relationship, is unreasonable.

**GIBSON DUNN**

Judge Paul G. Gardephe
December 18, 2015
Page 10

Respectfully,

*Avi Weitzman*

Avi Weitzman
Reed Brodsky

AW

cc: Amanda Blaurock, Esq.
    Viet Dinh, Esq.
    Edward Young Kyu Kim, USAO/SDNY (*via ECF & E-Mail*)
    Sarah Eddy McCallum, USAO/SDNY (*via ECF & E-Mail*)
    Damian Williams, USAO/SDNY (*via ECF & E-Mail*)
    Andrea Griswold, USAO/SDNY (*via ECF & E-Mail*)