**HOGUET NEWMAN REGAL & KENNEY**, LLP

10 East 40th Street  
New York, New York 10016

Tel 212.689.8808  
Fax 212.689.5101  
www.hnrklaw.com

July 28, 2017

ijaroslaw@hnrklaw.com

**VIA ECF**

The Honorable Paul G. Gardephe  
United States District Judge  
United States District Court for the Southern District of New York  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, NY 10007-1312

Re: *United States v. Kaleil Isaza Tuzman, No. S8 15 Cr. 536 (PGG)*  
  *Request for Issuance of Rule 17(c) Subpoena*

Dear Judge Gardephe:

We represent defendant Kaleil Isaza Tuzman in the above-referenced case.[1] We respectfully submit this letter to request the issuance of subpoenas *duces tecum* ("Subpoenas") to non-parties Jones Day and Alvarez & Marsal pursuant to the Due Process Clause of the Fifth Amendment, the Compulsory Process Clause of the Sixth Amendment, and Rule 17(c) of the Federal Rules of Criminal Procedure.[2] The proposed Subpoenas are attached as Exhibits 1 and 2. As set forth more fully below, the proposed Subpoenas seek the production before trial of records that are relevant to and necessary for Mr. Isaza Tuzman's defense.[3]

Based on our investigation and documents produced by the government and by the Securities & Exchange Commission ("SEC") to date, the documents requested in the Subpoenas would show that KIT Digital's ("KITD") management sought to falsely implicate Mr. Isaza Tuzman in criminal conduct to avoid regulatory scrutiny from the SEC. We further believe that witnesses interviewed in connection with the internal investigation would support our defense that Mr. Isaza Tuzman did not willfully participate in the charged schemes.

We make this request on notice to the parties in this action and Jones Day and Alvarez & Marsal because this matter has already been briefed in the SEC Action pending against Mr. Isaza Tuzman and, as explained in Mr. Isaza Tuzman's Rule 17(c) request directed to Parker Poe, Dkt.

---

[1] We are co-counsel representing Mr. Isaza Tuzman in the SEC civil enforcement action. Presently, we are making a limited appearance in the criminal action to handle litigation surrounding Mr. Isaza Tuzman's request for Subpoenas to Jones Day and Alvarez & Marsal.

[2] We file this application by letter rather than formal motion as instructed by Your Honor at the November 21, 2016 pretrial conference. *See* 11/21/16 Tr. at 18.

[3] Per Local Criminal Rule 47.1, no previous application for similar relief has been made in this action.



334, Magistrate Judge James Cott prefers that Your Honor rule on discovery motions given the scheduled October 2 criminal trial date.[4]

## BACKGROUND

Mr. Isaza Tuzman is the former CEO of KITD and resigned from that position in March 2012. After Mr. Isaza Tuzman ceased his employment at KITD, a special committee of the Board of Directors of KITD commissioned an internal investigation, hiring Jones Day, an outside law firm, and Alvarez & Marsal, a global professional services firm purportedly acting at Jones Day's direction, to investigate certain accounting matters and regulatory filings of KITD. During this investigation, Jones Day and Alvarez & Marsal interviewed many then-employees, officers, and agents of KITD, including executives and members of the Board of Directors between April 2012 and December 2012, and memorialized these interviews in privileged memoranda (the "Interview Memoranda").[5] KITD eventually filed for bankruptcy and was succeeded by Piksel, which subsequently produced twenty Interview Memoranda to the SEC.[6] In connection with that production, we understand that Jones Day made one or more presentations to the government and/or the SEC related to the findings from its internal investigation. The memoranda were later produced to Mr. Isaza Tuzman by the SEC in *Securities and Exchange Commission v. Kaleil Isaza Tuzman et al.*, 15 Civ. 7057 (AJN) (JLC) (the "Civil Action") in May 2016. That production does not include any reference to a confidentiality agreement entered into with Piksel, but does include a subpoena issued by the SEC to Piksel. *See* Ex. 5.

