UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,         :

                                     :

         - v.-                    :      S8 15 Cr. 536 (PGG)

                                     :

KALEIL ISAZA TUZMAN,           :

OMAR AMANAT,                  :

                                     :

              Defendants.        :
------------------------------------------------------------x

 

## <u>GOVERNMENT'S REQUESTS TO CHARGE</u>

 

                                      JOON H. KIM
                                      Acting United States Attorney for the
                                      Southern District of New York
                                      Attorney for the United States of America

Damian Williams
Andrea M. Griswold
Joshua A. Naftalis
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

UNITED STATES OF AMERICA,          :

                                      :

         - v.-               :       S8 15 Cr. 536 (PGG)

                                        :

KALEIL ISAZA TUZMAN,         :

OMAR AMANAT,               :

                                        :

               Defendants.        :

----------------------------------------------------------------x

## <u>GOVERNMENT'S REQUESTS TO CHARGE</u>

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government respectfully requests the Court to include the following in its charge to the jury.

## <u>TABLE OF CONTENTS</u>

General Requests ............................................................................................................... 1

The Indictment ................................................................................................................... 2

Summary of Indictment ..................................................................................................... 3

Conspiracy and Substantive Counts................................................................................... 6

Count One:  Conspiracy to Commit Wire Fraud – The Statute........................................ 7

Count One:  Conspiracy to Commit Wire Fraud – Elements of Conspiracy.................... 8

Count One:  Conspiracy to Commit Wire Fraud – First Element: Existence of the Conspiracy ... 9

Count One:  Conspiracy to Commit Wire Fraud – Object of the Conspiracy .............................. 12

Count One:  Conspiracy to Commit Wire Fraud – Second Element:  Membership in the
     Conspiracy ................................................................................................................. 13

Count Two:  Wire Fraud – The Statute and the Indictment............................................. 16

Count Two:  Wire Fraud – Elements of the Offense ....................................................... 17

Count Two:  Wire Fraud – First Element:  Existence of Scheme or Artifice to Defraud............. 18

Count Two:  Wire Fraud – Second Element: Knowing Participation in Scheme
     with Intent to Defraud................................................................................................ 22

Count Two: Wire Fraud – Third Element:  Use of Interstate Wires................................ 26

Aiding and Abetting.......................................................................................................... 28

Willfully Causing a Crime ............................................................................................... 31

Count Three: Aiding and Abetting Investment Adviser Fraud –
     The Indictment and the Statute ................................................................................. 32

Count Three:  Aiding and Abetting Investment Adviser Fraud – Fiduciary Duty ...................... 33

Count Three:  Aiding and Abetting Investment Adviser Fraud – Elements of the Offense......... 34

Count Three:  Aiding and Abetting Investment Adviser Fraud – First Element:
     Investment Adviser Named in Indictment was in Fact an Investment Adviser............... 35

Count Three:  Aiding and Abetting Investment Adviser Fraud – Second Element:
     Scheme to Defraud...................................................................................................... 37

Count Three:  Aiding and Abetting Investment Adviser Fraud – Third Element: Intent............. 38

Count Three:  Aiding and Abetting Investment Adviser Fraud – Fourth Element:
     Interstate Nexus .......................................................................................................... 39

Count Three:  Aiding and Abetting Investment Adviser Fraud – Fifth Element:
     Aiding and Abetting..................................................................................................... 40

Count Four:  Conspiracy to Commit Securities Fraud – The Indictment and Statute ................. 42

Count Four:  Conspiracy to Commit Securities Fraud – Elements................................................ 43

Count Four:  Conspiracy to Commit Securities Fraud – Element One:
    Object of the Conspiracy ........................................................................... 44

Count Four:  Conspiracy to Commit Securities Fraud – Element Three:  Overt Act ................. 53

Count Five:  Conspiracy to Commit Wire Fraud ............................................................ 55

Count Six:  Conspiracy to Commit Securities Fraud, Make False Statements
    in SEC Filings, and Make False Statements to Auditors ................................. 56

Count Six: Conspiracy – Securities Fraud Object .......................................................... 58

Count Six: Conspiracy – Making False Statements in SEC Filings Object .............................. 59

Count Six: Conspiracy – Making False Statements to Auditors Object .................................... 62

Conscious Avoidance ............................................................................................ 63

Venue .............................................................................................................. 66

Time of Offense .................................................................................................. 67

Law Enforcement and Government Employee Witnesses ..................................................... 68

Cooperating Witness Testimony ............................................................................... 69

Expert Testimony ................................................................................................ 72

Character Testimony ............................................................................................ 73

Defendant's Testimony .......................................................................................... 74

Defendant's Right Not to Testify .............................................................................. 75

Uncalled Witnesses – Equally Available to Both Sides ..................................................... 76

Particular Investigative Techniques Not Required ......................................................... 77

Persons Not on Trial ............................................................................................ 78

Preparation of Witnesses ....................................................................................... 79

Charts and Summaries – Not Admitted As Evidence ....................................................... 80

Charts and Summaries – Admitted as Evidence ............................................................. 81

Use of Recordings, Text Messages and E-Mails ............................................................ 82

Use of Audio Recordings and Transcripts ................................................................... 83

Stipulations ...................................................................................................... 84

Conclusion ....................................................................................................... 85

**REQUEST NO. 1**

**General Requests**

The Government respectfully requests that the Court give its usual instructions to the jury

on the following matters:

a.      Function of Court and Jury.

b.      Indictment Not Evidence.

c.      Statements of Court and Counsel Not Evidence.

d.      Burden of Proof and Presumption of Innocence.

e.      Reasonable Doubt.

f.      Government Treated Like Any Other Party.

g.      Definitions, Explanations, and Example of Direct and
        Circumstantial Evidence.

h.      Inferences.

i.      Credibility of Witnesses.

j.      Right to See Exhibits and Have Testimony Read During Deliberations.

k.      Sympathy: Oath of Jurors.

l.      Punishment is Not to Be Considered by the Jury.

m.      Verdict of Guilt or Innocence Must Be Unanimous.

**REQUEST NO. 2**

**The Indictment**

The defendants in this matter, KALEIL ISAZA TUZMAN and OMAR AMANAT, have been formally charged in what is called an Indictment. An Indictment is simply an accusation. It is no more than the means by which a criminal case is started. It is not evidence. It is not proof of the defendants' guilt. It creates no presumption, and it permits no inference that the defendants are guilty. You are to give no weight to the fact that an Indictment has been returned against the defendants.

I will not read the entire Indictment to you at this time. Rather, I will first summarize the offenses charged in the Indictment and then explain in detail the elements of the charged offenses.

**REQUEST NO. 3**

**Summary of Indictment**

The Indictment contains six counts or "charges." Count One of the Indictment charges that, from at least in or about March 2009 through in or about June 2012, defendant OMAR AMANAT conspired, or agreed with others, to commit wire fraud.  As I will explain in more detail in a few moments, a conspiracy, such as the one charged in Count One, is a criminal agreement to violate the law.

Count Two of the Indictment charges that, from at least in or about March 2009 through in or about June 2012, defendant OMAR AMANAT committed the substantive offense of wire fraud.  Later on, I will explain to you the differences between a conspiracy count and a substantive count.  For now, just keep in mind that a conspiracy count is different from a substantive count.  Count One charges defendant OMAR AMANAT with participating in a conspiracy to commit wire fraud.  Count Two charges defendant OMAR AMANAT with substantive wire fraud.

Count Three of the Indictment charges that, from at least in or about March 2009 through in or about June 2012, defendant OMAR AMANAT committed the substantive offense of aiding and abetting investment adviser fraud.

The Indictment alleges that the wire fraud conspiracy charged in Count One, the substantive wire fraud offense charged in Count Two and the substantive aiding and abetting investment adviser fraud offense charged in Count Three relate to an alleged scheme to defraud investors in a hedge fund called Maiden Capital by hiding the fact that money that Maiden Capital had invested in another fund called Enable had been lost as a result of poor trading decisions and fraudulent misappropriation.

Count Four of the Indictment charges that, from at least in or about December 2008 through in or about September 2011, KALEIL ISAZA TUZMAN and OMAR AMANAT conspired to commit the substantive offense of securities fraud.  The Indictment alleges that the securities fraud conspiracy charged in Count Four related to an alleged scheme by both defendants – and an individual named Stephen Maiden of Maiden Capital – to manipulate the shares of a company called KIT digital ("KITD") by artificially inflating the share price and trading volume of KITD shares.

Count Five of the Indictment charges that, from at least in or about March 2009 through in or about March 2011, defendant KALEIL ISAZA TUZMAN conspired to commit the substantive offense of wire fraud.  The Indictment alleges that the wire fraud conspiracy charged in Count Five related to an alleged scheme to mislead KITD shareholders by failing to disclose that certain investments with Maiden Capital that defendant KALEIL ISAZA TUZMAN caused KITD to make were not part of an arms-length relationship but were actually related party transactions made for an improper purpose.

Count Six of the Indictment charges that, from 2009 through in or about April 2012, defendant KALEIL ISAZA TUZMAN conspired to (1) commit securities fraud, (2) make false statements in annual and quarterly reports filed with the Securities and Exchange Commission ("SEC") and (3) make false statements to auditors. The Indictment alleges that the conspiracy charged in Count Six related to an alleged accounting fraud scheme in which defendant KALEIL ISAZA TUZMAN caused KITD to deceive KITD's shareholders, members of the investing public, KITD's independent auditors and others concerning KITD's true operating performance and financial results.

4

That is a summary of all six counts in the Indictment. You must consider each defendant and each count separately, and you must return a separate verdict of guilty or not guilty for each defendant on each count.  Whether you find a defendant guilty or not guilty as to one offense should not affect your verdict as to any other defendant or any other offense charged.

With that summary of the Indictment as background, I will now give you detailed instructions that relate to the crime charged in Count One.

> Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr. 3-6. Honorable
> Michael B. Mukasey in <u>United States </u>v. <u>Bello</u>, 91 Cr. 571 (MBM),
> <u>aff'd</u> <u>mem</u>., 990 F.2d 622 (2d Cir. 1993).

## REQUEST NO. 4

### Conspiracy and Substantive Counts

A conspiracy to commit a crime is an entirely separate and different offense from the substantive crime which may be the objective, also known as the "object" of the conspiracy. The essence of the crime of conspiracy is an agreement or understanding to violate other laws or to defraud the United States. Thus, if a conspiracy exists, even if it should fail of its purpose, it is still punishable as a crime. Consequently, in a conspiracy charge there is no need to prove that the crime or crimes that were the objects of the conspiracy were actually committed.

Of course, if a defendant participates in a conspiracy and the crime or crimes which were the object of the conspiracy were committed, the defendant may be guilty of both the conspiracy and the substantive crime, as I will instruct you shortly. The point simply is that the crime or crimes that were the object of the conspiracy need not have been actually committed for a conspiracy to exist.

Adapted from Judge Jones's charge in United States v. Weissman, 01 Cr. 529 (BSJ).

