UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KALEIL ISAZA TUZMAN,<br><br><br>Defendant. | S8 15 Cr. 536 (PGG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KALEIL ISAZA
TUZMAN'S MOTION TO EXCLUDE TESTIMONY OF PETER J. MELLEY**

GIBSON, DUNN & CRUTCHER LLP

AVI WEITZMAN
*aweitzman@gibsondunn.com*
200 Park Avenue
New York, NY 10166
Telephone:     (212) 351-4000
Facsimile:     (212) 351-4035


MARCELLUS ANTONIO McRAE (*pro hac vice*)
*mmcrae@gibsondunn.com*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:     (212) 229-7000
Facsimile:     (212) 229-7520


*Attorneys for Defendant Kaleil Isaza Tuzman*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ...................................................................................................... 4

    A.   The Government's Initial Rule 16 Disclosure Regarding Peter Melley's
        Anticipated Testimony ......................................................................... 4

    B.   Following Mr. Isaza Tuzman's Objections, The Government Provided Revised
        Rule 16 Disclosures Regarding Peter Melley's Anticipated Testimony ....... 4

    C.   The Government Produced Draft Charts Regarding Trading in KIT Digital ...... 5

ARGUMENT ........................................................................................................ 7

    A.   Peter Melley Should Not Be Permitted to Testify as a Summary Witness Under
        FRE 1006 ........................................................................................ 7

    B.   The Court Should Exclude the Testimony and Summary Exhibits of Peter
        Melley Because He is an Expert in Lay Witness Clothing ........................ 10

    C.   The Court Should Exclude Any Proffered Expert Testimony of Peter Melley
        Because the Government's Expert Disclosures Are Deficient ..................... 15

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITY

## Cases

*Anderson v. Otis Elevator Co.*,
No 11-10200, 2012 WL 5493383 (E.D. Mich. Nov. 13, 2012)................................................8

*Bank of China, N.Y. Branch v. NBM LLC*,
359 F.3d 171 (2d Cir. 2004)......................................................................................3, 11, 12

*Giles v. Rhoades*,
No. 94 Civ. 6385 (CSH), 2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000)..............................12

*M.O.C.H.A. Soc., Inc. v. City of Buffalo*,
No. 98-CV-99-JTC, 2008 WL 4412093 (W.D.N.Y. Sept. 23, 2008)....................................12

*Peat, Inc. v. Vanguard Research, Inc.*,
378 F.3d 1154 (11th Cir. 2004) ............................................................................................9

*United States v. Barnwell*,
No. 15 Cr. 620, 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ............................................8

*United States v. Bray*,
139 F.3d 1104 (6th Cir. 1998) ..............................................................................................9

*United States v. Conlin*,
551 F.2d 534 (2d Cir. 1977)..........................................................................................7, 10

*United States v. Flores-De-Jesús*,
569 F.3d 8 (1st Cir. 2009)................................................................................................7, 8

*United States v. Fullwood*,
342 F.3d 409 (5th Cir. 2003) ...............................................................................................7

*United States v. Garcia*,
413 F.3d 201 (2d Cir. 2005).....................................................................................11, 13, 14

*United States v. Grinage*,
390 F.3d 746 (2d Cir. 2004).................................................................................................14

*United States v. Kaplan*,
490 F.3d 110 (2d Cir. 2007).........................................................................................11, 14

*UPS Store, Inc. v. Hagan*,
No. 14-cv-1210, 2017 WL 3309721 (S.D.N.Y. Aug. 2, 2017)...........................................7, 8

## Other Authorities

6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.23[2][a][i]
(3d ed. 1997) .....................................................................................................................12

**TABLE OF AUTHORITY**
(Continued)

**Rules**

Fed. R. Crim. P. 16 ..............................................................................................4, 15

Fed. R. Evid. 403 ...................................................................................................13

Fed. R. Evid. 701 ...............................................................................11, 12, 14, 15

Fed. R. Evid. 1006 .............................................................................................1, 7

Defendant Kaleil Isaza Tuzman, through counsel, respectfully requests that the Court enter an order granting his motion *in limine* to exclude the testimony of prospective government witness Peter J. Melley, and any charts and graphs prepared by Mr. Melley, under Rules 1006, 701, and 702 of the Federal Rules of Evidence.

