**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 19, 2017

BY CM/ECF

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    United States v. Kaleil Isaza Tuzman
                S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

      The Government writes in opposition to the defendant Kaleil Isaza Tuzman's October 16, 2017 letter in which the defendant makes various allegations about the Government's diplomatic note to Colombia and failure to comply with its disclosure obligations. (Dkt. 489 ("Ltr.")). Each is meritless.

<u>The Defendant Still Lacks Standing to Invoke the Rule of Specialty</u>

      On October 13, 2017, the Government filed with the Court a copy of the only diplomatic note sent by the United States to Colombia after the Colombian Supreme Court authorized the defendant's extradition. That diplomatic note defeats the defendant's longstanding argument that the Government "delivered a diplomatic note in which it likely acceded to the[] conditions" that he not "be tried for prior or different acts than those which are reason and authorization for his extradition." (Dkt. 263, at 5 & n.1 (emphasis removed)).[1] The Government made no such promise in the diplomatic note. Buried in a footnote, the defendant concedes this fact, even though he uses this now-disproven allegation about the diplomatic note as a basis to demand discovery, including the production of various diplomatic communications between the two sovereigns.

---

[1] The defendant continues to misrepresent the Colombian Supreme Court's order by falsely equating the Colombian court's statement that that the defendant could not be "tried for prior or different *acts*" with an altogether different statement (that the Colombian court did not make) that the defendant could not be tried on any "prior or different *facts*." As the Government explained in its opposition to the defendant's motion to dismiss and his motion *in limine*, the defendant is being tried for the same acts (accounting fraud, market manipulation and Maiden Capital and KIT digital wire fraud) that formed the basis of the S1 Indictment on which he was extradited.

Because he can no longer rely on the diplomatic note, the defendant instead pivots to a different (but equally frivolous) argument: that the Government was *required* to send diplomatic notes to Colombia updating it on the defendant's case. That requirement is not rooted in the law. Indeed, the Government followed the precise guidance that the Circuit set forth in *United States* v. *Suarez*, 791 F.3d 363 (2d Cir. 2015). There, the circuit said that "[i]t may be prudent, as a matter of general policy, for the United States Attorney's Office to ensure that the *State Department* is kept apprised when extradited defendants plead guilty, proceed to trial, or are sentenced." *Id.* at 368 (emphasis added). The Government went beyond that guidance by informing the State Department, the Department of Justice's Office of International Affairs ("OIA"), and the U.S. Embassy in Colombia of the defendant's intention to proceed to trial. *Suarez* suggested no more, and indeed encouraged much less. It is therefore incorrect to argue, as the defendant does, that *Suarez*, despite being a case about a Colombian extradition, required the Government to send diplomatic notes to Colombia (or any other surrendering sovereign) apprising case developments, including superseding indictments, guilty pleas and upcoming trials. The defendant has simply invented the rule he accuses the Government of violating, all in service of a standing argument that *Suarez* – and other controlling Second Circuit cases that followed – firmly foreclosed. *See, e.g.*, *United States* v. *Garavito-Garcia*, 827 F.3d 242 (2d Cir. 2016 ("[B]ecause 'the Government of Colombia [has not] first [made] an official protest,' Garavito-Garcia lacks standing to invoke the extradition treaty as a basis for the dismissal of the indictment."); *United States* v. *Barinas*, 865 F.3d 99 (2d Cir. 2017) ("Absent an express provision in the agreement between the states, any individual rights are only derivative through the states, and absent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law[.]").

Because Colombia has not protested the defendant's upcoming trial, he lacks standing to invoke the Rule of Specialty. And, as previously noted in previous filings, even if the defendant had standing, his claims would fail on the merits.

### *Brady* Allegations

The defendant's *Brady* arguments are also meritless and can be easily dismissed.

*First*, the defendant alleges that the Government failed to comply with its *Brady* obligations because it purportedly "delayed production" of material related to Petr Stransky. (Ltr. 2-3). This claim fails. As a threshold matter, the Stransky FBI 302 is not *Brady* material. During this interview with the FBI, Stransky generally claimed not to recall the answers to various questions. Stransky never mentioned the defendant, let alone provided exculpatory or impeachment material.

In any event, the defendant's complaints make no sense: he has the materials about which he complains — and has had them for over six weeks. On September 2, 2017, the Government produced its § 3500 and *Giglio* material to the defendants. Each witness's materials were clearly organized and labeled. Among these witnesses was Stransky. The fact that Isaza Tuzman's large team of lawyers from three different law firms apparently only looked at the Stransky material recently does not mean it was withheld or buried. Moreover, the defendant's own investigators have been actively seeking to interview many of the Government's witnesses

over the past months. That they prioritized other witnesses over Stransky was a legitimate tactical choice but not one attributable to the Government.

