**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Avi Weitzman
Direct: +1 212.351.2465
Fax: +1 212.351.5265
AWeitzman@gibsondunn.com

December 14, 2017

VIA ECF

The Honorable Paul G. Gardephe
United States District Judge for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007-1312

Re: *United States v. Kaleil Isaza Tuzman*, S8 15 Cr. 536 (PGG)
Relevance of Expert Testimony of Prof. Allen Ferrell

Dear Judge Gardephe:

On behalf of Kaleil Isaza Tuzman, we write in response to the question posed in Court today regarding the relevance of the proposed expert testimony of Professor Allen Ferrell to the charged conduct and evidence adduced at trial. In court today, the government claimed that Professor Ferrell's event study—a method of specialized econometrics analysis commonplace in securities-fraud trials[1]—has no probative value because all that matters here is "volume" and "price support"; *i.e.*, the government insists this is ***not*** a case about manipulating the market to ***inflate*** the price of KIT Digital stock. Tr. 5820:7-10, Tr. 5821:3-6. That assertion is demonstrably false, not least because it is belied by the testimony of the government's only fact witness on Count Four, cooperator Stephen Maiden, and contrary to allegations in the Indictment.

The government's recasting of the evidence introduced at trial through Mr. Maiden's testimony is breathtaking. To begin with, Mr. Maiden testified, in no uncertain terms, that Mr. Isaza Tuzman colluded with him not only to maintain the KIT Digital share price at certain points in time, but also to inflate the price at other times beyond its existing levels. Below are a few prime examples:

> Q: And your testimony, I think, was that ***Kaleil was asking you to buy more KIT digital stock in order to artificially inflate the stock price***?
> A: Right.
> Q: ***Is that your testimony?***
> A: ***It is.***
> Q: And I think your testimony was that every time or maybe not every time often ***you would just hit buy on KIT digital in order to drive the price stock up, right***?

---

[1] *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (holding event study evidence could be used to show lack of price impact despite fraud-on-the-market theory).

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

December 14, 2017
Page 2

> A:   *Yes*.
>
> (Tr. 1659: 6-15 (emphases added))
>
> Q:   And when Mr. Tuzman said, 'The market movement helps a lot,' what did you understand him to mean?
> A:   ***The fact that I was pushing it up helped a lot because he had just reference[d] the Vision Capital in the previous sentence, and as I mentioned before, he told me that they were looking at investing and/or buying the company, and so by making the stock go up, he viewed it was a positive for Vision Capital***.
> (Tr. 684:1-7 (emphasis added))
>
> Q:   Why [*sic*] did you understand Mr. Tuzman to be saying "we can't close at 7.35"?
> A:   ***He wanted the stock higher. He was instructing me basically to purchase the stock and push it higher***.
> (Tr. 784:13-16 (emphasis added))

Indeed, even on direct examination, Mr. Maiden testified expansively that he pumped up the stock with the knowledge of his alleged co-conspirators.  Tr. 753:2-4 ("I discussed that I was buying a lot of stock in the -- in KIT digital and, you know, working to pump it up."); Tr. 922:23-923:1 (Q: "And you also testified that your purpose in purchasing the stock at this time period continued to be to pump up the stock; is that correct?"; A: "Yes.").  There is no fair way to read that testimony other than as a charge laid before the jury that Mr. Isaza Tuzman and Mr. Maiden wanted the share price of KIT Digital to rise beyond its current trading level and together engaged in market manipulation to achieve that goal.

In addition, the government, when convenient to argue an evidentiary point, represented to this Court that the theory of securities fraud alleged here takes one or both of two forms—price inflation and share-volume inflation.  In response to undersigned counsel's questions regarding Mr. Isaza Tuzman's refusal to time KIT Digital press releases for stock-price purposes, AUSA Williams stated:

> We haven't alleged that timing of certain SEC forms was a mean or method of the market manipulation conspiracy.  We alleged that Maiden was buying selling and on particular dates to ***inflate the price* or *the volume***.  So this doesn't seem to be part of the conspiracy."
> (Tr. 1725:7-11 (emphases added))

Thus, the government has not limited its stated theory of liability to collusive purchases for the purpose of ***maintaining*** the share price alone; rather, AUSA Williams explained that Mr. Maiden at times made purchases "to inflate the price."  *Id*.  Those arguably might be two

GIBSON DUNN

December 14, 2017
Page 3

distinct theories of securities-fraud liability in the abstract (and the line between them is exceedingly thin in any event), but the government has telegraphed at various times its design to pursue both.  And, as the Maiden testimony recounted above shows, the government's proof was not limited to Mr. Isaza Tuzman's (alleged) instructions to Mr. Maiden to buy stock in sufficient volume in order to *neutralize* the price-depressing effect of block sales coming down the pike—which would be a theory of price maintenance.  Instead, Mr. Maiden testified that Mr. Isaza Tuzman urged him to buy KIT Digital stock to inflate the price at many different times for different reasons.  *See supra*.

None of this should come as a surprise to the government because it has advanced both theories of securities fraud.  In the S8 Indictment, the government alleged that the market manipulation was designed both to drive up the price *and* the volume of KIT Digital shares:

> Between in or about December 2008 and in or about September 2011, KALEIL ISAZA TUZMAN and OMAR AMANAT, the defendants, Maiden and others, engaged in efforts *to artificially inflate the share price* **and** trading *volume* of KITD shares.
> (S8 Indict. ¶ 56 (emphases added))

The litigating position asserted by the government today—that this is just a "price support" case premised on "volume" alone—is all too convenient and should get short shrift.

The fact of the matter is that testimony about Mr. Isaza Tuzman conspiring *to drive up the price* of KIT Digital stock—whether to make an acquisition easier or to satisfy investors—has been squarely placed before the jury by Mr. Maiden.  *See supra*.  Mr. Isaza Tuzman is entitled to mount a full and fair defense to that accusation of price inflation in his case-in-chief.  The government has no credible basis to argue that Professor Ferrell's event study is not relevant to whether an agreement to inflate a share price existed:  If the alleged market-manipulation methods in fact had no statistically significant impact on KIT Digital's share price, that is powerful circumstantial evidence that the charged conspiracy to inflate the stock's value simply did not exist.  At a minimum, the event study directly rebuts Mr. Maiden's testimony both as to what he was attempting to do at Mr. Isaza Tuzman's direction, and what he claims to have achieved:  "artificially inflat[ing] the stock price" and "making the stock go up."  Tr. 1659-6-15, Tr. 684:1-7.  In so doing, it undercuts the credibility of the government's only fact witness as to Count Four.  There is thus no justifiable basis for excluding such testimony when its reliability is not in question.

Respectfully submitted,

*/s/ Avi Weitzman*

cc.     All Counsel of Record (via ECF)