**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 15, 2017

BY ECF

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Kaleil Isaza Tuzman, S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

    The Government respectfully submits this letter to address defendant Omar Amanat's December 13, 2017 letter regarding the Government's Requests to Charge. (Dkt. # 597). Specifically, Amanat requests: (1) an instruction on the background and motive evidence received at trial; (2) additional detail on the specific schemes charged in the Indictment; (3) a multiple conspiracy charge; and (4) the removal of any conscious avoidance charge. The Government responds to each of these requests, in turn, below.

## Background and Motive Evidence

    The defendant's first request – for a specific instruction to address the background evidence introduced – is reasonable. The Government would be amenable to the following modified instruction, which tracks the first two paragraphs of Amanat's proposal and more closely hews to the limiting instruction given at trial:

> Omar Amanat is charged in Counts One through Three with wire fraud, wire fraud conspiracy, and aiding and abetting investment advisor fraud by Stephen Maiden from in or about March 2009 through in or about 2012. Mr. Tuzman is not charged in Counts One through Three. You have heard evidence related to Counts One through Three regarding alleged events that took place in 2008 and early 2009. Some of this evidence has come in the form of emails from this time period. And so those events allegedly occurred before the time period of the crimes charged in Counts One through Three. This evidence was admitted for the limited purpose of providing background to the crimes alleged in this case. Mr. Amanat and Mr. Tuzman are not charged in this case with defrauding Mr. Maiden. Mr. Amanat is not charged in Counts One through Three with any fraudulent activity that occurred during the period before March

> 2009. Mr. Amanat is not charged with defrauding KIT digital. He is charged with allegedly working with Mr. Maiden to defraud Maiden Capital investors beginning in March of 2009. Mr. Amanat and Mr. Isaza Tuzman are also charged in Count Four with conspiring to commit securities fraud through market manipulation, from in or about December 2008 through in or about September 2011.
>
> As I have instructed you throughout the case, the background evidence admitted in this case was admitted for limited purposes. You may consider this evidence only for the purpose of deciding whether a defendant had the state of mind, knowledge, or intent necessary to commit the crimes charged in the Indictment or had a motive to commit the crimes charged in the Indictment.

The Government does not believe that the third paragraph in Amanat's proposal is necessary, as it largely repeats instructions given in the first paragraph or instructions that likely will be given elsewhere in the charge. However, to the extent the Court is inclined to say more on background and motive, the Government would suggest adding the language in the second, third and fourth sentences of the final paragraph of the defendant's proposal.

## **Detail Regarding Charges Crimes**

The defendant's second request relates to providing additional detail to Request Nos. 5, 10 and 17 of the Government's Requests to Charge.

*Request No. 5 (Conspiracy to Commit Wire Fraud).* The Government is amenable to the modification suggested by the defendant with regard to Request No. 5.

*Request No. 10 (Wire Fraud).* The Government disagrees with Amanat's suggestion that the jury be instructed with the language contained in the "to wit" clause from Count Two in the Indictment. Nor is there such a requirement under the law, as the "to wit" clause "is properly understood to be illustrative rather than definitional of the core of criminality charged by the grand jury." *United States* v. *Agrawal*, 726 F.3d 235, 261 (2d Cir. 2013). Considered as a whole, the Indictment charges Amanat with working with Maiden to defraud Maiden Capital investors, through a combination of material misrepresentations and omissions, about the status of their Maiden Capital investments. There is no need to provide the jury with a list of the various means used to accomplish the fraud. As a compromise, the Government would suggest the following language, which is derived from the defendant's proposal:

> Specifically, Count Two charges that defendant OMAR AMANAT committed wire fraud in connection with an alleged scheme to defraud Maiden Capital investors by causing Stephen Maiden to make material misrepresentations and to omit material facts to Maiden Capital investors about the status of their investments.

*Request No. 17 (Aiding and Abetting Investment Adviser Fraud).* For the reasons set forth in the Government's December 13, 2017 letter, the Government objects to the defendant's proposed instruction for aiding and abetting investment adviser fraud. There is no legal basis to support the contention that in order to convict Amanat, the jury must find that he "had knowledge of the full scope of disclosures and omissions relevant to Mr. Maiden's investment advisor fraud against his clients." (Def. Ltr. at 3.) Instead, it is sufficient for the jury to find beyond a reasonable doubt (1) that Maiden committed investment adviser fraud and (2) that Amanat aided and abetted that fraud and did so with the specific intent to defraud Maiden's investors.

## Multiple Conspiracies

The defendant's third request is for a multiple conspiracy instruction for Counts One and Four. This should be rejected, as there is no factual predicate in the trial record to support such a charge for *any* of the conspiracies alleged in the Indictment.[1]

A "defendant is entitled, upon proper request, to an instruction submitting to the jury any defense theory *for which there is a foundation in the evidence*." *United States* v. *Bryser*, 954 F.2d 79, 87 (2d Cir. 1992) (emphasis added). However, "if only one conspiracy has been alleged and proved[,] the defendants are not entitled to a multiple conspiracy charge." *United States* v. *Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) (internal quotations omitted); *accord United States v. Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009); *United States* v. *Vasquez*, 113 F.3d 383, 387 (2d Cir. 1997). In order to secure a reversal on the ground that a trial court failed to give a multiple conspiracy charge, a defendant must show both that "there was evidence of separate networks operating independently of each other" and that the defendant "suffered substantial prejudice resulting from the failure to give the requested charge." *United States* v. *Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997) (internal quotations omitted); *accord United States* v. *Vazquez*, 113 F.3d at 386; *United States* v. *Maldonado-Rivera*, 922 F.2d at 962-63.

