

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 18, 2017

BY ECF

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>       Re:     United States v. Kaleil Isaza Tuzman, S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

The Government respectfully submits this letter to respond to defendant Kaleil Isaza Tuzman's motion, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal on Counts Four through Six of the S8 Indictment. The defendant's motion, however, discusses only one count – Count Four – which charges the defendant with conspiracy to commit market manipulation.   For the reasons set forth below, the defendant's motion should be denied.

## Statute of Limitations

Much of the defendant's motion centers on the timeliness of the Government's S8 Indictment, which charges a market manipulation conspiracy spanning from December 2008 through September 2011. Isaza Tuzman was indicted on August 12, 2015; Amanat was indicted on July 12, 2016. According to Isaza Tuzman, the conspiracy ended before August 12, 2010, and, under a five-year statute of limitations, the indictment was untimely.

As part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Congress extended the statute of limitations for securities fraud-related offenses from five years to six years. *See* 18 U.S.C. § 3301. The legislation took effect on July 21, 2010. In determining whether Congress intended to apply the extended statute of limitations to pre-enactment conduct, the Court must look to *Landgraf* v. *USI Film Products*, 511 U.S. 244 (1994). *Landgraf* set forth a two-part test for determining whether a statute applies retroactively. At the first stage, a court must "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If Congress has done so, the inquiry ends, and the court enforces the statute as it is written, assuming there is no *Ex Post Facto* problem. *See id.* If the statute is ambiguous "or contains no express command," then the court proceeds to the second stage of the *Landgraf* test and "determine[s] whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*  If the statute, as applied, would have such an effect, then it will not be applied retroactively "absent clear congressional

intent" to the contrary. *See generally Enter. Mortgage Acceptance Co., LLC, Sec. Litig.* v. *Enter. Mortgage Acceptance Co.,* 391 F.3d 401, 405-06 (2d Cir. 2004).

To date, only two courts who have addressed whether Dodd-Frank's extended statute of limitations applies retroactively. First, in *United States* v. *Lewis*, 2013 WL 6407885 (N.D. Tex., Dec. 9, 2013), the district court held that a defendant who had been charged with (and convicted of) conspiracy to commit securities fraud and substantive securities fraud for conduct that ended in October 2006 was properly charged in June 2012, within the six-year period set forth in Dodd-Frank but outside the five-year statute of limitations that previously governed. *Id.* at *6-10.[1] Then, in *United States* v. *Gentile*, 235 F.Supp.3d 649 (D.N.J. 2017), a district court took the opposite view and held that Dodd-Frank's extended statute of limitations did not apply to conduct that took place in 2008. *Id.* at 654.

As charged, the market manipulation conspiracy spanned ended in September 2011 – more than one year after Dodd-Frank's enactment. Accordingly, the Government believes that the six-year statute of limitations should apply. The Government recognizes, however, that there is no clear authority within the Second Circuit on the applicability of *Landgraf* where, as here, the original statute of limitations had not yet expired when the law changed.[2] In any event, given that the Government timely charged both defendants even under a five-year statute of limitations, the Government is willing to consent to a five-year statute of limitations for purposes of instructing the jury.

## The Evidence Is Sufficient Under Rule 29

Even under a five-year statute of limitations, the evidence is more than sufficient to survive a Rule 29 motion on Count Four.

### A. Applicable Law

The Court may grant a motion for a judgment of acquittal only if it finds that the evidence was insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29; *United States* v. *McDaniel*, 2004 WL 1057627, at *1 (S.D.N.Y. May 10, 2004) (denying Rule 29 motion that challenged conviction on grounds other than sufficiency of the evidence). A defendant challenging the sufficiency of the evidence under Rule 29 bears a "heavy burden." *United States* v. *Autori*, 212 F.3d 105, 114 (2d Cir. 2000). In considering a motion for judgment of acquittal, "[t]he Court 'must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States* v. *Guadagna*, 183 F.3d 122,129 (2d Cir. 1999) (quoting *United States* v. *Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)).

---

[1] On appeal, the Fifth Circuit did not resolve the question whether the six-year statute of limitations applied because it held that the defendant had waived the statute of limitations argument by not raising it before or during trial. *United States* v. *Lewis*, 774 F.3d 837, 845 (5th Cir. 2014).

[2] Indeed, the statute of limitations had yet to run when Dodd-Frank was passed, given the continuation of the conspiracy into 2011.

Accordingly, a motion under Rule 29 must be denied if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 130 (quoting *United States* v. *Resto*, 824 F.2d 210, 212 (2d Cir. 1987)). "In other words, the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Id.* at 130 (citation omitted); *see also United States* v. *Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996).

