

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 19, 2017

BY ECF

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Kaleil Isaza Tuzman, S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this letter to respond to defendant Omar Amanat's motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure and to request that the Court permit the Government to re-open its case-in-chief to offer one exhibit, GX 610, a spreadsheet containing wire transfers to and from Maiden Capital's Bank of America account. For the reasons that follow, the defendant's Rule 29 motion fails because the Government has offered ample proof of interstate wires. However, even if the motion were to have merit (and it does not), the Government's motion to re-open its case-in-chief should be granted to cure any potential defect.

## Amanat Rule 29 Motion

      On December 14, 2017, Amanat filed a Rule 29 motion that, among other things, argued that the Government "failed to identify any use of *interstate* wires that *furthered* the specific scheme charged in the Indictment – the alleged scheme between Omar Amanat, Stephen Maiden, and Irfan Amanat to defraud Maiden Capital investors through the means described in the Indictment." (Def. Ltr. at 10.)

      As an initial matter, to the extent the defendant claims that the Government has to prove an overt act in the form of an interstate wire that furthered the wire fraud conspiracy charged in Count One, he misstates the law. The Government, after all, does not have to offer any proof of any overt act whatsoever. *See United States* v. *Roy*, 783 F.3d 418, 420 (2d Cir. 2015) ("We . . . conclude that a conspiracy conviction under § 1349 does not require proof of an overt act."). Of course, the Government must satisfy its venue requirements for Count One. But that is easily established by the trial record. By itself, the July 15-16, 2011 New York City meeting between Amanat, Maiden, Kaleil Isaza Tuzman and others is sufficient to prove venue.[1]

---

[1] Amanat's Rule 29 motion did not specify venue as a grounds for acquittal. Therefore, his venue arguments have been waived. *See United States* v. *Price*, 447 F.2d 23, 27 (2d Cir. 1971) (holding

Turning to Count Two, which charges substantive wire fraud, the trial record is replete with interstate wires sufficient to satisfy the Government's burden. The evidence establishes that Amanat was based in Manhattan. (*See* GX 1517-A (providing a W. End. Ave Manhattan address for Amanat).) It also proves that Maiden was based in North Carolina during the scheme. (*Id.* (providing a Charlotte, North Carolina address for Maiden); *see also* Tr. at 790 ("A. Because Kaleil called me from the floor of the NASDAQ when they were ringing the closing bell. Q. Where were you? A. I was at my home trading in Charlotte.") and at 5887 ("Q. Do you have an understanding, based on your review of these records, where Mr. Maiden and his company were based? A. Yes. North Carolina") .) The Government introduced a substantial number of wire communications – specifically, email and text messages – between the New York-based Amanat and North Carolina-based Maiden in which they discuss meeting investor redemptions in order to stave off discovery of the fraud.

For example, in GX 1729, a November 17, 2011 email chain between Amanat and Maiden titled "Important – Wire", Maiden says: "You said you would send 250k once I emailed him to reregister. He won't ask a million questions – we traded emails on this before. Folks are expecting cash this week as I led them to believe that given you saying you'd send the 250. You can't fade on this stuff dude. I am communicating to investors based on what you tell me." Other wire communications express similar statements in furtherance of the substantive scheme. For instance, GX 1785-AY is a January 22, 2012 text message exchange between Amanat and Maiden. Maiden wrote: "Can u send 150 tomorrow. Critical bro." Amanat responded: "Why?" Maiden then explained that the money would be used "[t]o pay 2 guys – I have negot every one else to stay in. Been working on trying to minimize loan. Cant wait anymore. need this amount now. Should be clear after this." Maiden went on to say: "I have been dealing w these guys for months. I will manage them on rest but have to get this. One is Bonnie's ex boss who is threatening lawsuit etc. ruining family relationships. Just killing Bonnie. U promised 100before when I sent cert. pls just deliver bro. We are partners. Honor your word pls."

The Government need not detail, email-by-email, text-by-text, all the wire communications between Amanat and Maiden that are of a piece with GX 1729 and GX 1785-AY. Nonetheless, it should be clear that a reasonable juror can conclude, beyond a reasonable doubt, that these are all interstate wire communications between the Manhattan-based Amanat and North Carolina-based Maiden in furtherance of the scheme to defraud Maiden Capital investors. Given the "heavy burden" Amanat faces on Rule 29 and the fact that the evidence must be viewed in the light most favorable to the Government, *see United States* v. *Autori*, 212 F.3d 105, 114 (2d Cir. 2000); *United States* v. *Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999), Amanat's motion necessarily fails. That is particularly true when Amanat's only response to the Government's proof has been to argue that he may have traveled to locations outside of Manhattan during the scheme. Not only is there no evidence in the record that Amanat was a frequent traveler, but Amanat's response also neglects

---

that venue arguments waived "when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue"); *United States* v. *Pughe*, 441 Fed. Appx. 776, 778-79 (2d Cir. 2011) (same); *United States* v. *Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984) ("A general motion for judgment of acquittal . . . is not sufficient to raise and preserve for appeal the question of venue.").

the rule that the Court must "credit[] every inference that the jury might have drawn in favor of the government." *United States* v. *Hernandez*, 85 F.3d at 1029; *see United States* v. *Diaz*, 176 F.3d at 89; *United States* v. *Morrison*, 153 F.3d 34, 49 (2d Cir. 1998); *United States* v. *Allah*, 130 F.3d 33, 45 (2d Cir. 1997); *United States* v. *Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996), and, in light of Amanat's waiver of his venue argument, the reality that the Government need only prove that Amanat was not in *North Carolina* when he communicated with Maiden.

