

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 19, 2017

BY ECF AND E-MAIL

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Kaleil Isaza Tuzman
               S8 15 Cr. 536 (PGG)

Dear Judge Gardephe:

      The Government writes in response to the Court's questions regarding certain proposed jury instructions.

      Statute of Limitations (Tuzman Request No. 38)

      In his proposed requests to charge, Tuzman suggests a statute of limitations charge. (Dkt. 403, at 69). In its December 18, 2017, the Government explained that, although it believes that a six-year statute of limitations should apply, the Government is willing to consent to a five-year statute of limitations for purposes of instructing the jury. (Dkt. 612). The grand jury returned the S1 Indictment on August 12, 2015. (Dkt. 4). The Government sought and obtained a Sealing Order, also signed on August 12, 2015. As such, the statute of limitations runs from August 12, 2010 — not September 10, 2010, as Tuzman suggests. *See United States* v. *Gigante*, 436 F. Supp. 2d 647, 660 (S.D.N.Y. 2006) ("An indictment that is sealed generally tolls the statute of limitations."). The Sealing Order provided that the S1 indictment was sealed to enable the Government to locate Tuzman, arrest him, and extradite him from Colombia: (*See* Dkt. 6 (sealing indictment "to avoid premature disclosure of the investigation, resulting in the potential flight from justice of investigative targets, including [Kaleil Isaza Tuzman] who resides outside the United States"; permitting disclosure of the S1 Indictment "as necessary to aid in the arrest and extraction of [Kaleil Isaza Tuzman]"). Thus, is not a case, as identified in *Gigante*, where "the Government lack[ed] a proper purpose in sealing the indictment, [and] the indictment is considered to be found upon the date of its unsealing." *Gigante*, 436 F. Supp. 2d at 660.

      The Government objects to Tuzman's proposed instruction because it does not accurately state the law. Because conspiracy is a continuing offense, "the limitations period begins only when the purposes of the conspiracy have been accomplished or abandoned. Once the government 'has presented sufficient evidence to show a conspiracy that has continuing purposes or goals' and that has continued into the limitations period, 'the burden is on the defendant to prove

. . . that he took affirmative steps to withdraw.'" *United States* v. *Martinez*, 862 F.3d 223, 232 (2d Cir. 2017) (quoting *United States* v. *Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008) (internal quotations marks omitted)); (*see also* Dkt. 612, at 3-5). Thus, the jury does not need to find that the defendants continued to participate in the scheme, as Tuzman suggests. The Government proposes the following additional instruction:

> There is a limit on how much time the government has to obtain an indictment. This is referred to as the statute of limitations. If you find that the government has proven all of the elements of Count Four beyond a reasonable doubt with respect to a defendant, you must also find that either Mr. Tuzman, Mr. Amanat, or one of their co-conspirators committed at least one overt act in furtherance of the conspiracy to manipulate the market for KIT digital's stock after August 12, 2010.

*See*, *e.g.*, Sand et al. § 19-7; *United States* v. *Frank*, 156 F.3d 332, 339 (2d Cir. 1998) (per curiam).

<u>Wire Fraud:  Existence of Scheme or Artifice to Defraud (Gov't Request No. 12)</u>

Tuzman objects to Government Request No. 12, which proposes a charge for the first element of wire fraud, the existence of a scheme or artifice to defraud. The defendant relies on an Eleventh Circuit decision, *United States* v. *Takhalov*, 827 F.3d 1307 (11th Cir. 2016), to argue that the defendant "must intend to harm the victims of the fraud." (Dkt. 444, at 4). Putting aside that the fact that Tuzman does not actually propose an instruction, the Government's proposed instruction makes clear that "the Government must prove that the alleged scheme contemplated depriving another of money or property," consistent with Second Circuit law. (Dkt. 391, at 19). Thus, it is unclear what the defendant believes is missing.[1]

The defendant also objects to a paragraph in the Government's proposed jury instruction. (Dkt. 391, at 20). The text of this proposed instruction is based on numerous Second Circuit decisions, which are cited in the Government's proposed requests to charge, but which the defendant does not address. *See*, *e.g.*, *United States* v. *Binday*, 804 F.3d 558, 579 (2d Cir. 2015) (holding that "it is not necessary that a defendant intend that his misrepresentation actually inflict a financial loss—it suffices that a defendant intend that his misrepresentations induce a counterparty to enter a transaction without the relevant facts necessary to make an informed

---

[1] The issue that the Eleventh Circuit in *Takhalov* confronted was whether the district court erred in not giving the following instruction: "that they must acquit if they found that the defendants had tricked the victims into entering a transaction but nevertheless gave the victims exactly what they asked for and charged them exactly what they agreed to pay." 827 F.3d at 1310. The Eleventh Circuit affirmed the district court's refusal to give such an instruction: "The Second Circuit has interpreted the wire-fraud statute in precisely this way. Their cases have 'drawn a fine line between schemes that do no more than cause their victims to enter into transactions that they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes.'" *Id.*

economic decision"); *United States* v. *Tagliaferri*, No. 15-536, 2015 WL 2342712, at *4 (2d Cir. May 4, 2016) (wire fraud does not require actual financial loss; it is sufficient if the victim was "deprived of potentially valuable economic information, such as where the deceit affected the victim's economic calculus or exposed the victim to unexpected economic risk") (internal quotations and citations omitted); *United States* v. *DiNome*, 86 F.3d 277, 284 (2d Cir. 1996) (definition of property includes the right to control the use of one's assets; where defendant intends to deprive victim of information material to victim's decision on how to deal with his assets, required intent to defraud is present); *see United States* v. *Trapilo*, 130 F.3d 547, 550 n.3 (2d Cir. 1997) (interpreting wire fraud statute; "The term 'scheme to defraud' is measured by a 'nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society. . . . The scheme exists although no misrepresentation of fact is made'") (citations omitted); *United States* v. *Levis*, 488 Fed. Appx. 481, 485; 2012 WL 2914118 (2d Cir. 2012) ("A defendant engages in wire fraud when he intentionally deprives a victim of potentially valuable economic information that could impact on economic decisions made by the victim."). Moreover, the defendant's citation to *Binday* is inapposite, as the proposed instruction correctly instructs the jury on the causal link that is necessary.

### Standards Unclear (Tuzman Request No. 47)

Tuzman also requests that the Court give a so-called "Standards Unclear" instruction relating to Count Six, which charges a conspiracy to commit securities fraud, to make false statements in annual and quarterly SEC reports, and to make false statements to auditors. (Dkt. 403, at 88). The Government objects to this instruction. Indeed, it is unclear why it is necessary given how the evidence was presented and how the defendant has defended the case. The jury is not being asked to interpret particular accounting rules. The Government directed the jury to KIT digital's disclosure in its Form 10-K about how it recognized revenue. But the jury is not being asked to interpret this disclosure. Indeed, the undisputed evidence is that KIT digital entered into sham license agreements to generate fake revenue. The Government does not understand the defendant to be arguing that fake revenue can be properly recognized under KIT digital's revenue recognition policy.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: /s/
Damian Williams
Andrea M. Griswold
Joshua A. Naftalis
Assistant United States Attorneys
(212) 637-2298/1205/2310

cc: Defense Counsel (via ECF)