The twenty produced Interview Memoranda were marked "Privileged & Confidential," with many of the memoranda carrying an additional "Attorney Work Product" label. Included in the production were memoranda summarizing the interviews of four members of KITD's Board of Directors, KITD's then-CEO who had replaced Mr. Isaza Tuzman, two outside counsel from then-company counsel Greenberg Traurig, and numerous employees in KITD's finance department. None of the memoranda were dated on the same date as the interview, and, on several occasions, the memoranda were dated nearly a week after the interview was completed. The beginning sections of the memoranda often refer to the existence of "notes" that each memorandum's author had reviewed in drafting the respective memorandum.

---

[4] The briefing filed before Judge Cott, while filed by counsel for Jones Day, appears to have been intended to cover objections raised by both Jones Day and its agent Alvarez & Marsal. Ex. 4. For clarity, the letter will refer only to Jones Day's various positions, though those arguments apply with equal force to Alvarez & Marsal.

[5] Jones Day asserts in its briefing before Judge Cott that the investigative memoranda produced to the SEC actually constituted "two unrelated proceedings." Ex. 4 at 3 n.1. Regardless of how Jones Day and KIT Digital structured their engagement and internal investigation, it does not change the fact that Piksel waived privilege with respect to the investigation(s) underlying the twenty produced Interview Memoranda.

[6] Jones Day's letter-brief to Judge Cott, Ex. 4, refers to KITD and Piksel collectively, so it is unclear whether Jones Day agrees with this chronology of events. Because the matter is ultimately irrelevant, we will refer to the two entities together where issues such as the waiving entity is not clear.

Hon. Paul G. Gardephe
July 28, 2017
Page 3



On May 10, 2017, Mr. Isaza Tuzman served Jones Day and Alvarez & Marsal with substantially identical subpoenas to produce documents pursuant to Rule 45 of the Federal Rules of Civil Procedure. Ex. 3 at Exs. A, B. The subpoenas requested compliance on or before May 24. Counsel agreed to extend the response deadline by two weeks. On June 9, both subpoenaed parties served their objections, and asserted a blanket refusal to produce any documents whatsoever. Ex. 3 at Exs. C, D. The objections included, *inter alia*, that reviewing and producing responsive documents would be unduly burdensome and that, in any event, the subpoenas sought documents subject to attorney-client privilege and/or attorney work product protection. *Id.* Following multiple meet-and-confers, the parties were unable to resolve these objections.

On July 12, 2017, Mr. Isaza Tuzman moved to compel compliance with the subpoenas in a letter-motion to Judge Cott. Jones Day and Alvarez & Marsal responded on July 18, 2017. Mr. Isaza Tuzman withdrew his civil subpoenas in light of Judge Cott's conclusion that such discovery is more appropriately sought in this criminal action.

To streamline any dispute that may arise from the Subpoenas, Mr. Isaza Tuzman has attached here the full briefing that was submitted in the SEC Action, which addresses the bases for Mr. Isaza Tuzman's privilege waiver claim, and respectfully requests that the record in the criminal case incorporate the briefing in the SEC Action. Exs. 3, 4. Because this round of briefing did not address the Rule 17(c) standard, we supplement the record with the submission below and address several of the points raised by Jones Day's letter-brief, Ex. 4.

## LEGAL STANDARD

Rule 17(c) of the Federal Rules of Criminal Procedure, which governs the issuance of subpoenas *duces tecum*, provides for the production of documents in advance of trial. *See* Fed. R. Crim. P. 17(c). As the Supreme Court held in *United States v. Nixon*, 418 U.S. 683 (1974), a party may obtain a subpoena for the pretrial production of documents where (a) the information sought is evidentiary and relevant; (b) the documents are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (c) the party cannot properly prepare for trial without such production in advance of trial and failure to obtain the documents may lead unreasonably to delay the trial; and (d) the application is made in good faith and is not intended as a general "fishing expedition." *In re Irving*, 600 F.2d 1027, 1034 (2d Cir. 1979) (citing *Nixon*, 418 U.S. at 699-700). As set forth below, the proposed Subpoenas satisfy the requirements of Rule 17(c) and *Nixon*.