6

**REQUEST NO. 5**

**Count One:  Conspiracy to Commit Wire Fraud – The Statute**

In Count One of the Indictment, defendant OMAR AMANAT is charged with violating

Title 18, United States Code, Section 1349. That section provides as follows:

> Any person who . . . conspires to commit any offense under this
> chapter [including wire fraud, shall be guilty of a crime].

Defendant OMAR AMANAT is charged in Count One with participating in a conspiracy,

from at least March 2009 through in or about June 2012, to violate the federal statute that makes

it unlawful to commit wire fraud.  Specifically, Count One charges that defendant OMAR

AMANAT agreed to commit wire fraud in connection with the scheme to defraud investors in

Maiden Capital.

> Adapted from charge of the Honorable Barbara S. Jones in United
> States v. Weissman, 01 Cr. 529 (BSJ).

7

## REQUEST NO. 6

### Count One:  Conspiracy to Commit Wire Fraud – Elements of Conspiracy

To prove a defendant guilty of the conspiracy charged in Count One, the Government must prove beyond a reasonable doubt each of the following two elements:

<u>First</u>, the existence of the conspiracy charged in Count One of the Indictment; that is, the existence of an agreement or understanding to commit the unlawful object of the charged conspiracy, which in this case is wire fraud; and

<u>Second</u>, that the defendant you are considering willfully and knowingly became a member of the conspiracy, with the intent to further its illegal purpose – that is, with the intent to commit the object of the charged conspiracy.

8

REQUEST NO. 7

**Count One:  Conspiracy to Commit Wire Fraud – First Element: Existence of the Conspiracy**

Starting with the first element, what is a conspiracy?  A conspiracy is an agreement or an understanding, between two or more persons, to accomplish by joint action a criminal or unlawful purpose.

To satisfy the first element of a conspiracy – namely, to show that the conspiracy existed – the Government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and spelling out all of the details.  Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left to the unexpressed understanding.  It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

In order to show that a conspiracy existed, the evidence must show that two or more people, in some way or manner, through any contrivance, explicitly or implicitly (that is, spoken or unspoken), came to a mutual understanding to violate the law and to accomplish an unlawful plan.  If you find beyond a reasonable doubt that two or more persons came to an understanding, express or implied, to violate the law and to accomplish an unlawful plan, then the Government will have sustained its burden of proof as to this element.

When people enter into a conspiracy to accomplish an unlawful end, they become agents and partners of one another in carrying out the conspiracy.  In determining whether there has been an unlawful agreement as alleged, you may consider the acts and conduct of the alleged co-conspirators that were done to carry out the apparent criminal purpose.  In addition, in determining whether such an agreement existed, you may consider direct as well as

9

circumstantial evidence.  The old adage, "Actions speak louder than words," applies here.  Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators.  When taken altogether and considered as whole, however, these acts and conduct may warrant the inference that a conspiracy existed as conclusively as would direct proof, such as evidence of an express agreement.  On this question, you should refer to instructions I will give you later on direct and circumstantial evidence and inferences.

So, you must first determine whether the evidence proves beyond a reasonable doubt the existence of the conspiracy charged in Count One of the Indictment.  It is sufficient to establish the existence of the conspiracy, as I've already said, if you find beyond a reasonable doubt, from proof of all the relevant facts and circumstances, that the minds of at least two alleged co-conspirators met to accomplish, by the means alleged, the object of the conspiracy.

### Liability For Acts And Declarations Of Co-Conspirators

You will recall that I have admitted into evidence against the defendants the acts and statements of others because these acts and statements were committed or made by persons who, the Government charges, were also confederates or co-conspirators of the defendants.

The reason for allowing this evidence to be received against the defendants has to do in part with the nature of the crime of conspiracy. As I have said, a conspiracy is often referred to as a partnership in crime: as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

10

Therefore, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts or statements of all of the members, and all of the members are responsible for such acts or statements.

If you find, beyond a reasonable doubt, that a defendant was a member of the conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by a person also found by you to have been a member of the same conspiracy may be considered against that defendant. This is so even if such acts were committed or such statements were made in that defendant's absence, and without his knowledge.

However, before you may consider the acts or statements of a co-conspirator in deciding the guilt of a defendant, you must first determine that the acts were committed or statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements were made by someone whom you do not find to have been a member of the conspiracy, or if they were not in furtherance of the conspiracy, they may not be considered by you in deciding whether a defendant is guilty or not guilty.

> Adapted from the charges given in United States v. Ilya Boruch, 08 Cr. 820 (GBD) and United States v. Edmund Boyle, 08 Cr. 523 (CM), and from Sand et al., Modern Federal Jury Instructions, Instr. 19-4; see also United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the government need not present evidence of an explicit agreement; proof of a tacit understanding will suffice. The coconspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan, and their goals need not be congruent, so long as they are not at cross-purposes.") (citations omitted).

## REQUEST NO. 8

### Count One:  Conspiracy to Commit Wire Fraud – Object of the Conspiracy

The object of the conspiracy charged in Count One of the Indictment is wire fraud.  In order to prove that a defendant is guilty of the conspiracy offense charged in Count One, the Government must establish beyond a reasonable doubt that the defendant agreed with others to commit wire fraud.

Wholly apart from its inclusion as part of the conspiracy charged in Count One, the objective of the wire fraud is charged as a separate substantive offense in Count Two.  I instruct you that this is permissible.  A crime may be punished for its own sake and it may also be an object of a conspiracy — which requires proof of additional elements and which Congress has elected to make a separate and distinct crime.  Because the object of the conspiracy – wire fraud – is charged as a substantive offense in Count Two, I will later instruct you in a moment with regard to Count Two on the law that applies to wire fraud and ask you to apply the same law to the object of the conspiracy as charged in Count One of the Indictment.

## REQUEST NO. 9

### Count One:  Conspiracy to Commit Wire Fraud – Second Element:  Membership in the Conspiracy

If you conclude that the Government has proven beyond a reasonable doubt that the conspiracy charged in Count One of the Indictment existed, and that the conspiracy had wire fraud as its object, then you must next consider the second element: namely, whether the defendant you are considering participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective.

In order to satisfy the second element of Count One, the Government must prove beyond a reasonable doubt that a defendant knowingly and willfully entered into the conspiracy with a criminal intent – that is, with a purpose to violate the law – and that he agreed to take part in the conspiracy to further promote and cooperate in its unlawful objective.

### "Willfully" and "Knowingly"

An act is done "knowingly" and "willfully" if it is done deliberately and purposely — that is, a defendant's actions must have been his conscious objective rather than a product of a mistake or accident, mere negligence, or some other innocent reason.

To satisfy its burden of proof that a defendant willfully and knowingly became a member of a conspiracy to accomplish an unlawful purpose, the Government must prove beyond a reasonable doubt that the defendant knew that he was a member of an operation or conspiracy to accomplish an unlawful purpose, and that his action of joining such an operation or conspiracy was not due to carelessness, negligence, or mistake.

Now, knowledge, of course, is a matter of inference from the proven facts.  Science has not yet devised a manner of looking into anyone's mind and knowing what he is thinking.

13

However, you do have before you the evidence of acts alleged to have taken place by or with the defendants or in their presence.  A defendant's knowledge is a matter of inference from the facts proven.  In that connection, I instruct you that to become a member of the conspiracy, a defendant need not have known the identities of each and every other member of the conspiracy, nor need he have been apprised of all of their activities.  Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

The duration and extent of a defendant's participation in the conspiracy charged in Count One has no bearing on the issue of that defendant's guilt.  He need not have joined the conspiracy at the outset.  He may have joined it at any time in its progress, and the defendant will still be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while the defendant was still a member.  Indeed, each member of a conspiracy may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, a person may know, assemble with, or be friendly with, one or more members of a conspiracy, without being a conspirator himself.   I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  What is necessary is that a defendant must

14

have participated with knowledge of at least some of the purposes or objects of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Once a conspiracy is formed, it is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by the members.  So too, once a person is found to be a member of a conspiracy, he is presumed to continue as a member in the conspiracy until the conspiracy is terminated, unless it is shown by some affirmative proof that the person withdrew and disassociated himself from it.

In sum, a defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing participant in the unlawful agreement — that is to say, a conspirator.

> Adapted from the charges given in United States v. Ilya Voruch, 08 Cr. 820 (GBD) and United States v. Edmund Boyle, 08 Cr. 523 (CM); United States v. Tone Grant, 05 Cr. 1192 (NRB); United States v. Angelo Nicosia, 07 Cr. 907 (SAS); United States v. Xiang Chen, 02 Cr. 300 (LAK); see also Sand, et al., Modern Federal Jury Instructions, Instr. 19-6.

## REQUEST NO. 10

### Count Two:  Wire Fraud – The Statute and the Indictment

Count Two of the Indictment charges defendant OMAR AMANAT with committing the substantive offense of wire fraud, from at least in or about March 2009 through in or about June 2012.  Wire fraud is also the object of the conspiracy charged in Count One of the Indictment. Wire fraud is a violation of Title 18, United States Code, Section 1343.

That statute provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a federal crime]

Specifically, Count Two charges that defendant OMAR AMANAT committed wire fraud in connection with a scheme to defraud Maiden Capital investors by hiding the fact that money that Maiden Capital had invested in another fund called Enable had been lost as a result of poor trading decisions and fraudulent misappropriation.

16

## REQUEST NO. 11

### Count Two:  Wire Fraud – Elements of the Offense

In order to prove defendant OMAR AMANAT guilty of wire fraud, the Government must separately establish beyond a reasonable doubt the following three essential elements:

First, that in or about the times alleged in the Indictment, there was a scheme or artifice to defraud others of money or property by false or fraudulent pretenses, representations, or promises;

Second, that defendant knowingly and willfully devised or participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud; and

Third, that in the execution of that scheme, the defendant used, or caused the use by others, of interstate or foreign wires.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instr. 44-3 (based on the charge of the Honorable Edward Weinfeld in United States v. Ranney, 82 Cr. 771 (S.D.N.Y. 1983)); and the charge of the Honorable Ronnie Abrams in United States v. Tagliaferri, 13 Cr. 115 (S.D.N.Y. 2014).

## REQUEST NO. 12

**Count Two**:  **Wire Fraud – First Element:  Existence of Scheme or Artifice to Defraud**

The first element of Count Two that the Government must prove beyond a reasonable doubt is the existence of a scheme or artifice to defraud others of money or property by means of false or fraudulent pretenses, representations, or promises.

A "scheme or artifice" is simply a plan for the accomplishment of an object.  "Fraud" is a general term.  It is a term that includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestion, false pretenses, or concealment of the truth. The unfair advantage sought can involve money, property, or any other thing of value.

Thus, a "scheme to defraud" is any plan, device, or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.  It is a plan to deprive another of money or property by trick, deceit, deception, swindle, or overreaching.