## PRELIMINARY STATEMENT

Characterizing him as a summary and fact witness, the government nonetheless revealed as part of its *expert* disclosures, "in an abundance of caution," that it intends to call Peter J. Melley, Director of the Criminal Prosecution Assistance Group at the Financial Industry Regulatory Authority ("FINRA") to testify regarding (i) his "summary exhibits" that purport to describe his "analysis of trading in KIT digital, Inc. [] stock during the timeframes relevant to the charges," and (ii)  FINRA's licensing tests and requirements.  The government's bid to introduce what is plainly analysis performed by Mr. Melley under the guise of summary evidence should be rejected—not least because his anticipated testimony constitutes improper (and belated) expert evidence that does not satisfy the requirements of Federal Rule of Evidence ("FRE") 702.

*First*, the proposed summary testimony and exhibits to be offered by Mr. Melley should be excluded under FRE 1006 because Mr. Melley is not a proper summary witness as contemplated by that Rule.  It is beyond fair argument that summary witnesses have historically been disfavored.  Rule 1006 carves out a narrow exception to that general prohibition, however, by permitting summary witnesses to provide an overview to the jury of certain underlying admissible materials that are so voluminous that they cannot be conveniently examined in raw form.  Courts have long been sensitive to the risks associated with such overview testimony, in recognition of the ever-present danger that the credibility of the summary witness may be substituted for the credibility of the evidence summarized (despite the witness having no

1

personal involvement in the events being summarized).  As such, courts routinely exercise their broad gatekeeping authority to exclude summary testimony, particularly when there is a threat that an overview witness is being surreptitiously used to insert subjective interpretation and analysis into purportedly benign testimony and summary charts—*i.e.*, exactly what a lay summary witness is prohibited from doing under FRE 1006.

Here, the government's own disclosures refer to charts that reflect Mr. Melley's "***analysis***" of the trading in KIT digital, including trading by cooperating witness Stephen Maiden, a disgraced hedge-fund manager currently serving a lengthy prison term.  On its face, the nature of this anticipated testimony does not fulfill the narrow role of simply summarizing voluminous material—labels to the contrary notwithstanding, analysis is not a summary of underlying facts.  And indeed, the draft trading charts created by Mr. Melley that have been produced to Mr. Isaza Tuzman reveal exactly how dangerously misleading and prejudicial Mr. Melley's "analysis" of allegedly "summary" materials would be to a jury.  Not only has Mr. Melley curated a cherry-picked snapshot of trading, but his charts further include significant methodological errors that would present incorrect and highly misleading data.

What is more, Mr. Melley's testimony regarding FINRA's licensing tests and requirements should be excluded under FRE 403 because it will confuse the jury by implying that Mr. Isaza Tuzman—who passed certain FINRA licensing tests in the context of his four-year stint at a bank that ended ***nearly two decades ago***—would have had the requisite scienter regarding the alleged manipulative trading in KIT digital ***done by a third party***, Maiden Capital (a hedge fund operated by Stephen Maiden).

***Second***, to the extent that the government is attempting to offer Mr. Melley's testimony pursuant to Rule 701—which permits non-experts to provide opinion testimony based on their

own perceptions—that attempted end-run around the Rules of Evidence is impermissible.  Given Mr. Melley's lengthy tenure at FINRA and lack of personal knowledge regarding the events at issue, he would be acting as nothing more than "an expert in lay clothing" because, even though he will not be qualified as an expert under Rule 702, his official-sounding titles and background in this specialized area would necessarily confer an aura of expertise—a spillover effect that the Rules Advisory Committee expressly warned should be guarded against lest jurors are swayed by the imprimatur of official blessing.  Indeed, as the Second Circuit made clear in the seminal case *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004), any attempt to backdoor an expert through lay witness testimony under Rule 701 should be roundly rejected.