What is more, the Government's disclosure of the Stransky FBI 302 on September 2, 2017 — almost two months before trial — would have more than satisfied the Government's disclosure obligations even if it did contain *Brady* or impeachment material. The Second Circuit has repeatedly held that the Government only need produce impeachment material regarding its witnesses "in time for its effective use at trial," *United States* v. *Morgan*, 690 F. Supp. 2d 274, 286 & n.61 (S.D.N.Y. 2010) (collecting authorities), which the Circuit has construed as shortly before the witness is expected to actually testify, *see*, *e.g.*, *United States* v. *Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). Such a timeframe is appropriate because "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *United States* v. *Nixon*, 418 U.S. 683, 701 (1974); *see also United States* v. *Gutierrez-Flores*, 1994 WL 558034, at *3 (S.D.N.Y. Oct. 11, 1994) ("The defendants' request for material which would assist in impeaching confidential informants or government witnesses is premature. The government is not required to disclose such material until the witness is called to testify."); *United States* v. *Davis*, 2009 WL 637164, at *14 (S.D.N.Y. Mar. 11, 2009) (same); *United States* v. *Tranquillo*, 606 F. Supp. 2d 370, 382-83 (S.D.N.Y. 2009) (same). Because the Government has complied with its disclosure violations, there is no need for a "remedy."

*Second*, the defendant complains that the Government has not produced the grand jury minutes. (Ltr. 5). The Government has no obligation to turn over grand jury minutes to defense counsel. "The secrecy of grand jury proceedings is fundamental to our criminal justice system." *United States* v. *Carter*, 04 Cr. 594, 2005 WL 180914, at *5 (S.D.N.Y. Jan. 25, 2005) (citing *United States* v. *Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). Therefore, "the burden . . . is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy." *Pitt. Plate Glass Co.* v. *United States*, 360 U.S. 395, 400 (1959) (affirming district court's denial of defendant's request for grand jury minutes); *United States* v. *Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (same). The defendant has not made a showing, let alone a particularized showing, of his need to see the minutes. The agent who testified in the grand jury is not a trial witness, and thus the minutes are not § 3500 material. Moreover, the minutes do not contain *Brady* or *Giglio* material.

*Third*, the defendant requests that the Court order the Government to affirmatively obtain and produce various telephone records and communications purportedly in the possession of its cooperating witnesses, Gavin Campion and Robin Smyth. (Ltr. 5-6). This is a fishing expedition for hypothetical *Brady* and *Giglio* materials. Judge Pauley recently rejected a similar request. *See United States* v. *Meregildo*, 920 F. Supp. 2d 434 (S.D.N.Y. 2013). In *Meregildo*, the defendant asked the Court to compel the Government to produce social networking posts from a cooperating witness, which the Government "never possessed." Judge Pauley rejected this request, finding that a cooperating witness is not part of the prosecution team. *See also United States* v. *Bonventre*, 10 Cr. 228 (LTS), 2014 WL 3673550, at *22 (S.D.N.Y. July 24, 2014), *aff'd in part*, 646 F. App'x 73 (2d Cir. 2016) (*Brady* "is not a discovery doctrine that c[an] be used to compel the Government to gather information for the defense."). So too here. To the extent Isaza Tuzman seeks documents and communications from Smyth and Campion, he can pursue the Rule 17 subpoena process he has already begun.

*Finally*, the defendant asks the Court to compel the Government to "identify all individuals [ever] interviewed by either the DOJ or SEC."[2]  (Ltr. 7-8).  He cites no authority for this request, because there is none.  The defendant's effort to make something out of the Government's disclosure of § 3500 for Wayne Walker is also much about nothing.  The Government had no obligation to turn this material over, but did so in an excess of caution.  That the Government has continued to identify witnesses for trial, and disclose them to the defense, is neither surprising nor unusual.  The Government agreed to provide a *preliminary* witness list 30 days before trial, but it always reserved the right to add or subtract witnesses.

The Government has complied and continues to comply with its disclosure obligations.  Accordingly, the defendant's various requests should be summarily denied.

> Respectfully submitted,
>
> JOON H. KIM
> Acting United States Attorney
>
> By:  \_\_\_/s/_____
>     Damian Williams
>     Andrea M. Griswold
>     Joshua A. Naftalis
>     Assistant United States Attorneys
>     (212) 637-2298/1205/2310

cc:   Defense Counsel

---

[2]   Contrary to the defendant's repeated misstatements, the Government did not conduct a joint investigation with the SEC.