As to Count One, nothing in the record supports Amanat's speculation that Maiden was conspiring with SS&C, his fund administrator, to defraud Maiden Capital investors. Maiden certainly did not testify to that effect and there is no documentary evidence that would support such a conclusion. As to Count Four, no reasonable juror could conclude that Maiden worked with anyone other than the charged defendants to manipulate the KIT digital stock. Whether Maiden conspired with others, such as the so-called "Ice Man," to manipulate the Blue Earth stock is irrelevant given that the actual conduct charged in Count Four relates only to KITD stock. The proof at trial has been clear that the only individuals involved in the market manipulation scheme are the three defendants who signed the December 31, 2008 market manipulation agreement – Maiden, Amanat and Isaza Tuzman.

---

[1] The Government notes that defendant Isaza Tuzman requests a multiple conspiracy charge for Count Six. Because the Government has proven a single accounting fraud conspiracy involving, among others, Isaza Tuzman, Robin Smyth, Gavin Campion, Rima Jameel, Tomas Petru and Petr Stransky, there is no basis to provide the jury with a multiple conspiracy charge.

## **Conscious Avoidance**

Finally, the defendant asserts that the jury should not give any conscious avoidance instruction because, in his view, "the record is bereft of information that Mr. Aman[a]t was aware of a 'high probability' that Mr. Maiden was engaged in the charged fraudulent activity and consciously avoided confirming the fact." (Def. Ltr. at 4.) That is incorrect.

As an initial matter, the law is clear that, a "conscious avoidance charge is appropriate when (a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States* v. *Cuti*, 720 F.3d 453, 463 (2d Cir. 2013) (citation and internal quotation marks omitted); *see also United States* v. *Svoboda*, 347 F.3d 471, 479 (2d Cir. 2003) (in the context of a conspiracy case, "a defendant's conscious avoidance of knowledge of [the conspiracy's] illegal purpose may substitute for knowledge of the illegal purpose."). "Red flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance." *United States* v. *Goffer*, 721 F.3d 113, 127 (2d Cir. 2013) (internal quotation marks omitted). Thus, "the second prong [of the conscious avoidance test] may be established where a defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *Svoboda*, 347 F.3d at 480 (citation and internal quotation marks omitted) (emphasis in original). "For example, in a securities fraud case, if a defendant attended meetings that were part of the charged scheme, yet argues that he lacked the requisite scienter because, for example, he 'didn't bother to read in full' the documents he signed, the charge is appropriate." *Cuti*, 720 F.3d at 463 (citing *United States* v. *Ebbers*, 458 F.3d 110, 124-25 (2d Cir. 2006)). Indeed, "[i]t is not uncommon for a finding of conscious avoidance to be supported primarily by circumstantial evidence," as "the very nature of conscious avoidance makes it unlikely that the record will contain directly incriminating statements." *United States* v. *Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011). In other words, "[A] defendant's purposeful contrivance to avoid knowledge may not manifest in an affirmative act." *United States* v. *Whitman*, 2014 WL 628143, at *6 (2d Cir. Feb. 19, 2014) (summary order) (internal quotation marks and citation omitted). Accordingly, "[a] conscious-avoidance instruction is appropriate when a defendant claims to lack some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance." *United States* v. *Gabriel*, 125 F.3d 89, 98 (2d Cir. 1997) (citation and internal quotation marks omitted).

The trial record clearly supports giving a conscious avoidance instruction with regard to Counts One through Three. Amanat has firmly denied having any knowledge of the fraud on Maiden Capital investors. He advances that contention even though Maiden informed him in March 2009, immediately upon learning that his Enable investment was gone, that he had lied to one of his investors about the status of his fund (Tr. 675-79), and even though Maiden continued to inform Amanat into 2011 that he desperately needed money to pay investor redemptions to avoid "blowing everything up." (Tr. 924 ("Q. Ask you to direct your attention to the text message at 10 o'clock and 5 second. And what do you say to Mr. Amanat at the end of this text exchange? A. I say, 'I have a call with [Alpine Capital] at 730 a.m. I need to tell them I can send them 250 to keep them from litigating and blowing everything up.' Q. What did you mean by 'blowing

everything up'? A. I meant they would litigate. It would reach the authorities. It would blow up Maiden Capital. It would reach Enable, reach him, reach KIT, and blow everything up.") In light of these substantial "red flags," the jury should be instructed that the Government can prove knowledge if Amanat "studiously sought to avoid knowing what was plain." *United States* v. *Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995).[2]

                          Respectfully submitted,

                          JOON H. KIM
                          Acting United States Attorney

               By:    /s/
                          Damian Williams
                          Andrea M. Griswold
                          Joshua A. Naftalis
                          Assistant United States Attorneys
                          (212) 637-2298/1205/2310

cc: Defense Counsel (via ECF)

---

[2] The Government submits that a conscious avoidance instruction is also appropriate and should be given for Count Six. Isaza Tuzman's defense theory, after all, is that he was unaware of the accounting fraud scheme despite having numerous, highly incriminating communications with people (including Smyth, Campion, Jameel and Petru) who he admits were committing accounting fraud. *See Cuti*, 720 F.3d at 463 (approving conscious avoidance charge in accounting fraud case where defendant claimed that he lacked knowledge of the scheme despite participating in various meetings and approving certain transactions that advanced the fraud).