When considering a Rule 29 motion, the Court must view the evidence in the light most favorable to the Government, *see United States* v. *Autori*, 212 F.3d at 114; *United States* v. *Guadagna*, 183 F.3d at 129, and must "credit[] every inference that the jury might have drawn in favor of the government." *United States* v. *Hernandez*, 85 F.3d at 1029; *see United States* v. *Diaz*, 176 F.3d at 89; *United States* v. *Morrison*, 153 F.3d 34, 49 (2d Cir. 1998); *United States* v. *Allah*, 130 F.3d 33, 45 (2d Cir. 1997); *United States* v. *Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996). To defeat a Rule 29 motion, "the government need not 'exclude every reasonable hypothesis other than that of guilt.'" *Guadagno*, 183 F.3d at 130 (quoting *Holland* v. *United States*, 348 U.S. 121, 139 (1954)); *see United States* v. *Sureff*, 15 F.3d 225, 229 (2d Cir. 1994) ("The government's case need not exclude 'every possible hypothesis of innocence.'") (quoting *United States* v. *Friedman*, 998 F.2d 53, 59 (2d Cir. 1993)); *United States* v. *Davis*, 8 F.3d 923, 928-29 (2d Cir. 1993). Even where the evidence *permits* an innocent inference, the task of choosing among the permissible inferences is for the jury, not for the Court. *See United States* v. *Taylor*, 18 F.3d 55, 57-58 (2d Cir. 1994); *United States* v. *Matthews*, 20 F.3d 538, 548 (2d Cir. 1994); *see also United States* v. *Rosa*, 17 F.3d 1531, 1542 (2d Cir. 1994) ("The fact that a trier of fact has declined to draw one of two or more competing inferences does not mean that the inferences drawn were not available or were not reasonable."). Accordingly, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the Court] must let the jury decide the matter." *Autori*, 212 F.3d at 114 (internal quotation marks omitted). Consistent with this approach, all issues of credibility must be resolved in the Government's favor. *See United States* v. *Abelis*, 146 F.3d 73, 80 (2d Cir. 1998).

Finally, in assessing the proof at trial, the Court must analyze each piece of evidence "not in isolation but in conjunction," *United States* v. *Matthews*, 20 F.3d at 548, and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others." *Guadagna*, 183 F.3d at 130; *see also United States* v. *Monica*, 295 F.2d 400, 401 (2d Cir. 1961).

### B. Discussion

The defendant's only argument in favor of acquittal on Count Four is that the Government cannot prove any overt acts after August 12, 2010. (Def. Mot. at 8.) The defendant insists that any conspiracy to manipulate the KIT digital stock had ended by August 2009 when the defendant began offering to help Stephen Maiden sell his KITD holdings and made various statements about not caring where the stock traded. (*Id.* at 9-10.) There are a host of fatal flaws with this argument. The Government focuses on two obvious flaws below.

*First*, there is compelling documentary evidence and testimony from Maiden supporting the conclusion that Maiden continued taking steps to manipulate the KITD stock in furtherance of the conspiracy well into 2011. For instance, GX 3816, which is a summary chart of Maiden's trading in KITD on September 8, 2011, demonstrates that Maiden Capital sold 1,950 KITD shares and purchased 1,950 KITD shares on the same day – the type of uneconomical, manipulative trading that was designed to inflate KITD stock. Maiden explained that in August and September of 2011, he continued buying and selling KITD stock with the goal of "supporting or pumping the stock even with the limited assets I had at that point." (Tr. 921-22; *see also* GX 1786-I (Maiden to Isaza Tuzman: "Stock very heavy today. Hearing any specific investor concerns that could be causing it?").) Maiden went on to say that he continued discussing the KITD stock with both defendants and that neither defendant told him to stop purchasing KITD stock. (*Id.* at 922.) The defendant no doubt disagrees with Maiden's testimony, but the Second Circuit has been clear that the evidence must be viewed "in the light most favorable to the government, drawing all inferences and resolving all issues of credibility in the government's favor." *United States* v. *Giraldo*, 80 F.3d 667, 673 (2d Cir. 1996).

*Second*, because conspiracy is a continuing crime, "the limitations period begins only when the purposes of the conspiracy have been accomplished or abandoned. Once the government 'has presented sufficient evidence to show a conspiracy that has continuing purposes or goals' and that has continued into the limitations period, 'the burden is on the defendant to prove . . . that he took affirmative steps to withdraw.'" *United States* v. *Martinez*, 862 F.3d 223, 232 (2d Cir. 2017) (quoting *United States* v. *Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008) (internal quotations marks omitted)). Isaza Tuzman's sporadic offers to help Maiden sell his KITD holdings fall well short of an affirmative withdrawal. *See United States* v. *Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (affirmative withdrawal consists of "either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators"); *United States* v. *Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988) ("Mere cessation of conspiratorial activity is not enough" to qualify as an affirmative withdrawal from a conspiracy). *United States* v. *Berger*, 224 F.3d 107, 118 (2d Cir. 2000) ("Our case law strongly suggests that resignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law; more is required.") The purpose of this bright line is clear. As the Second Circuit has explained:

> [S]ince it is all too easy after the fact for a defendant to claim that he or she withdrew from a plot, the law generally requires the taking of some "affirmative action." Indeed, unless a conspirator produces affirmative evidence of withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators.
>
> The point of such "affirmative evidence" requirements, though, is not to compel a conspirator to inform on his or her co-conspirators or to warn-off possible victims, admirable as those actions might be. It is rather to make sure that a withdrawal did occur and is not simply being invented *ex post*.

*United States* v. *Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995) (internal citations omitted).

In light of the evidence the Government has introduced showing that Maiden continued to manipulate the stock well into 2011, and the lack of evidence that either defendant affirmatively abandoned the conspiracy, the motion for acquittal fails.

For these reasons, the Government requests that the Court deny the defendant's Rule 29 motion.

        Respectfully submitted,

        JOON H. KIM
        Acting United States Attorney

By:       /s/
        Damian Williams
        Andrea M. Griswold
        Joshua A. Naftalis
        Assistant United States Attorneys
        (212) 637-2298/1205/2310

cc: Defense Counsel (via ECF)