The only fair inference that the jury can draw from the trial record is that Amanat and Maiden engaged in numerous interstate wire communications over the course of their multi-year scheme. Accordingly, the Government believes it has easily proven an interstate wire that furthered the scheme charged in Count Two.

### Reopening the Record to Admit GX 610

The Government made clear to defense counsel that, to the extent he disagreed with the sufficiency of the Government's proof of interstate wires, it would seek to offer GX 610, which specifies various wires in to and out of Maiden Capital's Bank of America account. If admitted, GX 610 would remove any conceivable doubt that the Government's proof is sufficient.

In *United States* v. *Leslie*, the Second Circuit explained that, even after a defendant moves for a judgment of acquittal pursuant to Rule 29, "a district judge retains wide discretion to allow the government to re-open its case to correct errors or some other compelling circumstance justifies a reopening and no substantial prejudice will occur." 103 F.3d 1093, 1104 (2d Cir. 1997) (internal quotation and citation omitted). There, the court held that the district court did not abuse its discretion in permitting the Government to reopen and present evidence on the "jurisdictional predicate" of the money laundering statute. *Id.* at 1105. Critically, *Leslie* explained that "[w]hile the interstate commerce element of a criminal statute is critical, it is, after all, only a jurisdictional prerequisite to the exercise of federal power. *See United States* v. *Wilson,* 523 F.2d 828, 829 n. 2 (8th Cir.1975) (interstate commerce element of statute predicate for federal court jurisdiction). In that sense, it is a simple matter, like venue or the identification of the defendant, and a district court may allow the government to reopen its case to establish this jurisdictional predicate." *Id.* at 1104. The re-opening was permissible where, as here, "the government presented the evidence without delay after initially resting, and prejudice was unlikely." *Id.* The circuit has relied on *Leslie* to affirm similar decisions to re-open the Government's case-in-chief. For instance, in *United States* v. *Parkes*, 497 F.3d 220, 231 (2d Cir. 2007), the court affirmed Judge Kaplan's decision to allow the Government to reopen its case to present agent testimony regarding the foreign sources of drugs and the fact that some people travel to New York from other states to purchase drugs. The Government needed this testimony to satisfy the interstate commerce element of a charged Hobbs Act robbery conspiracy. Relying on *Leslie*, the court explained: "Here, the district court's decision to change the jury charge, which (according to the government) necessitated additional proof to establish the jurisdictional predicate, was a sufficiently compelling circumstance. Moreover, Parkes was not prejudiced by the presentation of this evidence upon reopening, rather than at some earlier point." *Id.* at 231; *see also United States* v. *Suarez-Rosario*, 237 F.3d 1164, 1167 (9th Cir. 2001) ("One purpose of Rule 29 motions is to alert the court to omitted proof so that, if it chooses, it can allow the government to submit additional evidence.").

Reopening the Government's case-in-chief will cause defendant Amanat no prejudice. Proof of an interstate wire here, like proof of interstate commerce in *Leslie*, is plainly jurisdictional. *See United States* v. *Price*, 347 Fed. Appx. 189, 191 (2d Cir. 2010) ("We have previously held that the interstate requirement of the statute is jurisdictional and that 'there is no *mens rea* requirement as to the purely jurisdictional element of interstate communication under the wire fraud statute.'") (quoting *United States* v. *Blackmon*, 839 F.2d 900, 907 (2d Cir. 1988). The Government recently rested and quickly alerted defense counsel of its plan to offer GX 610 if proof of interstate wires was still in dispute. The Government first produced GX 610 in July 2016 and marked it as an exhibit prior to trial. The authenticity of the document is not in dispute – the parties stipulated to the authenticity of all other Bank of America records. (*See* GX 3 (Bank of America stipulation).) Furthermore, the circumstances here are compelling; the Government introduced substantial evidence of wire communications that took place between Manhattan and North Carolina. To the extent the Court were to find that evidence insufficient as a matter of law under the permissive Rule 29 standard, then Government has an abundance of additional evidence (such as GX 610) that could easily fill the gap and should be allowed into the record.

For these reasons, the Government requests that the Court deny the defendant's Rule 29 motion or, in the alternative, permit the Government to re-open its case-in-chief to offer GX 610.

    Respectfully submitted,

    JOON H. KIM
    Acting United States Attorney

By:     /s/
    Damian Williams
    Andrea M. Griswold
    Joshua A. Naftalis
    Assistant United States Attorneys
    (212) 637-2298/1205/2310

cc: Defense Counsel (via ECF)