## DISCUSSION

Mr. Isaza Tuzman respectfully seeks the issuance of Subpoenas to Jones Day and Alvarez & Marsal, each of which has relevant and admissible evidence that is necessary to the preparation of Mr. Isaza Tuzman's defense. Specifically, the Subpoenas seek six categories of documents:

Hon. Paul G. Gardephe
July 28, 2017
Page 4



1. Any additional interview memoranda (other than the 20 already produced) generated as part of the Internal Investigation;

2. All drafts of memoranda of interviews conducted in connection with the Internal Investigation;

3. All notes taken during or relating to the interviews conducted in connection with the Internal Investigation;

4. All expert analyses (economist, accounting, damages, valuation, etc.) conducted as part of the Internal Investigation that were provided to or summarized for, any governmental entity;

5. All presentations and reports provided or prepared by Jones Day/Alvarez & Marsal to any governmental entity in connection with the Internal Investigation; and

6. All of Jones Day and Alvarez & Marsal's invoices and billing records to KIT Digital (or whichever entity received those invoices).

### A. The Proposed Subpoenas to Jones Day and Alvarez & Marsal Seek Admissible and Relevant Information.

The attached briefing and Mr. Isaza Tuzman's prior Motion to Compel set forth the factual background for this motion. Briefly, the documents that Mr. Isaza Tuzman has received thus far include twenty Interview Memoranda created in connection with Jones Day's internal investigation bearing privilege markings and asserting "Attorney Work Product." These Interview Memoranda discuss numerous aspects of Mr. Isaza Tuzman's tenure at KITD that are the subject of the government's indictment, including KITD's investment in the Enable fund, *e.g.* Ex. F at 5-6 to Ex. 3; KITD's dealings with cooperating witness Stephen Maiden, *e.g.*, Ex. F at 6-7 to Ex. 2; the Sezmi transaction, *e.g.*, Ex. E at 1-3 to Ex. 3; and the actions of cooperating witness Robin Smyth, *e.g.*, Ex. F at 1-2 to Ex. 3. Documents such as interview notes, Jones Day's subsequent presentations based on its findings, and other documents provided to the government likely contain additional details regarding these transactions or inconsistencies *vis-à-vis* the produced Interview Memoranda that may further exculpate Mr. Isaza Tuzman, or shed further light as to how KIT Digital's management came to implicate (we contend falsely) Mr. Isaza Tuzman in criminal conduct.

The proposed Subpoenas to Jones Day and Alvarez & Marsal easily satisfy the requirements of Rule 17(c) and *Nixon* for the pretrial production of documents.

*First*, the Subpoenas are necessary to obtain vital impeachment evidence that members of KITD management falsely implicated Mr. Isaza Tuzman. While we have not yet received 3500 material or a witness list, it is likely that government will have numerous current and former KITD officers and employees testify. The documents called for by the Subpoenas may be admissible as those witnesses' prior inconsistent statements (FRE 801(d)(1)(A)), then-existing mental and emotional condition (FRE 803(3)), and as non-hearsay as they may be offered for



reasons other than the truth of the matter asserted (FRE 801(c)(2)). Evidence that impeaches KITD management with prior inconsistent statements and demonstrates their motives to falsely implicate Mr. Isaza Tuzman are appropriate to seek via a Rule 17(c) subpoena. *See United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (granting subpoena to BOP for phone calls to cooperator because the defense could "use evidence of such inducements [to cooperate] to suggest to the jury that the witness is giving false testimony"); *United States v. Carollo*, 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012) (granting subpoena for impeachment material to co-conspirator who would testify; Rule 17 subpoena is appropriate where sought for "bias or a motive on the part of [the co-conspirator] to cooperate with the government . . ., to protect himself from indictment here, or to otherwise guard against additional charges for other crimes."); *United States v. Orena*, 883 F. Supp. 849, 869 (S.D.N.Y. 1995) (granting subpoena to cooperating witness for documents that might show motivation for cooperation; the discovery may "illuminate the factors which led [cooperator] to become a prosecution witness and the benefits he obtained by doing so.").