In order to establish a scheme to defraud, the Government need not show that the defendant made a misrepresentation. A scheme to defraud can exist even if the scheme did not progress to the point where misrepresentations would be made.  In addition, even if you find that the statements the Government contends were made or contemplated by the defendant in furtherance of the scheme were literally true, you can still find that the first element of the wire fraud statute has been satisfied if the statements and/or conduct of the defendant were deceptive. You may also find the existence of such a scheme if you find that the defendant conducted

18

himself in a manner that departed from traditional notions of fundamental honesty and fair play in the general business life of society.

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

A "pretense, representation, or statement" is fraudulent if it was made falsely and with intent to deceive. A statement may also be fraudulent if it contains half-truths or if it conceals material facts in a manner that makes what is said or represented deliberately misleading or deceptive.

The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed to make such disclosure with the intent to defraud.

The false or fraudulent representation or concealment must relate to a material fact or matter. A material fact is one that would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision. That means that, if you find a particular statement or representation false, you must determine whether that statement or representation was one that a reasonable person might have considered important in making his or her decision. The same principle applies to fraudulent half-truths or omissions, that is, failures to disclose facts.

In order to satisfy this first element, the Government must also prove that the alleged scheme contemplated depriving another of money or property. It is not necessary for the Government to establish that the defendant you are considering actually realized any gain from

19

the scheme or that any particular person actually suffered any loss as a consequence of the fraudulent scheme.  You must concentrate on whether there was such a scheme, not on the consequences of the scheme.

In this regard, a person is not deprived of money or property only when someone directly takes his money or property from him.  Rather, a person is also deprived of money or property when important, potentially valuable economic information is withheld from that person or when that person is provided false or fraudulent information of that nature that, if believed, would prevent him from being able to make informed economic decisions about what to do with his money or property.  In other words, a person is deprived of money or property when he is deprived of the right to control that money or property.  And he is deprived of the right to control that money and property when important, potentially valuable economic information is withheld from him or where he receives false or fraudulent information of that nature that affects his ability to make discretionary economic decisions about what to do with that money or property.  Again, the Government need not show that that any victim investor lost money or property as a result of the scheme.  Such a loss must, however, have been contemplated by the defendant you are considering.  To put it another way, it is not necessary that a defendant have intended that his misrepresentations or omissions would cause an actual loss; it is sufficient that a defendant intended that the misrepresentations or omissions would induce the victim to enter into the transaction without the relevant facts necessary to make an informed economic decision.

If you find that the Government has sustained its burden of proof that a scheme to defraud did exist, as charged, you next should consider the second element.

Adapted from Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr. 44-4 (based on the charge of the Honorable Edward Weinfeld in

United States v. Ranney, 82 Cr. 771 (S.D.N.Y. 1983)); the charge of the Honorable Michael B. Mukasey in United States v. Uccio, 88 Cr. 906 (S.D.N.Y. 1989), aff'd, 917 F.2d 80 (1990); and the charge of the Honorable Charles S. Haight, Jr. in United States v. Rogers, 90 Cr. 377 (S.D.N.Y. 1991); see United States v. Binday, 804 F.3d 558, 579 (2d Cir. 2015) (holding that "it is not necessary that a defendant intend that his misrepresentation actually inflict a financial loss—it suffices that a defendant intend that his misrepresentations induce a counterparty to enter a transaction without the relevant facts necessary to make an informed economic decision"); United States v. Tagliaferri, No. 15-536, 2015 WL 2342712, at *4 (2d Cir. May 4, 2016) (wire fraud does not require actual financial loss; it is sufficient if the victim was "deprived of potentially valuable economic information, such as where the deceit affected the victim's economic calculus or exposed the victim to unexpected economic risk") (internal quotations and citations omitted); United States v. DiNome, 86 F.3d 277, 284 (2d Cir. 1996) (definition of property includes the right to control the use of one's assets; where defendant intends to deprive victim of information material to victim's decision on how to deal with his assets, required intent to defraud is present); see United States v. Trapilo, 130 F.3d 547, 550 n.3 (2d Cir. 1997) (interpreting wire fraud statute; "The term 'scheme to defraud' is measured by a 'nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society. . . . The scheme exists although no misrepresentation of fact is made'") (citations omitted); United States v. Levis, 488 Fed. Appx. 481, 485; 2012 WL 2914118 (2d Cir. 2012) ("A defendant engages in wire fraud when he intentionally deprives a victim of potentially valuable economic information that could impact on economic decisions made by the victim.").

REQUEST NO. 13

**Count Two: Wire Fraud – Second Element: Knowing Participation in Scheme with Intent to Defraud**

The second element of wire fraud that the Government must establish beyond a reasonable doubt is that defendant OMAR AMANAT devised or participated in the fraudulent scheme knowingly, willfully, and with the specific intent to defraud.

The words "devised" and "participated" are words that you are familiar with and, therefore, I do not need to spend much time defining them for you.  To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud means to associate oneself with it with a view and intent toward making it succeed.  While a mere onlooker is not a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and visibly executes the scheme to defraud.

In order to satisfy this element, it is not necessary for the Government to establish that the defendant originated the scheme to defraud.  It is sufficient if you find that a scheme to defraud existed, even if originated by another, and that the defendant, while aware of the scheme's existence, knowingly participated in it.

It is also not required that the defendant participated in or have knowledge of all of the operations of the scheme.  The guilt of the defendant is not governed by the extent of his participation.

It also is not necessary that the defendant participated in the alleged scheme from the beginning.  A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily all of its details, and intentionally acts in a way to further the

unlawful goals, becomes a member of the scheme and is legally responsible for all that may have been done in the past in furtherance of the criminal objective and all that is done thereafter.

Even if the defendant participated in the scheme to a lesser degree than others, he is nevertheless equally guilty, so long as the defendant became a member of the scheme to defraud with knowledge of its general scope and purpose. As I have previously noted, before the defendant may be convicted of the fraud charged here, he must also be shown to have acted knowingly and willfully and with a specific intent to defraud.  I have previously defined the terms "knowingly" and "willfully," and you are to follow those instructions here.

A defendant acted with specific intent to defraud in the wire fraud context if he engaged or participated in the fraudulent scheme with some realization of its fraudulent or deceptive character and with an intention to be involved in the scheme to defraud and to help it succeed with a purpose of causing harm to the victim.  The Government need not prove that the intended victims were actually harmed; only that such harm was contemplated.  Actors are presumed to intend the natural and probable consequences of their actions.  So when the necessary result of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself.

The question of whether a person acted knowingly, willfully, and with specific intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves one's state of mind.  As I explained before, direct proof of knowledge, willfulness, and fraudulent intent is almost never available.  Indeed, it would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he or she committed an act with fraudulent intent.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

What is referred to as drawing inferences from circumstantial evidence is no different from what people normally mean when they say, "use your common sense." Using your common sense means that, when you come to decide whether the defendant you are considering possessed or lacked an intent to defraud, you need not limit yourself to just what the particular defendant said, but you may also look at what the defendant did and what others did in relation to the defendant and, in general, everything that occurred.

At this point, let me advise you that since an essential element of the crime charged is intent to defraud, it follows that "good faith," as I will define that term, on the part of a defendant is a complete defense to a charge of wire fraud. A defendant has no burden to establish a defense of good faith. The burden is on the Government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt. Under the anti-fraud statutes, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent. An honest belief in the truth of the representations made by a defendant is a complete defense, however inaccurate the statements may turn out to be.

In considering whether or not a defendant acted in good faith, however, you are instructed that a belief by a defendant, if such belief existed, that ultimately everything would work out so that no investors would lose any money or that particular investments would ultimately be financially advantageous for clients does not necessarily constitute good faith.

24

No amount of honest belief on the part of a defendant that the scheme will ultimately make a

profit for the investors will excuse fraudulent actions or false representations by him.

> Adapted from Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr.
> 44-5.

**REQUEST NO. 14**

**Count Two:  Wire Fraud – Third Element:  Use of Interstate Wires**

Now, the third and final element that the Government must establish beyond a reasonable doubt as to each wire fraud count is that interstate or foreign wire facilities were used in furtherance of the scheme to defraud.

The "interstate" or "foreign" requirement means that the wire communication must pass between two or more states as, for example, a transmission of computer signals between New York and another state, such as New Jersey, California, or a territory, such as the U.S. Virgin Islands, or between the United States and another country, such as Cyprus or the United Arab Emirates.

It is not necessary for a defendant to be directly or personally involved in any wire communication, as long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud in which the particular defendant is accused of participating. In this regard, it would be sufficient to establish this element of the crime if the evidence justifies a finding that a defendant caused the wires to be used by others; and this does not mean that the defendant himself must have specifically authorized others to execute a wire communication. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.  Incidentally, this wire communication requirement is satisfied even if the wire communication was done by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud.

26

The use of the wire need not itself be fraudulent.  Stated another way, the wire communication need not contain any fraudulent representation, or even any request for money. It is sufficient if the wires were used to further or assist in carrying out the scheme to defraud.

Let me also add the following: only the wire communication must be reasonably foreseeable, not its interstate or foreign component.  Thus, if you find that the wire communication was reasonably foreseeable, and the interstate or foreign wire communications actually took place, then this element is satisfied even if it was not foreseeable that the wire communication would cross state or national lines.

> Adapted from Sand, Modern Federal Jury Instructions, Instr. 44-7 (based on the charge of the Honorable Edward Weinfeld in United States v. Ranney, 82 Cr. 771 (S.D.N.Y. 1983)); and the charges of the Honorable Ronnie Abrams in United States v. Tagliaferri, 13 Cr. 115 (S.D.N.Y. 2014), the Honorable Michael B. Mukasey in United States v. Uccio, 88 Cr. 906 (S.D.N.Y. 1989), aff'd, 917 F.2d 80 (2d Cir. 1990), of the Honorable Charles S. Haight, Jr. in United States v. Rogers, 90 Cr. 377 (S.D.N.Y. 1991), of the Honorable John G. Koeltl, United States v. Szur, S5 97 Cr. 108 (S.D.N.Y. 1998); Pereira v. United States, 347 U.S. 1, 8-9 (1954) (defendant "causes" mailing so long as he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such can reasonably be foreseen."); United States v. Keats, 937 F.2d 58 (2d Cir.) (defendant need not have personally sent charged wire communication; affirming conviction where Government agent and informant initiated charged telephone calls), cert. denied, 502 U.S. 950 (1991); United States v. Bortnovsky, 879 F.2d 30, 36-41 (2d Cir. 1989) (extended discussion of "in furtherance" requirement in mail fraud case; holding that letter mailed two years after fraud by innocent third party was "reasonably foreseeable" and "in furtherance" of fraud); United States v. Blackmon, 839 F.2d 900, 907-08 (2d Cir. 1988) (regarding foreseeability of interstate nature of communication);  United States v. Muni, 668 F.2d 87, 89-91 (2d Cir. 1981) (extended discussion of "foreseeability" of wire communication); Schmuck v. United States, 489 U.S. 705 (1989); United States v. Paccione, 949 F.2d 1183, 1196 (2d Cir. 1991), cert. denied, 112 S. Ct. 3029 (1992); United States v. Keats, 937 F.2d 58, 64 (2d Cir.), cert. denied, 112 S. Ct. 399 (1991).