As such, if the government intends to put forward Mr. Melley as a witness, he should be required to qualify as an expert under Rule 702, and the government must make appropriate disclosures under Rule 16 (which would necessarily include significantly more detail than the government's "abundance of caution" disclosure regarding Mr. Melley's expected testimony as a "fact and summary" witness).  But the government's Rule 16 expert disclosure deadline has long passed and the appropriate remedy is, therefore, to preclude his testimony in its entirety.  In any event, given the methodological flaws in his summary charts, which the defense would show during a *Daubert* hearing, Mr. Melley's anticipated testimony would not be reliable, as is required in all instances to qualify him as an expert.

For all the foregoing reasons, Mr. Isaza Tuzman requests that the Court grant his motion *in limine* excluding the testimony and charts of Mr. Melley.

## BACKGROUND

**A.     The Government's Initial Rule 16 Disclosure Regarding Peter Melley's Anticipated Testimony**

On August 21, 2017, pursuant to Rule 16(a)(1)(G) and a Court scheduling order, the government informed Mr. Isaza Tuzman that it anticipated calling Peter J. Melley to testify in the upcoming trial.  *See* Ex. A.  The government initially disclosed to Mr. Isaza Tuzman that Mr. Melley was a "fact and summary witness"[1] who would testify on the following topics:

> (a) FINRA's licensing tests and requirements, including, but not limited to, FINRA's rules, central registration depository ("CRD"), and industry practices of, and standards applicable to, investment advisers; and

> (b) summary exhibits describing ***analysis*** of trading in KIT digital, Inc. ("KITD") stock during the timeframe relevant to the charges in the S8 Indictment, including trading by Stephen Maiden.  Such charts have not yet been prepared but will be provided prior to trial.

Ex. A, at 2–3 (emphasis added).  The government also informed Mr. Isaza Tuzman that it "[did] not currently anticipate that Mr. Melley will offer any opinion on whether any allegations in the S8 Indictment constitute a violation of any laws, rules, regulations, or industry standards."  Ex. A, at 3.

**B.     Following Mr. Isaza Tuzman's Objections, The Government Provided Revised Rule 16 Disclosures Regarding Peter Melley's Anticipated Testimony**

The day after receiving this letter, counsel for Mr. Isaza Tuzman objected to the government's deficient expert disclosures, noting specifically that the August 21, 2017 letter "provide[d] none of the detail required by [Rule 16] to put Mr. Isaza Tuzman on notice as to the actual opinions and testimony that the four witnesses identified in the government's letter will

---

[1]  In its August 21, 2017 letter, the government represented to Mr. Isaza Tuzman that it "does not intend to offer this witness as an expert witness, as the Government does not consider such fact or summary witness testimony to constitute expert testimony."  Ex. A, at 3.

provide at trial." *See* Ex. B, at 1.  Counsel for Mr. Isaza Tuzman specifically identified the deficiencies in the disclosure related to Mr. Melley:

> The disclosures related to Peter Melley are even more infirm. Disclosing that an expert intends to testify about "industry practices of, and standards applicable to, investment advisors" provides no guidance as to what his testimony actually will be, or sufficient notice to permit the defense to notice a responsive expert. Moreover, the fact that summary exhibits have not yet been prepared does not relieve the government of its obligations to disclose a summary of Mr. Melley's testimony regarding his analysis of trading in KITD stock.

Ex. B, at 2.  Accordingly, counsel for Mr. Isaza Tuzman requested that the government supplement its disclosures by August 23, 2017.  *See* Ex. B, at 2.

On August 26, 2017, the government supplemented its August 21 disclosures.  The government again claimed that Mr. Melley would "be testifying as a fact and summary witness, not an expert witness."  *See* Ex. C, at 3.  But while Mr. Melley is still anticipated to testify regarding FINRA's licensing tests and requirements and summary exhibits describing an analysis of trading in KIT digital, Inc., the government informed Mr. Isaza Tuzman that it "no longer anticipates that Mr. Melley will testify about industry practices of, and standards applicable to, investment advisers."  Ex. C, at 3.