*Second*, the materials requested in the proposed Subpoenas are not otherwise procurable reasonably in advance of trial by the exercise of due diligence. Mr. Isaza Tuzman has obtained the Interview Memoranda produced to the SEC, but the additional materials requested in the Subpoenas likely are solely in the possession of Jones Day and Alvarez & Marsal. Mr. Isaza Tuzman has attempted to procure similar materials from Piksel, but has been unable to negotiate compliance with his Rule 45 civil subpoena directed at that entity.

*Third*, Mr. Isaza Tuzman cannot properly prepare for trial without production of the requested materials prior to trial. The documents sought in the Subpoenas will be a vital resource in preparing to cross examine government witnesses.

*Finally*, Mr. Isaza Tuzman's application for the Subpoenas is made in good faith, as it concerns a limited and specific set of records generated during a discrete engagement by Jones Day and Alvarez & Marsal.

### B. No Privilege Or Work Product Protection Prohibits Disclosure To Mr. Isaza Tuzman.

No privilege held by Piksel or any work product protection held by Jones Day bars production here.

At the outset, the billing records sought are not privileged unless they reveal information that is, itself, privileged; but that information can be redacted. *Diversified Group, Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003).

The remaining demands in the Subpoenas are for documents over which Piksel and KITD have waived privilege as a result of the productions and presentations to the SEC. A waiver of privilege or work product occurs when disclosure is voluntary and made to an entity in an adversarial position, or to a non-adversary "under circumstances that substantially increased the possibility that an adversary would obtain the materials." *See Bank of Am., N.A. v. Terra Nova*



*Ins. Co.*, 212 F.R.D. 166, 171 (S.D.N.Y. 2002). Jones Day does not contest that these disclosures were voluntary. It asserts that the SEC was not in an adversarial relationship, Ex. 3 at 3, but it is mistaken. "Voluntary disclosure is generally made because a corporation believes that there is some benefit to be gained from disclosure." *In re Steinhardt Parners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993). Like the defendant in *Gruss v. Zwirn*, any "self-reporting" by KITD was made "in order to escape or limit liability." 2013 WL 3481350, at *8. And even if KITD was not the subject of an investigation (which it likely was), the SEC surely was a "potential" adversary given the alleged misconduct, as charged here, by KITD's top executives. Thus, KITD (and its successor Piksel) were directly in the cross-hairs of the government's investigation. Accordingly, the company's disclosures to the SEC constituted a waiver of privilege. *See Bank of Am.*, 212 F.R.D. at 172.

In response, Jones Day cited *In re Cardinal Health, Inc. Sec. Litig.*, 2007 WL 495150, at *9 (S.D.N.Y. Jan. 26, 2007), to suggest that KITD had a "common interest" with the SEC, Ex. 4 at 3, but the cooperation between the entity in *Cardinal Health* was qualitatively different from any alleged cooperation between KITD and the SEC. In *Cardinal Health*, the SEC and the entity appeared to have created a true partnership, such that "the SEC shar[ed] additional [relevant] documents with" the entity. *Id.* at *9. Here, Jones Day does not suggest that the SEC shared any documents with KITD or with Piksel. Rather, it proffers only that KITD "initiated the December 6, 2012 meeting with the SEC that gave rise to the investigation." Ex. 4 at 3.

Jones Day also asserts that disclosure to the SEC did not waive privilege because "Jones Day entered into an express confidentiality agreement with the SEC," and thus (presumably) this agreement reduced any likelihood that an adversary would obtain the documents. Ex. 4 at 4. But this agreement is irrelevant because KITD and the SEC were in an adversarial posture. *See Bank of Am., N.A.*, 212 F.R.D. at 172. Any holding to the contrary would create an exception that swallows the waiver rule. In any event, the confidentiality agreement does not protect the documents from disclosure by a third party such as Mr. Isaza Tuzman. The SEC promises to maintain confidentiality "except to the extent that the Staff determines that disclosure is otherwise required by law or would be in furtherance of the Commission's discharge of its duties and responsibilities." Ex 4 at Ex. B at 1. That language should sound familiar, for it is the exact same language that Your Honor in *Gruss v. Zwirn* found "grants the SEC discretion to disclose the submitted materials whenever it chooses" and thus could not preclude a finding of waiver by the producing party. 2013 WL 3481350, at *8. That confidentiality agreement does not protect the documents from disclosure to Mr. Isaza Tuzman, who KITD/Piksel certainly considered (and treated as) an adversary at the time.