27

**REQUEST NO. 15**

**Aiding and Abetting**

Each of the substantive counts charged in the Indictment – including the wire fraud charge in Count Two and the investment adviser fraud charge in Count Three – also charge the defendant OMAR AMANAT with violating 18 U.S.C. § 2, the "aiding and abetting" statute. With respect to the wire fraud charge in Count Two, AMANAT is charged not only as a principal who committed the crime, but also as an aider and abettor and with having willfully caused the crime. With respect to the investment adviser fraud charge in Count Three, AMANAT is charged only as an aider and abettor and with having willfully caused the crime. As a result, under 18 U.S.C. § 2, there are two additional ways that the Government may establish a defendant's guilt on the counts charged in the Indictment. One way is called "aiding and abetting," and the other is called "willfully causing a crime." Let me explain each of these.

"Aiding and abetting" is set forth in Section 2(a) of the statute. That section reads, in part, as follows:

> Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the Government to show that a defendant himself physically committed the crime with which he is charged in order for you to find the defendant guilty. Thus, even if you do not find beyond a reasonable doubt that a defendant himself committed the crime charged, you may, under certain circumstances, still find that defendant guilty of that crime as an aider or abettor.

A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself. Accordingly, you may find a defendant guilty of the substantive

28

crime if you find beyond a reasonable doubt that the Government has proved that another person actually committed the crime, and that the defendant aided and abetted that person in the commission of the offense.

As you can see, the first requirement is that another person has committed the crime charged. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of the crime.

In order to aid or abet another to commit a crime, it is necessary that a defendant willfully and knowingly associate himself in some way with the crime, and that he willfully and knowingly seek by some act to help make the crime succeed.

Participation in a crime is willful if action is taken voluntarily and intentionally, or, in the case of a failure to act, with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

29

-- Did he participate in the crime charged as something he

wished to bring about?

-- Did he associate himself with the criminal venture

knowingly and wilfully?

-- Did he seek by his actions to make the criminal venture

succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense. If

he did not, then the defendant is not an aider and abettor, and is not guilty as an aider and abettor

of that offense.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instrs. 11-1 and 11-2, and from the charge approved in United States v. Stanchich, 550 F.2d 1294 (2d Cir. 1977). See United States v. Labat, 905 F.2d 18, 23 (2d Cir. 1990) (discussing requirements of aiding and abetting liability); United States v. Clemente, 640 F.2d 1069 (2d Cir.) (same), cert. denied, 454 U.S. 820 (1981).

## REQUEST NO. 16

### Willfully Causing a Crime

The second way in which the Government can prove a defendant's guilt under 18 U.S.C. § 2 on each substantive count of the Indictment is through a finding beyond a reasonable doubt that the defendant willfully caused a crime.  Section 2(b) of the aiding and abetting statute, which relates to willfully causing a crime, reads as follows:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States [shall be guilty of a federal crime].

What does the term "willfully caused" mean?  It means that a defendant himself need not have physically committed the crime or supervised or participated in the actual criminal conduct charged in the Indictment.

The meaning of the term "willfully caused" can be found in the answers to the following questions:

First, did the defendant you are considering take some action without which the crime would not have occurred?

Second, did the defendant intend that the crime would be actually committed by others?

If you are persuaded beyond a reasonable doubt that the answer to both of these questions is "yes" then the defendant is guilty of the crime charged just as if the defendant himself had actually committed it.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instr. 11-3; United States v. Concepcion, 983 F.2d 369, 383-84 (2d Cir. 1992); United States v. Sliker, 751 F.2d 477, 494 (2d Cir. 1984); United States v. Margiotta, 688 F.2d 108 (2d Cir. 1982); United States v. Gleason, 616 F.2d 2 (2d Cir. 1979); United States v. Kelner, 534 F.2d 1020, 1022-23 (2d Cir. 1976).

## REQUEST NO. 17

### Count Three:  Aiding and Abetting Investment Adviser Fraud –
### The Indictment and the Statute

As I've previously mentioned, Count Three of the Indictment charges defendant OMAR AMANAT with committing investment adviser fraud.  However, because the defendant was not himself an investment adviser, he is not charged in this Indictment as a principal, but instead is charged with aiding or abetting others in the commission of investment adviser fraud.

Specifically, Count Three of the Indictment charges that, from in or about March 2009 through in or about June 2012, the defendant aided and abetted the commission of investment adviser fraud by an investment adviser named Stephen Maiden.

The relevant investment adviser fraud statutes are found at Title 15 of the United States Code, Sections 80b-6 and 80b-17.  The relevant portion of Section 80b-6 provides that: "It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (a) to employ any device, scheme or artifice to defraud any client or prospective client; (b) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client; or (c) to engage in any act, practice, or course of business that was fraudulent, deceptive or manipulative."

Section 80b-17 is a general penalty provision of the Investment Adviser Act that makes it a crime to willfully violate its provisions or any rule or regulation thereunder, and it provides in pertinent part as follows: "Any person who willfully violates any provision of this subchapter or any rule, regulation or order promulgated by the SEC under authority thereof, shall be guilty of an offense against the United States."

32

# REQUEST NO. 18

## Count Three:  Aiding and Abetting Investment Adviser Fraud – Fiduciary Duty

A "fiduciary" is a special type of agency in which a special trust or confidence is entrusted in the agent, who is duty bound to act in the utmost good faith and candor and good conscience with due regard for the interests of the person entrusting the confidence.  Examples of a fiduciary include (but are not limited to) an executor or administrator of an estate; an attorney with respect to the affairs of his client; a guardian of an infant or incompetent person with respect to his ward; and the officers and directors of a corporation with respect to the stockholders of the corporation.  I instruct you as a matter of law that investment advisers are fiduciaries to their investment advisory clients.

Thus, an investment adviser has an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients.  I instruct you that a fiduciary owes a duty to disclose all material facts concerning the transaction entrusted to it.  The concealment by a fiduciary of material information which he or she is under a duty to disclose to another, under circumstances where the non-disclosure can or does result in harm to the other, can be a fraud, if the Government has proven beyond a reasonable doubt the other elements of the offense.

> Adapted from S.E.C. v. Capital Gains Research Bur., 375 U.S. 180 (1963); Transamerica Mortg. Advisors v. Lewis, 444 U.S. 11, 17 (U.S. 1979); United States v. Szur, 289 F.3d 200 (2d Cir. 2002); and the charge of the Honorable Ronnie Abrams in United States v. Tagliaferri, 13 Cr. 115 (S.D.N.Y. 2014).

**REQUEST NO. 19**

**Count Three:  Aiding and Abetting Investment Adviser Fraud – Elements of the Offense**

I will now explain the elements of the investment adviser fraud charge.  In order to prove a defendant guilty of this crime on an aiding and abetting theory, the Government must prove all five of the following essential elements:

First, that the investment adviser named in Count Three of the Indictment, Stephen Maiden, was in fact an investment adviser;

Second, that Stephen Maiden did one of the following: (a) employed a device, scheme, or artifice to defraud an actual or prospective investor advisory client; (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those investment advisory clients or prospective investment advisory clients; or (c) engaged in an act, practice, and course of business that was fraudulent, deceptive, and manipulative;

Third, that Stephen Maiden devised or participated in such alleged device, scheme or artifice to defraud, or engaged in such alleged transaction, practice, or course of business, knowingly, willfully, and with the intent to defraud;

Fourth, that Stephen Maiden employed such alleged device, scheme, or artifice to defraud, or engaged in such alleged transaction, practice, or course of business, by use of the mails or an instrumentality of interstate commerce; and

Fifth, that defendant OMAR AMANAT aided and abetted Stephen Maiden by willfully and knowingly associating himself in some way with the crime, and by willfully and knowingly seeking by some act to help make the crime succeed.

> Adapted from the charge of the Honorable Ronnie Abrams in United
> States v. Tagliaferri, 13 Cr. 115 (S.D.N.Y. 2014); and the charge of
> the Honorable Richard J. Sullivan in United States v. Alberto Vilar
> & Gary Tanaka, 05 Cr. 621 (RJS).

**REQUEST NO. 20**

**Count Three:  Aiding and Abetting Investment Adviser Fraud – First Element: Investment Adviser Named in Indictment was in Fact an Investment Adviser**

With respect to Count Three, the first element the Government must prove beyond a reasonable doubt is that Stephen Maiden was in fact an investment adviser at the time the defendant you are considering is alleged to have aided and abetted that person's investment adviser fraud.  Title 15, United States Code, Section 80b-2 defines the term "investment adviser" as applied to this Act.  It provides, in pertinent part, as follows: "Investment adviser means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities, but does not include … any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor."

Thus, to determine whether Stephen Maiden was in fact an investment adviser under the Act, you must primarily consider three factors:

First, whether Stephen Maiden provided advice or was an adviser that issued reports or analyses regarding securities;

Second, whether Stephen Maiden was in the business of providing such advice; and

Third, whether Stephen Maiden was provided compensation for such advice.

What I have just described to you pertains to your consideration of the first element of Count Three of the Indictment.  As I mentioned, an investment adviser has a fiduciary duty to his or her clients.

Keep in mind that whether a person or entity is an "investment adviser" is a different issue than whether or not the person or entity is a registered as an Investment Adviser. You are instructed that registration with the United States Securities and Exchange Commission as an investment adviser is not required for you to find that a person is an investment adviser as I have defined that term in my instructions to you.

> Adapted from the jury instructions in <u>United States</u> v. <u>James Tagliaferri</u>, 13 Cr. 115 (RA).

**REQUEST NO. 21**

**Count Three:  Aiding and Abetting Investment Adviser Fraud – Second Element:  Scheme to Defraud**

With respect to Count Three, the second element that the Government must prove beyond a reasonable doubt is that Stephen Maiden did any one or more of the following: (a) employed a device, scheme, or artifice to defraud an actual or prospective investor-client; (b) engaged in a transaction, practice, or course of business which operated as a fraud and deceit upon those investors or prospective investors; or (c) engaged in an act, practice, and course of business that was fraudulent, deceptive, and manipulative.

Any one of these types of alleged fraudulent conduct, if proven by the Government beyond a reasonable doubt, is sufficient.  However, you must be in unanimous agreement as to which type of unlawful conduct, if any, has been proven by the Government.

I have previously defined the terms "device, scheme, or artifice to defraud" and you are to follow those instructions here.

> Adapted from United States v. Amrep Corp., 560 F.2d 539, 546 (2d Cir. 1977) (distinguishing the existence of a scheme to defraud from the "means adopted to effectuate that scheme," and holding that the government need not prove every means charged in the indictment so long as "there is sufficient overall proof that the scheme exists" (internal quotation marks omitted)) and the jury instructions in United States v. James Tagliaferri, 13 Cr. 115 (RA).