## C.    The Government Produced Draft Charts Regarding Trading in KIT Digital

On September 2, 2017, the government produced ten draft charts purportedly created by Mr. Melley in connection with its required disclosure of witness materials pursuant to 18 U.S.C. § 3500.  *See* Ex. D; Ex. E; Ex. F; Ex. G.  These draft charts included:

- a bar chart entitled, "Price and Volume Analysis" of KIT digital stock between March 2011 and April 2011, Ex. G;

- a bar chart entitled, "Price and Volume Analysis" of KIT digital stock between December 2008 and September 2011, Ex. F;

- a bar chart entitled, "Draft Price and Volume Analysis" of KIT digital stock between December 31, 2008 and March 6, 2009 that includes details regarding the alleged purchase volume by Maiden Capital Opportunity Fund LP ("Maiden Capital") and Saxon Strategic Funds LLC ("Saxon"), Ex. D, at 2;

- a bar chart entitled, "Draft Price and Volume Analysis" of KIT digital stock between December 31, 2008 and April 30, 2009 that includes details regarding the alleged purchase volume by Maiden Capital and Saxon, Ex. D, at 3;

- a bar chart entitled, "Draft Price and Volume Analysis" of KIT digital stock between December 31, 2008 and August 12, 2009 that includes details regarding the alleged purchase volume by Maiden Capital and Saxon, Ex. D, at 4;

- a pie chart entitled "Market Trading Volume Comparison" purporting to show the alleged purchase volume by Maiden Capital and Saxon relative to the "remaining market trading volume" of KIT digital stock between December 31, 2008 and April 30, 2009, Ex. D, at 5;

- a pie chart entitled "Market Trading Volume Comparison" purporting to show the alleged purchase volume by Maiden Capital and Saxon relative to the "remaining market trading volume" of KIT digital stock between December 31, 2008 and August 12, 2009, Ex. D, at 6;

- a pie chart entitled "Market Trading Volume Comparison" purporting to show the alleged sell volume by Maiden Capital and Saxon relative to the "remaining market trading volume" of KIT digital stock between December 31, 2008 and April 30, 2009, Ex. D, at 7;

- a pie chart entitled "Market Trading Volume Comparison" purporting to show the alleged sell volume by Maiden Capital and Saxon relative to the "remaining market trading volume" of KIT digital stock between December 31, 2008 and August 12, 2009, Ex. D, at 8; and

- a chart entitled "DRAFT Securities Licensing Exam and Continuing Education Overview." Ex. E.

The government also produced a cover email from Mr. Melley to the government attaching seven of the above-listed charts, noting "*[t]hese are just a few ideas on how to present the volume comparison during the Dec. 2008 through August 2009 pre-Nasdaq listing period. I can also add text boxes with additional info*." Ex. D, at 1 (emphasis added). Mr. Melley also indicated he would continue to "work on some things for the later KITD trading period." Ex. D, at 1.

# ARGUMENT

**A.** **Peter Melley Should Not Be Permitted to Testify as a Summary Witness Under FRE 1006**

A party proffering a "summary witness" to testify at trial under FRE 1006 must satisfy the following requirements: (i) the summary must be based on underlying materials that are "so voluminous" that they cannot be conveniently examined in court; (ii) the underlying materials must be admissible; (iii) the underlying materials must be made available to the opposing party for inspection; and (iv) the summary witness must be subject to cross-examination. *See* Fed. R. Evid. 1006. As demonstrated below, the Court should preclude the government from calling Mr. Melley as a summary witness under FRE 1006 because the government has failed to satisfy several of these requirements.

Courts around the country have repeatedly noted the "dangers" of permitting summary witness testimony without proper gatekeeping. *See, e.g.*, *United States v. Conlin*, 551 F.2d 534, 538–39 (2d Cir. 1977); *see also United States v. Flores-De-Jesús*, 569 F.3d 8, 18 (1st Cir. 2009); *United States v. Fullwood*, 342 F.3d 409, 413–14 (5th Cir. 2003). One "danger" is that the credibility of a summary witness may be substituted for the credibility of the evidence summarized, even though the summary witness had no involvement in the underlying events being summarized. *See Fullwood*, 342 F.3d at 413–14; *see also Conlin*, 551 F.2d at 538–39 ("A chart submitted by the prosecution is a very persuasive and powerful tool and must be fairly used, since, by its arrangement and use, it is an argument to the jury during the course of the trial . . . . A chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error.").