Under FRE 502(a), KITD/Piksel's intentional production of privileged materials, while attempting to cooperate to avoid regulatory scrutiny, waives privilege over other documents covering the same subject matter because those unproduced documents ought, in fairness, be considered together. And given KITD/Piksel's central role in implicating Mr. Isaza Tuzman in the securities-fraud conspiracies, fairness certainly requires production of the documents related to KITD's internal investigation, documents which KITD voluntarily shared with the SEC.

Hon. Paul G. Gardephe
July 28, 2017
Page 7



     Jones Day disputes this conclusion, but its contentions lack merit.  First, it is plainly not the case that "any limited waiver … does not extend to other documents not disclosed, even if related," Ex. 3 at 4.  Not only does Your Honor's prior ruling on the substantially identical fact pattern prove that the waiver extends to notes taken during interviews and other work product, *Gruss v. Zwirn*, 2013 WL 3481350, at *13, but numerous other cases support that principle too.  *See, e.g., Bank of Am., N.A.*, 212 F.R.D. at 175 ("Terra Nova must produce *any documents relating to the investigation* that were in Holland's possession as of April 17, 2000." (emphasis added)); *S.E.C. v. Vitesse Semiconductor Corp.*, 2011 WL 2899082, at *3 (S.D.N.Y. July 14, 2011) (company "waived work product privilege with respect to the notes by providing very detailed, witness-specific information to the SEC"); *Banneker Ventures, LLC v. Graham*, 2017 WL 2124388, at *6 (D.D.C. May 16, 2017) (ordering production of interview memoranda underlying report where client voluntarily disclosed report).[7]

     Second, it is irrelevant that Jones Day and KITD/Piksel are not themselves parties to this litigation.  Ex. 4 at 4.  The text of Rule 502(a) does not provide for any such limitation on waivers.  And, unlike the non-party in *United States v. Treacy*, 2009 WL 812033, at *1-2 (S.D.N.Y. Mar. 24, 2009), KITD/Piksel produced more than "a handful of interview memoranda"—the SEC received all (or nearly all) of the interview memoranda generated as part of Jones Day's internal investigation and the SEC was privy to a presentation by Jones Day regarding the internal investigation.  Given the clear implication that this cooperation against Mr. Isaza Tuzman was done in order to avoid regulatory scrutiny, it is hardly the case that Jones Day and KITD/Piksel are disinterested third parties.

\* \* \*

     Accordingly, we respectfully request that the Court issue the attached Subpoenas pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure.  The requested Subpoenas call for the production of responsive documents by August 15.  (As Jones Day has had notice of Mr. Isaza Tuzman's position with respect to privilege for many months now, any claim of prejudice resulting from expedited production is baseless).  We respectfully request that the

---

[7] Jones Day's own authorities support the conclusion that waiver extends to documents not produced to the SEC. *Freedman v. Weatherford, Int'l Ltd.*, 2014 WL 3767034 (S.D.N.Y. July 25, 2014), explained that, in a prior ruling, court had "ruled that both attorney-client privilege and work product protection had been waived for any material physically or orally disclosed to the SEC, *as well as any underlying factual material explicitly referenced therein*." *Id.* at *2 (emphasis added)

Hon. Paul G. Gardephe
July 28, 2017
Page 8

HOGUET NEWMAN
REGAL & KENNEY, LLP

documents be returned directly to undersigned counsel for Mr. Isaza Tuzman at Hoguet Newman Regal & Kenney, LLP.

We thank Your Honor for your attention to this matter.

Respectfully submitted,

Ilene Jaroslaw

cc: All Counsel of Record (*Via ECF*)
Harold K. Gordon, Esq. (*Via Email*)
John G. Moon, Esq. (*Via Email*)