**REQUEST NO. 22**

**Count Three:  Aiding and Abetting Investment Adviser Fraud – Third Element:  Intent**

With respect to Count Three, the third element the Government must prove beyond a reasonable doubt is that Stephen Maiden devised or participated in the alleged device, scheme, or artifice to defraud, or engaged in the allegedly fraudulent transaction, practice, or course of business, knowingly, willfully, and with the specific intent to defraud.

I have already instructed you as to the definitions of the terms "knowingly" and "willfully."  You are instructed to apply those same definitions when deliberating on Count Three.  With regard to Count Three, in order to prove that Maiden acted with the intent to defraud, however, the Government need only prove that the investment adviser acted with an intent to deceive his client.  The Government need not show that the investment adviser acted with an intent to cause harm to his clients.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instr. 57-16; United States v. Tagliaferri, 2016 WL 2342677 (2d Cir. May 4, 2016) (intent element for investment adviser fraud is "intent to deceive" not "intent to harm").

38

**REQUEST NO. 23**

**Count Three:  Aiding and Abetting Investment Adviser Fraud – Fourth Element:
Interstate Nexus**

With respect to Count Three, the fourth element the Government must prove beyond a reasonable doubt is that Stephen Maiden knowingly used or caused to be used the mails or an instrumentality of interstate commerce, such as interstate telephone or wire communications, in furtherance of the alleged scheme to defraud, or the allegedly fraudulent conduct specified in the Indictment.   The term instrumentality of interstate commerce means instruments, devices and means of conducting trade, commerce, transportation, or communication among any two states, or between this country and a foreign country.  It is not necessary that the investment adviser be directly or personally involved in mailing or use of the instrumentality.  If an investment adviser was an active participant in the scheme and took steps or engaged in conduct which he knew or could reasonably foresee would naturally and probably result in the use of the mails or interstate wires, then you may find that he caused them to be used.  The items allegedly sent through the mails or communicated through the instrumentality of interstate commerce need not have contained fraudulent material or anything criminal or objectionable, nor need they be central to the execution of the alleged scheme to defraud or allegedly fraudulent conduct and may even be incidental to it.  All that is required is that the use of the mails or instrumentalities must bear some relation to the object of the alleged scheme or conduct.

Adapted from the jury instructions in United States v. James Tagliaferri, 13 Cr. 115 (RA).

**REQUEST NO. 24**

**Count Three:  Aiding and Abetting Investment Adviser Fraud –
Fifth Element:  Aiding and Abetting**

With respect to Count Three, if the Government proves each of the first four elements just described beyond a reasonable doubt, it will have established that Stephen Maiden committed investment adviser fraud.  In order for you to find defendant OMAR AMANAT guilty with respect to Count Three, the Government must prove a fifth element beyond a reasonable doubt, namely that the defendant aided and abetted Stephen Maiden by willfully and knowingly associating himself in some way with the crime, and by willfully and knowingly seeking by some act to help make the crime succeed and doing so with the specific intent to defraud, as I have defined the term for Count Three, that is the intent to deceive.  I have already provided you instructions with respect to determining whether a defendant aided and abetted a crime committed by another person.  You should follow those instructions here.

As I instructed you with regard to Count Two, I remind you that "good faith," as I previously defined that term, is a complete defense to a charge of aiding and abetting investment adviser fraud.  A defendant has no burden to establish a defense of good faith.  The burden is on the Government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.  Please also keep in mind, however, as I have previously instructed you, that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no investors would lose any money or that particular investments would ultimately be financially advantageous for clients does not necessarily constitute good faith.  No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investor adviser's clients will excuse his aiding and abetting fraudulent actions or false representations by the investment advisor.

Adapted from Sand, et al., <u>Modern Federal Jury Instructions</u>, Instrs. 11-1 and 11-2, and from the charge approved in <u>United States</u> v. <u>Stanchich</u>, 550 F.2d 1294 (2d Cir. 1977). <u>See</u> <u>United States</u> v. <u>Labat</u>, 905 F.2d 18, 23 (2d Cir. 1990) (discussing requirements of aiding and abetting liability); <u>United States</u> v. <u>Clemente</u>, 640 F.2d 1069 (2d Cir.) (same), <u>cert. denied</u>, 454 U.S. 820 (1981).

**REQUEST NO. 25**

**Count Four:  Conspiracy to Commit Securities Fraud – The Indictment and Statute**

Count Four of the Indictment charges the defendants KALEIL ISAZA TUZMAN and OMAR AMANAT with conspiring to commit the substantive offense of securities fraud, in violation of Title 18, United States Code, Section 371.  That section provides in relevant part: "If two or more persons conspire . . . to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the conspiracy, each . . ." is guilty of a crime.

Count Four of the Indictment charges that, from at least in or about December 2008 through in or about September 2011, KALEIL ISAZA TUZMAN and OMAR AMANAT conspired to commit securities fraud.  The Indictment alleges that the securities fraud conspiracy charged in Count Four related to an alleged scheme by both defendants – and Stephen Maiden of Maiden Capital – to manipulate the shares of KITD by artificially inflating the share price and trading volume of KITD shares.

## REQUEST NO. 26

### Count Four:  Conspiracy to Commit Securities Fraud – Elements

To sustain its burden of proof with respect to the allegation of conspiracy, the Government must separately prove beyond a reasonable doubt the following three elements:

First, that the conspiracy charged existed – that is, the existence of an agreement or understanding to commit at least one of the object crimes charged in the Indictment;

Second, that the defendant you are considering willfully and knowingly became a member of the conspiracy; and

Third, that any one of the conspirators – not necessarily the defendant you are considering, but any one of the parties involved in the conspiracy – knowingly committed at least one overt act in furtherance of the conspiracy during the life of the conspiracy.

I have previously instructed you on the concept of a criminal conspiracy, and you should follow those instructions here.  The first two elements of Count Four are the same as the first two elements of the conspiracy charged in Count One, and you should follow my previous instructions.  Here, the object of the conspiracy is securities fraud, and I will instruct you on elements of securities fraud.  I will also instruct you on the third element of a securities fraud conspiracy, whether an overt act was committed in furtherance of the conspiracy.

I further instruct you that KITD shares are a "security" within the meaning of the law.

> Adapted from Judge Jones's charge in United States v. Weissman,
> 01 Cr. 529 (BSJ).

## REQUEST NO. 27

### Count Four:  Conspiracy to Commit Securities Fraud – Element One:  Object of the Conspiracy

The object of the conspiracy charged in Count Four of the Indictment is securities fraud.

In order to prove that a defendant is guilty of the conspiracy offense charged in Count Four, the

Government must establish beyond a reasonable doubt that the defendant agreed with others to

commit securities fraud.

### <u>Securities Fraud:  Elements of the Offense</u>

The relevant law here is Section 10(b) of the Securities Exchange Act of 1934, which is

set forth in 15 U.S.C. § 78j(b). Section 10(b) provides, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Based on its authority under this statute, the SEC has created a number of rules and

regulations, one of which, known as Rule 10b-5 is relevant here. Rule 10b-5 reads as follows:

> **Employment of manipulative and deceptive devices.** It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

> (a) to employ any device, scheme, or artifice to defraud,

> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

44

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The substantive offense of securities fraud set forth in Section 10(b) thus has three elements:

First, that in connection with the purchase or sale of stock, or shares in a company, the defendant you are considering did any one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

Second, that the defendant you are considering acted knowingly, willfully, and with the intent to defraud; and

Third, that the defendant you are considering used or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.  I will discuss each element in turn.

## Securities Fraud:  First Element – Fraudulent Act

As I mentioned, the first element of securities fraud is that, in connection with the purchase or sale of securities, the defendant you are considering did any one of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

To prove this element, it is not necessary for the Government to prove all three types of unlawful conduct in connection with the purchase or sale of securities. Any one will suffice. You must, however, be unanimous as to which type of unlawful conduct, if any, the defendant you are considering committed.

Let me now explain some of these terms.

**"Device, Scheme, Or Artifice To Defraud"**

I have already defined the term "a device, scheme or artifice to defraud." You should follow those instructions here. The fraud or deceit need not relate to the investment value of the securities involved in this case.

**False Statements And Omissions**

A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is fraudulent if it was made with the intention to deceive. The concealment of material facts in a manner that makes what is said or represented deliberately misleading may also constitute false or fraudulent statements under the statute. The failure to disclose information may also constitute a fraudulent representation if the defendant you are considering was under a legal, professional or contractual duty to make such a disclosure, the defendant actually knew such disclosure was required to be made, and the defendant failed to make such disclosure with the intent to defraud.

The deception need not be based upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.

### "In Connection With"

You cannot find that the Government has proven the first element unless you find that the defendant you are considering participated, or agreed to participate, in fraudulent conduct that was "in connection with" a purchase or sale of securities.  The requirement that the fraudulent conduct be "in connection with" a purchase or sale of securities is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.  You need not find that the defendant you are considering actually participated in any specific purchase or sale of a security if you find that the defendant participated, or agreed to participate, in fraudulent conduct that was "in connection with" a "purchase or sale" of securities.

It is not necessary for you to find that the defendant you are considering was or would be the actual seller of the securities. It is sufficient if the misrepresentation or omission of material fact involved the purchase or sale of securities. By the same token, the Government need not prove that the defendant you are considering personally made the misrepresentation or that he omitted the material fact.  It is sufficient if the Government establishes that the defendant caused the statement to be made or the fact to be omitted.  With regard to the alleged misrepresentations and omissions, you must determine whether the statements were true or false when made, and, in the case of alleged omissions, whether the omissions were misleading.

**"Material Fact"**

If you find that the Government has established beyond a reasonable doubt that a statement was false or a statement was omitted rendering the statements that were made misleading, you must next determine whether the statement or omission was material under the circumstances.  The word "material" here refers to the nature of the false or misleading statements.  As I explained previously with respect to Count One, we use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance.  Matters that are "material" may also include fraudulent half-truths or omissions of material fact.  A material fact is one that a reasonable person would have considered important in making his or her investment decision.  That means that if you find a particular statement of fact or omission to have been untruthful or misleading, before you can find that statement or omission to be material, you must also find that the statement or omission was one that would have mattered to a reasonable person in making such an investment decision.

Any testimony that you may have heard from any witness with respect to whether a particular fact would or would not have been important to him or to investors in general reflect that witness's individual views.  Although you may consider such testimony, it is not controlling.  It is for you to determine whether a particular fact would have been significant to a reasonable investor in making an investment decision.

In considering whether a statement or omission was material, let me caution you that it is not a defense if the material misrepresentation or omission would not have deceived a person of ordinary intelligence.  Once you find that the offense involved the making of material misrepresentations or omissions of material facts, it does not matter whether the intended victims

were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was or would have been successful, or whether the defendant you are considering profited or would have profited as a result of the alleged scheme.  Success is not an element of a violation of Section 78j(b) or Rule 10b-5.  If, however, you find that the defendant you are considering expected to or did profit from the alleged scheme, you may consider that in relation to the element of intent, which I will discuss in a moment.