Because of these dangers, federal courts have greatly limited the use of summary witnesses. *See, e.g.*, *UPS Store, Inc. v. Hagan*, No. 14-cv-1210, 2017 WL 3309721, at *5

(S.D.N.Y. Aug. 2, 2017) ("A party offering summary evidence must also, however, establish that 'the summary is accurate and nonprejudicial . . . [and can] be properly introduced through the testimony of a witness who supervised its preparation.'" (citation omitted)).  One rule is clear: *summary witnesses may not provide any analysis or interpretation of the evidence whatsoever*. *See id.* at *5; *see also Flores-De-Jesús*, 569 F.3d at 19 (holding "the overview witness may not offer substantive testimony").  That prohibition is a necessary baseline because a summary "is admissible to prove its contents" alone, and accordingly "great care must be taken to ensure that the proposed summary contains no annotation or suggestion, even inferential, that may be considered argumentative." *Anderson v. Otis Elevator Co*., No 11-10200, 2012 WL 5493383, at *3 (E.D. Mich. Nov. 13, 2012); *see United States v. Barnwell*, No. 15 Cr. 620, 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017) ("The Court is mindful of Defendant's concern and agrees there is a risk that [IRS] Agent Jones' non-expert summary witness testimony will be used as an end-run around the Government's expert witness disclosure obligations.  To avoid any potential prejudice, the Court orders the Government to disclose a summary of her expected testimony in advance of trial." (internal citation omitted)).  And prohibited argumentative analysis is precisely what Mr. Melley's anticipated testimony will provide.[2]

According to the government, Mr. Melley is anticipated to testify about "summary exhibits describing ***analysis*** of trading in KIT digital [] stock."  Ex. A, at 3 (emphasis added).  A review of Mr. Melley's charts reflecting this alleged "analysis" establishes that, rather than summarize voluminous records, he has impermissibly sought to inject prejudicial argument in the guise of neutral data reporting.  As Mr. Melley himself explained to the government in his

---

[2]  As discussed *infra* at 10–15, Mr. Melley's position as a career FINRA fraud investigator unfairly adds a imprimatur of authority to these highly prejudicial charts.

cover email, these charts are "just a few ***ideas on how to present*** the volume comparison"—in a manner most beneficial to the government's theory of the case—which Mr. Melley offered to "discuss" further with the prosecutors.  Ex. D, at 1 (emphasis added).  Mr. Melley further suggested in this cover email that he could "add text boxes with additional info."  Ex. D, at 1. And indeed, the draft charts throughout include neon yellow textboxes with Melley's own annotations regarding the purported purchase volume percentage by two hedge funds over the span of a few months.  *See United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) (information in summary may not be "embellished by or annotated with the conclusions of or inferences drawn by the proponent, whether in the form of labels, captions, highlighting techniques, or otherwise"); *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159–60 (11th Cir. 2004) ("[B]ecause summaries are elevated under Rule 1006 to the position of evidence, care must be taken to omit argumentative matter in their preparation lest the jury believe that such matter is itself evidence of the assertion it makes." (internal quotation and citation omitted)).

At bottom, Mr. Melley's testimony and his charts are designed—not to summarize—but to surreptitiously assist the government through the presentation of unfairly one-sided analysis via the facade of impartial, non-expert summary testimony.  For instance, the charts appear to cherry-pick dates to display stock price and volume that coincide with the government's legal theories.  Mr. Melley's "Pie charts for 12/31/2008 – 04/30/09 (30 day buy period / 90 day holding period)," Ex. D, at 1, for example, do not merely summarize voluminous material; they are based on the witness's interpretation of the December 31, 2008 stock purchase agreement between Mr. Isaza Tuzman and Stephen Maiden alleged in the Indictment (the "December Agreement").  S8 Indictment ¶ 58.   Under the terms of the December Agreement, the "90 day holding period" referenced by Mr. Melley was scheduled to begin once Mr. Maiden had

purchased $400,000 of KIT digital stock (which merely had to occur within a 30-day period). Yet Mr. Melley has decided to graphically depict this period as a 4-month period, apparently concluding that the 90-day period began after the 30 day period concluded, rather than when the position was accumulated.  In choosing to depict this date range, Mr. Melley is, in essence, opining on the government's apparent interpretation of the relevant period under the December Agreement.