In assessing whether a misstatement or omission is material, both quantitative and qualitative factors should be considered.  In assessing whether a stated or omitted fact is quantitatively material, you should consider the financial magnitude of the misstatement or omission.  Under this inquiry, an omission or misstatement of an item in a financial report is quantitatively material if, in light of surrounding circumstances, the magnitude of the item is such that it is probable that the judgment of a reasonable person relying upon the report would have been changed or influenced by the inclusion or correction of the item.  However, the magnitude of a misstatement is only the beginning of an analysis of materiality.  You should also consider whether qualitative factors make a misstatement or omission material.  With respect to financial statements, qualitative factors may cause misstatements of quantitatively small amounts to be material.

In assessing whether a misstatement or omission is qualitatively material, you may consider, among other factors:

   • whether the misstatement masks a change in earnings or other trends;

• whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise;

• whether the misstatement changes a loss into income or vice versa;

• whether the misstatement affects the registrant's compliance with regulatory requirements;

• whether the misstatement has the effect of increasing management's compensation – for example, by satisfying requirements for the award of bonuses or other forms of incentive compensation;

• whether the misstatement involves concealment of an unlawful transaction.

This is not an exhaustive list of the circumstances that may render material a misstatement that is quantitatively small. Among other factors, the demonstrated volatility of the price of a registrant's securities in response to certain types of disclosures may provide guidance as to whether investors regard quantitatively small misstatements as material. When management expects (based, for example, on a pattern of market performance) that a known misstatement may result in a significant positive or negative market reaction, that expected reaction should be taken into account when considering whether a misstatement is material.

You should not assume that even small intentional misstatements in financial statements, for example those pursuant to actions to "manage" earnings, are immaterial. While the intent of management does not render a misstatement material, it may provide significant evidence of materiality. The evidence may be particularly compelling where management has intentionally misstated items in the financial statements to "manage" reported earnings. In that instance, it presumably has done so believing that the resulting amounts and trends would be significant to users of the registrant's financial statements.

Remember, in assessing materiality, you should consider all the relevant facts and circumstances, both quantitative and qualitative.  Furthermore, you should consider both the individual misstatements or omissions, and their aggregate effect, in determining materiality.

### Securities Fraud:  Second Element – Knowledge, Intent and Willfulness

The second element of the substantive crime of securities fraud is that the defendant you are considering acted knowingly, willfully and with intent to defraud.  I have already instructed you on the concepts of "knowledge" and "willfulness," and you should follow those instructions here.  "Intent to defraud" in the context of the securities laws means to act knowingly and with intent to deceive.

### Securities Fraud:  Third Element – Instrumentality of Interstate Commerce

The third and final element of the crime of substantive securities fraud is that the defendant you are considering knowingly used, or caused to be used, some instrumentality of interstate commerce.  I have already instructed you on the concept of instrumentality of interstate commerce, and you should follow my instructions here.  Examples of instrumentalities of interstate commerce include an interstate telephone call, use of the mails, or use of a facility of a national securities exchange, such as a stock or options trade made on the NASDAQ, the New York Stock Exchange, or the over-the-counter markets.

Let me first note that it is unnecessary for the Government to prove both the mails or an instrumentality of interstate commerce was used in furtherance of the fraudulent scheme.  Only one of the above – either the mails <u>or</u> an instrumentality of interstate commerce – is enough. But you must be unanimous as to at least one.

> Adapted from the charges of the Honorable Loretta A.
> Preska in <u>United States</u> v. <u>Collins</u>, 07 Cr. 1170 (LAP), the
> Honorable Barbara S. Jones in <u>United States</u> v. <u>Ebbers</u>, 02
> Cr. 1144 (BSJ) and <u>United States</u> v. <u>Weissman</u>, 01 Cr. 529

(BSJ), the Honorable Denny Chin in United States v. Richards et al., 98 Cr. 1377 (DC), the Honorable Michael B. Mukasey in United States v. Goldenberg, 98 Cr. 974 (MBM) (S.D.N.Y. Dec. 20, 1999), and the Honorable Leonard B. Sand in United States v. Pignatiello, S1 96 Cr. 1032 (LBS) (July 14, 1999); and from Modern Federal Jury Instructions, Instr. 44-1, 57-16 through 57-21, 57-25. See also United States v. Gleason, 616 F.2d 2 (2d Cir. 1979), cert. denied, 444 U.S. 1082 (1980); United States v. Skelly, 442 F.3d 94, 98 (2d Cir. 2006); United States v. Santoro, 302 F.3d 76, 80-81 (2d Cir. 2002) ("Unlike customers who independently find their stocks and whose brokers merely execute trades at their command, customers who rely on investment recommendations reasonably trust their brokers to fully disclose all information pertinent to the recommendation and quality of the investment."); United States v. Amrep Corp., 560 F.2d 539, 546 (2d Cir. 1977) (distinguishing the existence of a scheme to defraud from the "means adopted to effectuate that scheme," and holding that the government need not prove every means charged in the indictment so long as "there is sufficient overall proof that the scheme exists" (internal quotation marks omitted)); United States v. Litvak, 808 F.3d 160, 178 (2d Cir. 2015) (intent element for securities fraud is "intent to deceive, manipulate or defraud" not "intent to harm"); United States v. Giordano, 442 F.3d 30, 40 & n.11 (2d Cir. 2006) (defining "instrumentality of interstate commerce"); United States v. Santoro, 302 F.3d 76, 80-81 (2d Cir. 2002) ("Unlike customers who independently find their stocks and whose brokers merely execute trades at their command, customers who rely on investment recommendations reasonably trust their brokers to fully disclose all information pertinent to the recommendation and quality of the investment."); Ganino v. Citizens Utilities Co., 228 F.3d 154, 163 (2d Cir. 2000) ("SAB No. 99 is thoroughly reasoned and consistent with existing law – its non-exhaustive list of factors is simply an application of the well-established *Basic* analysis to misrepresentations of financial results – we find it persuasive guidance for evaluating the materiality of an alleged misrepresentation."); SEC Staff Accounting Bulletin ("SAB") 99.

**REQUEST NO. 28**

**Count Four:  Conspiracy to Commit Securities Fraud – Element Three:  Overt Act**

The third element of Count Four that the Government must prove beyond a reasonable doubt is the commission of an overt act.  In particular, the Government must show beyond a reasonable doubt that at least one overt act was committed in furtherance of the conspiracy charged in Count Four by at least one of the co-conspirators – not necessarily the defendant you are considering.

The purpose of the overt act requirement is clear.  There must have been something more than mere agreement; some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.

Let me put it colloquially.  The overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage.  The requirement of an overt act is a requirement that some action be taken during the life of the conspiracy by one of the co-conspirators to further the conspiracy.

For the Government to satisfy the overt act requirement, it is not necessary for the Government to prove all of the overt acts alleged in the Indictment or even <u>any</u> of the overt acts contained in the Indictment.  Indeed, you may find that overt acts were committed that were <u>not</u> alleged at all in the Indictment.  In short, it is sufficient for the Government to show that the defendant <u>or</u> one of his alleged co-conspirators knowingly committed an overt act – whether specifically charged in the Indictment or not – in furtherance of the conspiracy.  You must be unanimous on at least one such overt act.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the Indictment.  It is sufficient if you are convinced beyond a reasonable doubt that an overt act occurred while the conspiracy was in existence.

In considering this element, you should bear in mind that an overt act, standing alone, may be an innocent, lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  You are therefore instructed that the overt act does not have to be an act that in and of itself is criminal or constitutes an object of the conspiracy.

> Adapted from the charges of the Honorable Loretta A. Preska in United States v. Collins, 07 Cr. 1170 (LAP), and the Honorable Paul A. Crotty in United States v. Tomasetta, 10 Cr. 1205 (PAC); and Sand, et al., Modern Federal Jury Instructions, Instr. 19-7.

**REQUEST NO. 29**

**Count Five:  Conspiracy to Commit Wire Fraud**

Count Five of the Indictment charges that, from at least in or about March 2009 through in or about March 2011, the defendant KALEIL ISAZA TUZMAN conspired to commit the substantive offense of wire fraud, in violation of Title 18, United States Code, Section 1349.  The Indictment alleges that the wire fraud conspiracy charged in Count Five relates to an alleged scheme to mislead KITD shareholders by failing to disclose that certain investments with Maiden Capital that defendant KALEIL ISAZA TUZMAN caused KITD to make were not part of an arms-length relationship but were actually related party transactions made for an improper purpose.

I have previously instructed you on the concept of a criminal conspiracy and the elements of conspiracy to commit wire fraud in connection with Count One, and you should follow those instructions here.

## REQUEST NO. 30

### Count Six:  Conspiracy to Commit Securities Fraud, Make False Statements in SEC Filings, and Make False Statements to Auditors

Count Six of the Indictment charges the defendant KALEIL ISAZA TUZMAN with conspiring to commit three federal offenses in violation of Title 18, United States Code, Section 371.  Specifically, Count Six of the Indictment charges that, from 2009 through in or about April 2012, defendant KALEIL ISAZA TUZMAN conspired to (1) commit securities fraud, (2) make false statements in annual and quarterly reports filed with the Securities and Exchange Commission ("SEC") and (3) make false statements to auditors. The Indictment alleges that the conspiracy charged in Count Six relate to an alleged accounting fraud scheme in which defendant KALEIL ISAZA TUZMAN caused KITD to deceive KITD's shareholders, members of the investing public, KITD's independent auditors and others concerning KITD's true operating performance and financial results.

I have previously instructed you on the concept of a criminal conspiracy and the three elements of conspiracy to commit securities fraud in connection with Count Four, and you should follow those instructions here.

In addition to a securities fraud object, the conspiracy charged in Count Six has two additional unlawful purposes or objects:  (a) making false statements in filings with the SEC and (b) making false statements to auditors.  You should keep in mind that you need not find that the conspirators agreed to accomplish each one of these three objects.  An agreement to accomplish any one of these three objects is sufficient.  Although the finding of one unlawful objective is sufficient to satisfy the illegal purpose element, I instruct you that you, the jury, must unanimously agree on which object, if any, was the specific object or objects of the alleged conspiracy.  If the Government fails to prove beyond a reasonable doubt that at least one of the

56

unlawful objectives alleged in Count Six was in fact an objective of the conspiracy, or if you cannot unanimously agree as to which of the unlawful objects alleged in the Indictment have been proven beyond a reasonable doubt, then you must find the defendant not guilty as to the conspiracy charge.

I will now provide further instructions with respect to each of the three objects.

## REQUEST NO. 31

### Count Six: Conspiracy – Securities Fraud Object

The first object of the conspiracy charged in Count Six of the Indictment is substantive securities fraud.  I have previously instructed you on the elements of substantive securities fraud in connection with Count Four, and you should follow those instructions here.