Further, the multiple variations of his charts confirm Mr. Melley's efforts to present a carefully curated snapshot of isolated trading in KIT digital stock at certain periods rather summarize trading throughout the entire time frame alleged in the S8 Indictment.  For example, in the Indictment, the government alleges a market manipulation scheme between December 2008 and September 2011.  S8 Indictment ¶ 74.  However, of the nine draft charts and graphs related to stock price and trading volume, only one covers the period from December 2008 to September 2011.  *See* Ex. F.  Therefore, Mr. Melley's charts are not summaries of KIT digital trading activity during the relevant period but are instead data manipulations designed to corroborate the government's narrative.  In short, they are argument, not fair summaries.  As such, Mr. Melley's "summary" charts do not merely "prove the content of voluminous writings . . . that cannot be conveniently examined in court" and must be excluded.  *See* Fed. R. Evid. 1006; *Conlin*, 551 F.2d at 538–39.

**B.**     **The Court Should Exclude the Testimony and Summary Exhibits of Peter Melley Because He is an Expert in Lay Witness Clothing**

Mr. Melley should also be barred from testifying because his testimony is not proper lay opinion pursuant to FRE 701—he is instead impermissibly acting as "an expert in lay witness

clothing." *See* Fed. R. Evid. 701 advisory committee notes to 2000 amendments; *see also United States v. Garcia*, 413 F.3d 201, 215–16 (2d Cir. 2005); *Bank of China*, 359 F.3d at 181.[3]

   ***First***, Mr. Melley's testimony is not "rationally based on the witness's perception." Fed. R. Evid. 701(a); *see also United States v. Kaplan*, 490 F.3d 110, 119 (2d Cir. 2007); *Bank of China*, 359 F.3d at 180–81.[4]  Rule 701(a) "requires that lay opinion testimony be ***both*** (a) based on the witness's first-hand perceptions ***and*** (b) rationally derived from those first-hand perceptions." *Kaplan*, 490 F.3d at 119 (emphasis added). To date, the government has made no representations that Mr. Melley was in any way involved in the investigation into the matters at issue in this case.  His testimony and charts, therefore, ostensibly rely exclusively on his specialized knowledge gained from his experience working at FINRA and its predecessor, the National Association of Securities Dealers ("NASD").  Under Second Circuit case law, Mr. Melley's lack of personal knowledge regarding the underlying issues bar his testimony under Rule 701(a).  *See Bank of China*, 359 F.3d at 180–82.

   In *Bank of China*, the Second Circuit squarely addressed this issue.  *See id.*  Citing specifically to the warning in the Advisory Committee Notes against experts offered in lay clothing, the Second Circuit held that the trial court "abused its discretion" by admitting

---

   [3]  The Advisory Committee Notes concerning the addition of subsection (c) in 2000 explicitly cited the risk of parties evading the strictures of Rule 702 by attempting to slip expert opinion testimony through Rule 701: "Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.  Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701 advisory committee notes to 2000 amendments.

   [4]  Pursuant to FRE 701: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

"testimony based on [the witness's] experience and specialized knowledge in international

banking." *Id.* at 181.  While the Second Circuit explained that the testimony of the witness that

was grounded in his participation in the investigation was admissible because it was "based on

his *perceptions*," the testimony that "was not a product of his investigation but rather reflected

specialized knowledge he ha[d] because of his extensive experience in international banking"

was inappropriate under Rule 701, and would require qualification as an expert under Rule 702.

*Id.* at 181–82.