**REQUEST NO. 32**

**Count Six: Conspiracy – Making False Statements in SEC Filings Object**

The second object of the conspiracy charged in Count Six of the Indictment is making, or causing to be made, false statements in reports and documents required to be filed under the Securities Exchange Act of 1934.  Section 32 of the Securities Exchange Act of 1934, Title 15, United States Code, Section 78ff.  Section 78ff provides in relevant part:

> [A]ny person who willfully and knowingly makes, or causes to be made, any statement in any application, report, or document required to be filed under this title or any rule or regulation thereunder . . . which statement was false or misleading with respect to any material fact [shall be guilty of a crime].

This section is the general provision of the federal securities laws that makes it unlawful to willfully violate any provision of the Securities Exchange Act of 1934, or any rule or regulation thereunder, by making materially false and misleading statements in applications, reports, and documents required to be filed with the SEC.

The SEC requires public companies to file quarterly reports, or Form 10-Qs, for each of the first three quarters of every fiscal year.  The SEC also requires public companies to file a current report on a form called a Form 8-K for, among other reasons, any public announcement or release that discloses material non-public information regarding that company's results of operations or financial condition for a completed quarterly or annual fiscal period.

**Elements**

To establish a violation of Title 15, United States Code, Section 78ff, the Government must prove each of the following elements:

First, that KITD was required by the Securities Exchange Act of 1934 to file the document charged in that Count; and

Second, that the defendant knowingly and willfully made, or caused to be made, a materially false or misleading statement in that document.

Now I will explain these two elements in more detail.

### First Element – Required Filings

First, the Government must show that KITD was required by the Securities Exchange Act of 1934 to file reports and document. I have already instructed you that public companies are required to file documents and reports as prescribed by the SEC. These include quarterly reports on Form 10-Q and current reports on Form 8-K for, among other reasons, any public announcement or release that discloses material non-public information regarding the company's results of operations or financial condition for a completed quarterly or annual fiscal period. If you find that KITD was a public company, it was required to file these reports.

### Second Element – Material Falsity

The Government next must prove that the defendant made, or caused to be made, materially false and misleading statements in the filing you are considering.

As I have instructed you, a statement or representation is "false" if it was untrue when made, and known at the time to be untrue by the person making it or causing it to be made. A statement is misleading if it is either an untrue statement as to a material fact or if it omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

I have defined the term "material" for you previously and you should use that definition here.

I have also defined the terms and "knowingly" and "willfully." Those same definitions apply here.

To establish this element, the Government need not prove that the defendant himself physically made or otherwise personally prepared the statements in question.  It is sufficient if the Government has proved the defendant caused materially false information to be filed by some person.

> Adapted from the charge of the charge of the Honorable Paul A. Crotty in United States v. Tomasetta, 10 Cr. 1205 (PAC); Title 15, United States Code, Sections 78m(a) and 78o(d); and Title 17, Code of Federal Regulations, Section 240.13a-11 and 13a-13; Form 8-K, Section 2, Item 2.02; Sand, et al., Modern Federal Jury Instructions, Instr. 36-9 and 36-10

## REQUEST NO. 33

### Count Six: Conspiracy – Making False Statements to Auditors Object

The third object of the securities fraud conspiracy charged in Count Six of the Indictment is making, or causing to be made, materially false and misleading statements to KITD's auditors. The law prohibits directors or officers of a corporation that has publicly traded securities from making or causing to be made false or misleading statements to an accountant either in connection with an audit or examination of the company's financial statements or in connection with the preparation and filing of documents with the SEC.

To establish this object, the Government must prove that two or more persons agreed that the directors or officers of a public company would, directly or indirectly, make or cause to be made a materially false or misleading statements; or that those officers or directors would, directly or indirectly, omit to state, or cause another person to omit to state, a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading. Such material false statements or omissions must be made to an accountant in connection with (1) an audit or examination of the financial statements of the company, or (2) the preparation or filing of any document or report required to be filed with the SEC.

I have already described for you the concepts of falsity and materiality, and have explained that a public company is required to file financial statements with the SEC. You should apply those same instructions here.

Adapted from the charge of the Honorable Barbara S. Jones in <u>United States</u> v. <u>Weissman</u>, 01 Cr. 529 (BSJ)

**REQUEST NO. 34**

**Conscious Avoidance**

I told you earlier that the defendants, in various respects, must have acted knowingly in order to be convicted. This is true with respect to the objects of the conspiracy charged in Counts One and Four, Five, and Six, as well as the substantive crimes charged in Counts Two, and Three. In determining whether a defendant acted knowingly with respect to the substantive crimes or the objectives of the conspiracy, you may consider whether that defendant deliberately closed his or her eyes to what otherwise would have been obvious. That is what the phrase "conscious avoidance" refers to.

As I told you before, acts done knowingly must be a product of a person's conscious intention. They cannot be the result of carelessness, negligence, or foolishness. But a person may not willfully and intentionally remain ignorant of a fact that is material and important to his or her conduct in order to escape the consequences of criminal law. We refer to this notion of intentionally blinding yourself to what is staring you in the face as conscious avoidance.

An argument by the Government of conscious avoidance is not a substitute for proof of knowledge; it is simply another factor that you, the jury, may consider in deciding what a defendant knew. Thus, if you find beyond a reasonable doubt that the defendant you are considering was aware that there was a high probability that a fact was so, but that the defendant deliberately and consciously avoided confirming this fact, such as by purposely closing his or her eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

With respect to the conspiracy counts, you must also keep in mind that there is an important difference between intentionally participating in the conspiracy, on the one hand, and

knowing the specific object or objects of the conspiracy, on the other.  You may consider

conscious avoidance in deciding whether a defendant knew the objective or objectives of a

conspiracy; that is, whether a defendant reasonably believed that there was a high probability

that a goal of the conspiracy was to commit the crimes charged as objects of that conspiracy and

deliberately avoided confirming that fact but participated in the conspiracy anyway.  But

conscious avoidance cannot be used as a substitute for finding that the defendant intentionally

joined the conspiracy in first place.  It is logically impossible for a defendant to intend and agree

to join a conspiracy if he does not actually know it exists, and that is the distinction I am

drawing.

In sum, if you find that the defendant you are considering believed there was a high

probability that a fact was so and that the defendant deliberately and consciously avoided

learning the truth of that fact, you may find that the defendant acted knowingly with respect to

that fact.  However, if you find that the defendant actually believed the fact was not so, then you

may not find that he acted knowingly with respect to that fact.  You must judge from all the

circumstances and all the proof whether the Government did or did not satisfy its burden of proof

beyond a reasonable doubt.

> Adapted from the charge in United States v. Datta, S1 11 Cr. 102
> (LAK).  See also United States v. Kozeny, 667 F.3d 122, 132 (2d
> Cir. 2011) (the "jury may be instructed on conscious avoidance only
> where '(1) the defendant asserts the lack of some specific aspect of
> knowledge required for conviction, and (2) the appropriate factual
> predicate for the charge exists, *i.e.*, the evidence is such that a
> rational juror may reach the conclusion beyond a reasonable doubt
> that the defendant was aware of a high probability of the fact in
> dispute and consciously avoided confirming that fact.'") (quoting
> United States v. Ferrarini, 219 F.3d 145, 154 (2d Cir. 2000)); United
> States v. Reyes, 302 F.3d 48, 54 (2d Cir. 2002) (in addition to actual
> knowledge, "a defendant can also be said to know a fact if he 'is
> aware of a high probability of its existence, unless he actually
> believes that it does not exist.'") (quoting Leary v. United States,

395 U.S. 6, 46 n.93 (1969)); <u>United States</u> v. <u>Ferrarini</u>, 219 F.3d
145, 154 (2d Cir. 2000) ("A conscious avoidance instruction permits
a jury to find that a defendant had culpable knowledge of a fact when
the evidence shows that the defendant intentionally avoided
confirming the fact.").

**REQUEST NO. 35**

**Venue**

Now, in addition to dealing with the elements of each of the offenses, you must also consider the issue of venue as to each offense, namely, whether any act in furtherance of the unlawful activity occurred within the Southern District of New York. The Southern District of New York includes Manhattan, the Bronx, Westchester, as well as several other counties, so anything that occurs in Manhattan occurs in the Southern District of New York.

It is sufficient to satisfy the venue requirement if any act by anyone in furtherance of the crime charged occurred within the Southern District of New York.  To satisfy this venue requirement only, the Government need not meet the burden of proof beyond a reasonable doubt.  It need not meet that standard on the venue requirement and the venue requirement only.  The Government meets its burden of proof if it establishes by a preponderance of the evidence – simply tips the scale in its favor – that an act in furtherance of the crime occurred within the Southern District of New York.  A preponderance of the evidence means that something is more likely than not.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instr. 3-11.; the charge of the Honorable William H. Pauley, III in United States v. Rahman, 09 Cr. 442 (WHP) (S.D.N.Y. 2009); the charge of the Honorable Michael B. Mukasey in United States v. Salam, 98 Cr. 208 (MBM) (S.D.N.Y. 1999), Tr. at 439; and the charge of the Honorable Charles S. Haight, Jr. in United States v. Rogers, 90 Cr. 377 (CSH) (S.D.N.Y. 1991). See also United States v. Gonzalez, 922 F.2d 1044, 1054-55 (2d Cir.) (affirming that venue is governed by a preponderance standard).

66

**REQUEST NO. 36**

**Time of Offense**

As to each Count in the Indictment, various date ranges are alleged.  It is sufficient if you find that the charged conduct that you are considering occurred around the dates set forth in the Indictment.

This is also a good opportunity to instruct you that it does not matter if a specific event or transaction is alleged to have occurred on or about a certain date, and the evidence indicates that in fact it occurred on another date.  The law only requires a substantial similarity between the dates alleged in the Indictment and the dates established by the testimony and other evidence.

> Adapted from the charges given in <u>United States</u> v. <u>Alvarado-Matriller</u>, 94 Cr. 723 (JGK), and <u>United States</u> v. <u>Martinez</u>, 97 Cr. 313 (HB).

**REQUEST NO. 37**

**Law Enforcement and Government Employee Witnesses**

You have heard testimony from law enforcement officials and employees of the Government.  The fact that a witness may be employed by the Federal Government as a law enforcement official or employee does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

In this context, defense counsel is allowed to try to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement or Government employee witness and to give to that testimony the weight you find it deserves.

Adapted from Sand et al., <u>Modern Federal Jury Instructions</u>, Instr. 7-16.

## REQUEST NO. 38

### Cooperating Witness Testimony

You have also heard from witnesses who have testified that they were involved in criminal conduct, and who subsequently pled guilty to their criminal conduct pursuant to what is called a "cooperation agreement" with the Government.

Experience will tell you that the Government frequently must rely on the testimony of cooperating witnesses, and other witnesses who have admitted to participating in crimes. The Government must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.

The testimony of such cooperating witnesses is properly considered by the jury. If cooperating witnesses could not be used, there would be many cases in which there was real guilt and conviction should be had, but in which convictions would be unobtainable.