   Here, unlike in *Bank of China*, it does not appear that Mr. Melley's testimony is

"grounded in the investigation" he undertook, but is instead "rooted exclusively in his

expertise"—exactly the type of testimony that the Second Circuit held in *Bank of China* to have

been erroneously admitted.  *See* 359 F.3d at 181; *see also M.O.C.H.A. Soc., Inc. v. City of

Buffalo*, No. 98-CV-99-JTC, 2008 WL 4412093, at *1 (W.D.N.Y. Sept. 23, 2008) ("'It is

sometimes difficult to distinguish between a lay witness providing Rule 701 testimony and an

expert providing testimony under Rule 702, particularly if the witness might otherwise qualify as

an expert in his or her field . . . . An essential difference is that Rule 701 requires direct personal

knowledge of a factual matter at issue.'" (quoting 6 JAMES WM. MOORE ET AL., MOORE'S

FEDERAL PRACTICE § 26.23[2][a][i] (3d ed. 1997)).

   **Second**, Mr. Melley's testimony and summary exhibits should be excluded because they

are "based on scientific, technical, or other specialized knowledge" that places his testimony well

outside the scope of Rule 701.  *See* Fed. R. Evid. 701(c); *see also Giles v. Rhoades*, No. 94 Civ.

6385 (CSH), 2000 WL 1425046, at *5 (S.D.N.Y. Sept. 27, 2000) ("I find guidance in making

this determination from a number of cases, including a Second Circuit decision, which have

identified the distinction between lay testimony and expert testimony as turning upon whether a

witness' testimony requires specialized knowledge and expertise.").  "The purpose of this final foundation requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702."  *Garcia*, 413 F.3d at 215.  The focus of this determination must be on the reasoning process of the witness.  *See id.*  "If the opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701."  *Id.*

Mr. Melley's testimony regarding FINRA rules and licensing, for example, as well as his "analysis" of stock trading, are not rooted in the reasoning process of the average, lay person. *See id.* ("[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life.").  Instead, they are the result of years of experience at FINRA and NASD.  *See* Fed. R. Evid. 701 advisory committee notes on 2000 Amendments ("The amendment incorporates the distinctions set forth in [a case] . . . . [in which] the court declared that the distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" (internal citation omitted)).

Mr. Melley's testimony regarding "FINRA's licensing tests and requirements, including, but not limited to, FINRA's rules [and] central registration depository," should also be excluded pursuant to Federal Rule of Evidence 403.  Ex. A, at 2; *see* Fed. R. Evid. 403.  A review of the government's exhibit list reveals that the likely bases for Mr. Melley's testimony include a central registration depository report and several exam study guide outlines—one of which dates back to 1987.  The fact that Mr. Isaza Tuzman passed certain exams between 1995 and 1998 during his stint at Goldman Sachs after he graduated from college—***nearly two decades ago***—is

not relevant to the allegations in the Superseding Indictment that cover the time period from

2009 to 2012.  Instead, such testimony will serve only to confuse the jury into believing that Mr.

Isaza Tuzman understood whether the trading in KIT digital engaged in by a third party—

Stephen Maiden in connection with his hedge fund, Maiden Capital Opportunity Fund (and not

by Mr. Isaza Tuzman)—was inappropriate market manipulation, as alleged.  Adding to the

confusion, Mr. Melley's years of experience at FINRA and NASD will impermissibly add an

aura of expertise to this testimony, *see, e.g.*, *Garcia*, 413 F.3d at 215, which also weighs against

its admission.

       ***Third***, for many of the reasons previously stated, Mr. Melley's testimony and summary

exhibits should be excluded under Rule 701 because they are not "helpful to clearly

understanding the witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701(b);

*see Garcia*, 413 F.3d at 213 ("A lay opinion may be received in evidence only if it is 'helpful' to

the jury's 'clear understanding of the witness' testimony or the determination of a fact in issue.'"

(citation omitted)).  This foundational requirement was "designed to provide 'assurance []

against the admission of opinions which would merely tell the jury what result to reach.'"