For these very reasons, the law allows the use of cooperating witness testimony. Indeed, it is the law in federal courts that the testimony of a single cooperating witness may be enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

Because of the possible interest a cooperating witness may have in testifying, the cooperating witness's testimony should be scrutinized with care and caution. The fact that a witness is a cooperating witness can be considered by you as bearing upon his credibility. It does not follow, however, that simply because a person has admitted to participating in one or more crimes, that he is incapable of giving truthful testimony.

Like the testimony of any other witness, cooperating witness testimony should be given the weight that it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor, candor, the strength and accuracy of a witness's recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case.

You heard testimony about cooperation agreements entered into between the Government and various cooperating witnesses.  I must caution you that it is no concern of yours why the Government made an agreement with a particular witness.  Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of a cooperating witness, you should ask yourselves whether this cooperating witness would benefit more by lying, or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely?  Or did he believe that his interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth?  Did this motivation color his testimony?

If you find that the testimony was false, you should reject it.  If, however, after a cautious and careful examination of the cooperating witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still

may accept his testimony in other parts, or may disregard all of it.  That is a determination entirely for you, the jury.

> Adapted from the charge given in <u>United States</u> v. <u>Carrero</u>, 91 Cr. 365, and from Sand et al., <u>Modern Federal Jury Instructions</u>, Instr. 7-5.  <u>See also United States</u> v. <u>Gleason</u>, 616 F.2d 2, 15 (2d Cir. 1979) ("Where the court points out that testimony of certain types of witnesses may be suspect and should therefore be scrutinized and weighed with care, such as that of accomplices or coconspirators . . . it must also direct the jury's attention to the fact that it may well find these witnesses to be truthful, in whole or in part.") (citations omitted); <u>United States</u> v. <u>Cheung Kin Ping</u>, 555 F.2d 1069, 1073 (2d Cir. 1977) (same); <u>United States</u> v. <u>Swiderski</u>, 539 F.2d 854, 860 (2d Cir. 1976) (can be reversible error not to give accomplice witness charge if requested by defense).

**REQUEST NO. 39**

**Expert Testimony**

**[If applicable]**

You have heard testimony from a witness/certain witnesses who was/were proffered as (an) expert(s) in different areas.  An expert is allowed to express his or her opinion on those matters about which he or she has special knowledge and training.  Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing an expert's testimony, you may consider the expert's qualifications, opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept a witness's testimony merely because he or she is an expert. Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

Adapted from Sand et al., <u>Modern Federal Jury Instructions</u>, Instr. 7-21.

**REQUEST NO. 40**

**Character Testimony**

**[If applicable]**

You have heard testimony that [name of applicable defendant] has a good reputation for [to be completed as appropriate].

Along with all the other evidence you have heard, you may take into consideration what you believe about a defendant's reputation for [to be completed as appropriate] when you decide whether the Government has proven, beyond a reasonable doubt, that that defendant committed the crime.

Adapted from the charge in <u>United States</u> v. <u>Pujana-Mena</u>, 949 F.2d 24, 27-31 (2d Cir. 1991) (specifically approving charge).

**REQUEST NO. 41**

**Defendant's Testimony**

**[Requested only if a particular defendant testifies]**

[The Government respectfully requests that the Court include the following instruction in its general instruction on witness credibility, rather than as a separate instruction:]

The defendant testified at trial and was subject to cross-examination. You should examine and evaluate this testimony just as you would the testimony of any witness with an interest in the outcome of the case.

See United States v. Gaines, 457 F.3d 238, 249 (2d Cir. 2006).

**REQUEST NO. 42**

**Defendant's Right Not to Testify**

**[If requested by defense]**

[Name of applicable defendants] did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he or she is innocent.

You may not attach any significance to the fact that the defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand.  You may not consider this against the defendant in any way in your deliberations in the jury room.

Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr. 5-21.

## REQUEST NO. 43

### Uncalled Witnesses – Equally Available to Both Sides

There are people whose names you heard during the course of the trial but did not appear to testify.  [If applicable: One or more of the attorneys has referred to their absence from the trial.]  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should remember my instruction, however, that the law does not impose on the defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Adapted from Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr. 6-7.

**REQUEST NO. 44**

**Particular Investigative Techniques Not Required**

**[If applicable]**

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by the Government.  There is no legal requirement, however, that the Government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques.  The Government is not on trial.  Law enforcement techniques are not your concern.

Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

> Adapted from the charge of the Honorable Pierre N. Leval in United States v. Mucciante, 91 Cr. 403 (PNL) (S.D.N.Y. 1992), and from the charge of the Honorable John F. Keenan in United States v. Medina, 91 Cr. 894 (JFK) (S.D.N.Y. 1992).

**REQUEST NO. 45**

**Persons Not on Trial**

You may not draw any inference, favorable or unfavorable, towards the Government or the defendants on trial from the fact that any person in addition to the defendants is not on trial here.  You also may not speculate as to the reasons why other persons are not on trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors.

> Adapted from the charge of the Honorable Henry F. Werker in United States v. Barnes, S 77 Cr. 190 (S.D.N.Y. 1977), aff'd, 604 F.2d 121, 147 (2d Cir. 1979).

## REQUEST NO. 46

### Preparation of Witnesses

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

> Adopted from the charge of the Honorable Michael B. Mukasey in United States v. Abdul Latif Abdul Salam, 98 Cr. 208 (MBM) (S.D.N.Y. 1999).

**REQUEST NO. 47**

**Charts and Summaries – Not Admitted As Evidence**

**[If applicable]**

There have been a number of summary charts and exhibits that were shown to you but not admitted into evidence.  At the time they were shown to you, I have noted this fact to you. For these charts and exhibits that were not admitted into evidence, they serve merely as summaries and analyses of testimony and documents in the case and are here to act as visual aids for you.  It is the underlying evidence and the weight which you attribute to it that gives value and significance to these charts.  To the extent that the charts conform to what you determine the underlying facts to be, you should accept them.  To the extent that the charts differ from what you determine the underlying evidence to be, you may reject them.

> Adapted from the charge of the Hon. Richard J. Sullivan in United States v. Peirce, 06 Cr. 1032 (S.D.N.Y. 2008), and Sand et al., Modern Federal Jury Instructions, Instr. 5-13.

## REQUEST NO. 48

## Charts and Summaries – Admitted as Evidence

## [If applicable]

Now, some of the exhibits that were admitted into evidence were in the form of charts and summaries.  For these charts and summaries that were admitted into evidence, you should consider them as you would any other evidence.

> Sand, et al., Modern Federal Jury Instructions, Instr. 5-12. See also
> Fed. R. Evid. 1006.

**REQUEST NO. 49**

**Use of Recordings, Text Messages and E-Mails**

Recordings of telephone conversations, text messages, and e-mails have been admitted into evidence.  I instruct you that this evidence was obtained in a lawful manner and that no one's rights were violated, and that the Government's use of this evidence is entirely lawful.

Therefore, regardless of any personal opinions regarding the obtaining of such evidence, you must give this evidence full consideration along with all the other evidence in this case in determining whether the Government has proved each defendant's guilt beyond a reasonable doubt.  What weight you give these materials, if any, is completely within your discretion.

Adapted from charge of the Honorable Michael B. Mukasey in United States v. Joseph Brideson et al., S6 00 Cr. 1118 (MBM).

82

## REQUEST NO. 50

### Use of Audio Recordings and Transcripts

Audio recordings have been admitted into evidence in this case.  This evidence was lawfully obtained, and properly admitted in this case.  Whether you approve or disapprove of the recording of these conversations may not enter your deliberations.  I instruct you that these recordings were made in a lawful manner and that no one's rights were violated, and that the Government's use of this evidence is entirely lawful.

You must, therefore, regardless of any personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved beyond a reasonable doubt the guilt of the defendant.

To help your listening, transcripts have also been prepared.  However, the transcripts were not admitted into evidence; only the audio recordings were.  You are not to regard the transcripts as anything more than as an aid to you.  It is what you hear on the recordings that controls.  Nonetheless, if you wish to view the transcripts, they will be made available to you during your deliberations.

Adapted from the charge of the Honorable Pierre N. Leval in <u>United States</u> v. <u>Mucciante</u>, 91 Cr. 403 (PNL) (S.D.N.Y. 1992); <u>see also</u> Sand, et al., <u>Modern Federal Jury Instructions</u>, Instr. 5-9, 5-10.

83

## REQUEST NO. 51

### Stipulations

In this case you have heard evidence in the form of stipulations.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given the testimony.  However, it is for you to determine the effect to be given that testimony.

You also heard evidence in the form of stipulations that contain facts that were agreed to be true.  In such cases, you must accept those facts as true.

> Adapted from the charge of the Honorable Pierre N. Leval in United States v. Mucciante, 91 Cr. 403 (S.D.N.Y. 1992), and from Sand, et al., Modern Federal Jury Instructions, Instrs. 5-6 & 5-7.

## REQUEST NO. 52

### Conclusion

Members of the jury, that about concludes my instructions to you.  You are about to go into the jury room to begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request to see them and we will either send them into the jury room or we will bring you back out to the courtroom to see them.  If you want any of the testimony read back or any of the recordings played again, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  If you want any further explanation of the law as I have explained it to you, you may also request that from the Court.  If there is any doubt or question about the meaning of any part of this charge, you should send me a note asking for clarification or for a further explanation.  Your requests for exhibits or testimony – in fact any communications with the Court – should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

Many of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  Any difference between a juror's recollections and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the

court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about any defendant's race, religion, national origin, sex, or age. The parties in this case are entitled to a trial free from prejudice and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

Your function now is to weigh the evidence in this case and to determine the guilt or innocence of the defendant with respect to each count of the Indictment.

You must base your verdict solely on the basis of the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous. It is your duty, as jurors, however, to consult with one another, and to deliberate with a view to reaching an agreement, if you can possibly do so without violence to individual judgment. Each of you must decide the case for him or herself, but do so only after an impartial discussion and consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change an opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors.

Remember at all times, you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

You should by your own vote select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and when you come into open court, the foreperson will be asked to state what the verdict is.

We have prepared a verdict form for you to use in recording your decisions. After you have reached a verdict, the foreperson should fill in the verdict sheet, sign and date it, and then give a note to the marshal outside your door stating that you have reached a verdict. Do not specify what the verdict is in your note. Instead, the foreperson should retain the verdict sheet, and hand it to us in open court when you are all called in. If you are divided, do not report how the vote stands.

I will stress again that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, Ladies and Gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense you will reach a fair verdict here. Remember that your verdict must be rendered without fear, without favor, and without prejudice or sympathy.

Dated:  September 5, 2017
        New York, New York

                                   Respectfully submitted,

                                   JOON H. KIM
                                   Acting United States Attorney

                    By:     _____/s/_____
                                   Damian Williams
                                   Andrea M. Griswold
                                   Joshua A. Naftalis
                                   Assistant United States Attorneys
                                   Tel: (212) 637-2298/1205/2310