*United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) (citations omitted); *see Kaplan*, 490

F.3d at 118.  As discussed above, Mr. Melley's "summary" charts are based on cherry-picked

data, and provide a misleading and unfairly one-sided analysis of trading activity in KIT digital

rather than accurately summarizing it.  *Supra* pp. 7–10.  Consequently, these skewed charts and

the inferences they invite are not helpful to the actual facts at issue and will inevitably lead to

juror confusion.  Rather than helping the jury in its determinations, Mr. Melley will instead usurp

its function under the guise of testifying as a fact witness.  *See Grinage*, 390 F.3d at 750

(rejecting argument that "jurors could be 'helped' by a summary witness for the Government,

who could not only tell them what was in the evidence ***but tell them what inferences to draw***

***from it*** because "[t]hat is not the point of lay opinion evidence" under Rule 701) (emphasis

added).

### C.   The Court Should Exclude Any Proffered Expert Testimony of Peter Melley Because the Government's Expert Disclosures Are Deficient

Given the deficiencies described above, the government may switch course and seek to

offer Mr. Melley as an expert witness at trial.  Any effort to rehabilitate Mr. Melley's testimony

now by qualifying him as an expert would be too little, too late.  Trial is quickly approaching and

the government's deadline to notice expert witnesses has long passed.  Mr. Melley's testimony

should be precluded in its entirety, whether he is offered as a summary, fact, or expert witness.

The government included Mr. Melley in its initial Rule 16 disclosures "in an abundance

of caution" and stated that, although the government does not intend to offer him as an expert

witness, it is "prepared to qualify Mr. Melley as an expert under Federal Rule of Evidence 702 in

the event that it is deemed necessary to do so."  Ex. A, at 3.  But if Mr. Melley is offered as an

expert, the prior disclosure relating in cursory fashion the general "topics" of his anticipated

testimony does not come close to fulfilling the government's Rule 16 obligation to sufficiently

describe the "***witness's opinions, the bases and reasons for those opinions***, and the witness's

qualifications."  Fed. R. Crim. P. 16(a)(1)(G) (emphasis added).  If the government is permitted

to qualify Mr. Melley as an expert at this late date, Mr. Isaza Tuzman will be prejudiced by not

having sufficient notice of Mr. Melley's conclusions and anticipated testimony—exactly the

unfair "surprise" that Rule 16 disclosures are meant to avoid.  *See* Fed. R. Crim. P. 16 advisory

committee notes to 1993 amendment (explaining that Rule 16 disclosure "is intended to

minimize surprise that often results from unexpected expert testimony, reduce the need for

continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's

testimony through focused cross-examination").  When preparing for a trial less than four weeks

away, Mr. Isaza Tuzman should not be required to guess at what Mr. Melley might say in an

expert capacity or speculate about the bases for his expert opinions.  Even if supplementation

occurs soon, the damage has already been done as the defense has been unfairly deprived of the

time to sufficiently analyze the disclosures, to locate or develop rebuttal testimony, and to seek

to exclude Mr. Melley's anticipated testimony, if necessary.  Mr. Melley should be precluded

from being qualified as an expert witness at this late date, and his testimony barred in its entirety.

## **CONCLUSION**

For the foregoing reasons, Mr. Isaza Tuzman respectfully requests that the Court exclude

the testimony and summary exhibits of Peter J. Melley.


Date:   October 2, 2017                                     Respectfully submitted,
        New York, New York
                                                           GIBSON, DUNN & CRUTCHER LLP


                                                           By:    /s/ Avi Weitzman_____

                                                                  Avi Weitzman
                                                                  (aweitzman@gibsondunn.com)
                                                                  Marcellus McRae
                                                                  (mmcrae@gibsondunn.com)

                                                           200 Park Avenue
                                                           New York, NY  10166
                                                           Telephone:    (212) 351-4000
                                                           Facsimile:    (212) 351-4035

                                                           333 South Grand Avenue
                                                           Los Angeles, CA  90071
                                                           Telephone:    (213) 229-7000
                                                           Facsimile:    (213) 229-7520

                                                           *Attorneys for Defendant Kaleil Isaza Tuzman*