

RANDALL W. JACKSON
Tel.: (212) 303-3650
E-mail: rjackson@bsfllp.com

December 20, 2017

**BY ECF AND HAND**
Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Kaleil Isaza Tuzman, et al.*, 15 Cr. 536 (PGG)

Dear Judge Gardephe:

    This letter is respectfully submitted in response to the Government's letter opposing Mr. Amanat's Rule 29 motion and the Government's request to reopen its case to offer purported evidence of interstate wires, Dkt. No. 622.  None of the cases cited by the Government support the idea that the Government should be allowed to reopen its case. The Government's response also fails to identify any proof submitted in its case-in-chief from which a reasonable juror could conclude guilt on Counts One and Two beyond a reasonable doubt.  For these reasons, as explained in more detail below, the Court should grant the defendant's motion for judgment of acquittal and deny the Government's request to reopen its case.

**I.**    **The Government Has Not Identified Any Evidence of Actual Interstate Wires Used to Further the Alleged Scheme to Defraud**

    **A.**    **Count Two**

    With respect to Count Two, the Government asks the Court to conclude that because Mr. Amanat scribbled down a registered address in New York in December of 2008, months before the time periods of the alleged scheme, a reasonable juror could conclude that interstate wires must have been sent in furtherance of the scheme to defraud.  Let. at 2.  The Government is wrong.  To prove wire fraud, the Government must show, among other things, that the defendant's scheme to defraud was "furthered by the use of interstate wires." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000).  In support of this purported proof, the Government cites two exhibits: GX 1729 and GX 1785-AY. Neither of these exhibits establish that an interstate wire was sent in furtherance of the conspiracy.

    First, with regard to GX 1729, there is no evidence at all in the record concerning the location of Mr. Amanat or of Mr. Maiden when sending the email.[1]  There is also no testimony

---

[1] Moreover, far from demonstrating the use of interstate wires in furtherance of a conspiracy, GX 1729 demonstrates Mr. Amanat's *refusal* to send Mr. Maiden anything more than $10,000 to be used for Mr.

BSF

or other evidence that explains where either participant in the text exchange was in GX 1785-AY.[2] Nowhere in these text messages is there any reference to either Mr. Amanat or Mr. Maiden's location when sending these text messages.

The Government cannot satisfy its burden with GX 1729 or GX 1785-AY because neither show: (1) that an interstate wire was sent or received or (2) that that wire was used to further the scheme to defraud the Maiden Capital investors. The Government claims to have "introduced a substantial number of wire communications," but it fails to identify, even in summary fashion, the exhibits or trial testimony to which the Government refers. The two exhibits the Government identifies as exemplars of proof of use of wires in furtherance of the scheme to defraud prove nothing of the sort.

Indeed, the cases cited by the Government make clear that the courts cannot excuse the casual disregard of the requirement to introduce evidence of each of elements of charged crimes. In *United States v. Leslie*, 103 F.3d 1093, 1102 (2d Cir. 1997), the Second Circuit reversed the defendant's conviction for money laundering due to the Government's failure to prove that the alleged transaction laundering money had a *de minimis* effect on interstate commerce.

*Leslie* involved the Government's failure to offer any evidence that a bank involved in the case was engaged in interstate commerce. *Id.* The Court of Appeals therefore reversed the conviction with respect to this transaction. *Id.* at 1102. The Second Circuit explained that: "[t]o conclude that the transaction affected interstate commerce under 18 U.S.C. § 1956(c)(4)(A) simply because a bank was involved in the transaction would, in effect, read § 1956(c)(4)(B) out of the statute." *Id*. Here, the Government goes a step further and asks the Court to read the "wire fraud" out of the wire fraud statutes. That would be improper. It cannot be the case that the Government meets its burden in a wire fraud case whenever there is proof making it *possible* that an interstate wire was sent. That is not the standard under Rule 29 – it simply cannot be said on this record that a reasonable juror could conclude that the Government has met its burden with respect to interstate wires. The Government's casual attitude towards this failure of proof is precisely what the Second Circuit warned against in *Leslie*:

> Yet again, we find ourselves compelled to remind prosecutors of their obligation to prove every element of a criminal charge. A decade ago we found it "well-nigh incredible that after [repeated warnings from this and other Circuits] the Department of Justice or ... a large United States Attorney's office such as that for the Southern District of New York, still has not effectively instructed prosecutors to ask the simple question that would avoid the need for judicial consideration of what should be a non-problem, not to mention the risk of reversal of convictions obtained after great effort by the Government, considerable expense to the public and long service by jurors."

---

Maiden's personal subsistence, a common theme in the communications between Mr. Maiden and Mr. Amanat (*see, e.g.,* Tr. 926).

[2] GX 1785-AY is a text exchange between Mr. Maiden and Mr. Amanat in which Mr. Maiden asks that Mr. Amanat to send $150,000 "to pay 2 guys" for "Partial redemp 2 Investors."



*Leslie*, 103 F.3d at 1104–05  (quoting *United States v. Sliker*, 751 F.2d 477, 484 (2d Cir.1984)).

Even assuming Mr. Amanat's notation of an address in New York on one document was sufficient proof that he was "based in New York," this would not be sufficient proof to allow a reasonable juror to conclude that any of his specific communications were actually sent from or received in New York. Mr. Amanat could have been anywhere when the communications at issue were sent. A reasonable inference is not the same thing as pure speculation. In sum, the Government has therefore failed to meet its burden.[3]

B.   **Count One**

The Government's argument on Count One misframes both the issue and the defense's argument.  The issue is not whether the Government has to prove any "overt act," with respect to the alleged conspiracy to defraud the Maiden Capital investors. (Let. at 1). The issue is whether the Government can show that, **in the total absence of any proof** that any interstate wires were sent in furtherance of the alleged scheme to defraud, the Government simply invite the jury to speculate about the alleged conspirators' intentions.  Here, again, the Government fails to identify *any* proof of any alleged contemplation or plan related to the use of interstate wires.  In support of Count One, the Government cites GX 1729 and GX 1785-AY, which do not support the Government's theory for reasons already explained above.  It is conceivable that the Government could have established this element through witness testimony, but it did not. The Government cannot now do so by reopening its case. The prejudice to Mr. Amanat would be severe, for the reasons explained in Part IV of this letter.

At bottom, the Government has not cited any affirmative evidence or testimony that it was reasonably foreseeable that an interstate wire would be sent in furtherance of the alleged conspiracy to defraud the Maiden Capital investors.  Again, the very cases cited by the Government make clear that the Government cannot simply assert that it has proven the contemplated use of interstate wires in furtherance of a conspiracy by arguing that the jury could consider the fact that Mr. Maiden is based in North Carolina:

> We verge on becoming "mad-eyed from stating the obvious," R.P. Wilbur, Advice to a Prophet, 196: **federal prosecutors must devote the minimal effort necessary to establish federal jurisdiction over the acts of the accused. There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime**.  Sadly, we are forced to continue reversing convictions, as long as prosecutors remain lax in the simpler aspects of their jobs.

*Leslie*, 103 F.3d at 1102-03 (emphasis added).  Having identified no substantive proof, the Government has no basis from which to ask this Court to conclude that the jury could infer the possible existence of interstate wires in furtherance of a scheme to defraud.  The Government cannot ask the Court to take judicial notice that every conversation between Mr. Amanat and Mr. Maiden was in furtherance of a conspiracy.  There must be proof that would allow a reasonable

---

[3] Nor can the Government attempt to solicit this evidence from Mr. Maiden in its rebuttal case, as that would greatly exceed the permissible scope of rebuttal.



juror to conclude that specific uses of the interstate wires either occurred or were a contemplated or reasonably foreseeable part of the scheme. There is no evidence on this point.

**II.     The Government Has Also Failed to Offer Any Evidence of an Interstate Wire to New York**

The Government argues that it has satisfied its burden on venue through the introduction of evidence concerning a meeting between the alleged conspirators on July 15-16, 2011 in New York City. Even if this meeting was part of the fraud schemes charged in Counts One and Two, and that is far from clear, it is insufficient to establish venue, as set forth in our December 18, 2017 letter (Dkt. No. 613). The Government's letter ignores the Second Circuit's decision in *United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005), which held that the fact that the scheme to defraud was hatched in New York was insufficient to establish venue in New York for mail fraud. The analysis of *Ramirez* is equally applicable to the wire fraud charges here. In *Ramirez*, the Second Circuit explained that "the Sixth Amendment speaks in terms of the district where a crime is "committed," and as the Supreme Court has repeatedly emphasized, the 'locus delicti ... must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Id.* at 144 (quoting *United States v. Rodriqguez-Moreno*, 526 U.S. 275, 279 (1999)).

Proper venue, therefore, requires "identifying where the physical *conduct* constituting the offense took place." *Id.* (internal quotations omitted) (emphasis in original). The Second Circuit held that to satisfy venue, it is not enough for the purported venue to be used to devise the scheme to defraud because venue cannot be satisfied by the *mens rea* element of mail fraud. *Id.* ("One might easily devise a scheme to defraud entirely in one's head and not engage in any act proscribed by the statute until "plac [ing]" an item into the mail."). For a venue to be proper, the Government must show that the allegedly criminal conduct elements actually took place in that venue: "we hold that venue for mail fraud is limited to where "the defendant 'places,' 'deposits,' 'causes to be deposited,' 'takes,' or 'receives' mail, or 'knowingly causes' mail 'to be delivered." *Id.* at 146; *see also United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002) (venue may only be established "in those locations where the wire transmission at issue originated, passed through, or was received, or from which it orchestrated." ).[4]

As explained in Part I, the Government has failed to show that *any* interstate wire was sent or delivered to New York. The Government argues that because it has asserted that Mr. Amanat is based in New York, it should be assumed that the wires were sent to or from New York and that Mr. Amanat was not travelling at the time the alleged wires were sent. Again, the Government attempts to dispose of this issue in a cursory manner asking the Court to simply take its word that "there is no evidence in the record that Amanat was a frequent traveler." Let. at 2. The Government is mistaken. There is abundant evidence in the record that Mr. Amanat was a frequent traveler. Indeed, the Government simply ignores this blunt exchange on Mr. Maiden's cross-examination which contradicts that assertion in its entirety: "Q. You recall that he [Mr. Amanat] was traveling around the world all the time, right? A. He was, yeah." Tr. 1534. Mr. Maiden testified at length about Mr. Amanat's frequent and international travel on his cross-examination. (Tr. 1533-1534 ("Q. And you recall that he was in France at the time? A. Yes. Q.

---

[4] This case was also discussed in our December 18th letter.



And you tried reaching him multiple times that day and the days prior, correct? A. Correct. Q. And you weren't connecting. There was a disconnect in the phone calls, right? A. Right. Q. Every time you tried calling him, the connection was lost because he was overseas? A. Right. Q. By the way, that was a frequent problem for you in trying to reach my client, wasn't it? A. What's that? Disconnections? Q. Yes. A. It doesn't strike me as a frequent problem. Q. You recall that he was traveling around the world all the time, right? A. He was, yeah. Q. And sometimes it was hard to get in touch with him because of his travels around the world, right? A. It was. He's a busy guy.")).  The Government has not identified any piece of evidence in the record which shows that a wire was sent to or from New York that actually furthered the scheme to defraud the Maiden Capital investors. Nor did the Government elicit any testimony concerning the possibility that such wires were contemplated as part of the conspiracy.

### III.    Mr. Amanat Has Not Waived His Venue Argument

The Government argues in a footnote that Mr. Amanat has somehow waived his argument that the Government failed to meet its burden with respect to venue.  Let. at 1-2, n.1.  This argument fails.  *First*, the Government's failure to establish venue with regard to the wires was implicit in Mr. Amanat's initial Rule 29 motion, which argued that the Government failed to identify *any* interstate wires whatsoever.  The motion stated that that the Government "failed to identify any use of *interstate* wires that *furthered* the specific scheme in the Indictment."  *See* Dkt. No. 605, Part E.; *id.* at 11 ("There is also no location information about these wires. There is no location information in the record about any potentially relevant wire that would allow a juror to reasonably conclude, without pure speculation, that the wire in question was in fact an interstate wire sent in furtherance of the charged schemes.").  It naturally follows that if the Government failed to demonstrate the existence of *any* wires, it failed to establish proper venue in New York.

In any event, Mr. Amanat promptly supplemented his Rule 29 motion with two additional letters on the issue prior to the Government's response to his Rule 29 motion.  *See* Dkt. Nos. 609 and 613.  The December 18, 2017 letter explicitly discusses Mr. Amanat's previous submissions on the Government's "deficiencies in proof" concerning interstate wires and cites *United States v. Ramirez* and *United States v. Pace*, discussed above, which demonstrate that where the Government has failed to identify the transmission or receipt of an interstate wire in the alleged venue, venue cannot lie.  In the face of these multiple and clear submissions—all occurring prior to the Government's response—there can be no real argument of waiver.  Indeed, all of the cases cited by the Government involve situations where the defendant raised the waiver argument for the first time on appeal and never gave the trial court the opportunity to address the issue. This is not a similar situation.

For example, the Government cites *United States v. Pierce*, in which the defendant was charged with theft of goods moving in interstate commerce. 447 F.2d 23, 27-28 (2d Cir. 1971).  In *Pierce*, the defendant filed a Rule 29 motion when the Government rested and then filed a motion for a directed judgment of acquittal.  In neither of these motions did the defendant specify venue as a grounds for acquittal, raising it, instead, for the first time in the Second Circuit. *Id*.  Moreover, in *Pierce*, the Second Circuit noted that it was important to the waiver analysis that defendant was clearly on notice of the alleged venue and the alleged conduct in the venue

BSF

because the Government had made it clear that the theft occurred in New Milford, Pennsylvania. *Id*. Here, of course, Mr. Amanat has repeatedly requested the identification of that very information—namely the specific wires the Government intends to rely upon to establish Counts One and Two. Dkt. Nos. 609 and 613. It was not until the Government's response to the Rule 29 motion that the Government identified the wires purporting to establish venue. It is absurd for the Government to now also argue that Mr. Amanat has waived any argument that those wires do not establish venue.[5]

Here, the defense unquestionably raised the issue in the district court, prior to any response being filed by the Government. The Government cited a single case where waiver was found when defense counsel raised the argument in the trial court prior to any Government response or court ruling on the Rule 29 motion. Indeed, in *Pierce*, the Second Circuit warns that its "precedents establish that the constitutional underpinning and importance of proper venue dictate that waiver of objections to venue should not be readily inferred . . . ." *Id.* at 27. No waiver occurred here.

## IV. The Government Has Not Cited Any Authority Supporting Re-Opening Its Case

The Government cites four cases in support of the idea that it should be allowed to reopen its case. None of the cases indicate that reopening the Government's case is appropriate in this situation. In *Leslie*, the Second Circuit observed that "[g]enerally, a district court will allow reopening to establish venue, identify the defendant, or attend to **other technical matters**." *Leslie*, 103 F.3d at 1104 (emphasis added). The Court emphasized that, in that case, the decision to allow the Government to reopen was not an abuse of discretion because the deficiency addressed only a technical matter, because "the government presented the evidence without delay after initially resting," and because in that case "prejudice was unlikely." *Id.* None of those factors are applicable here. In *Leslie*, the defendants were charged with money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). *Id.* at 1100. The Government was thus required only to prove that the "financial transaction" at issue "in any way or degree affects interstate or foreign commerce" through, among other things, "the use of a financial institution" engaged in interstate commerce. *Id.* at 1099-1100. The Second Circuit read this statutory requirement to mean that the Government was required only to show a "de minimis effect on interstate commerce." *Id.* That is a far lesser burden than the burden the Government faces when prosecuting wire fraud under 18 U.S.C. § 1343.

"The elements of wire fraud under 18 U.S.C. § 1343 are (i) a scheme to defraud (ii) to get money or property, **(iii) furthered by the use of interstate wires**." *See United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (emphasis added). Regardless of *where* the wires were

[5] The Government's other purported authority fares no better. *See United States v. Pugh*, 441 Fed. App'x 776, 778-79 (2d Cir. 2011) (raising venue objection for first time on appeal after filing a general Rule 29 motion that did not specific any specific grounds for acquittal). In neither *Pugh* nor *Pierce* did defendant raise the issue of venue before the trial court but, instead, relied on the submission of a general Rule 29 motion without specifying grounds for acquittal, raising the issue for the first time in the Second Circuit. That could not be further from the situation here. *United States v. Potamitis* does not even explicitly hold that a waiver occurred but instead finds that the Government "put on sufficient evidence" from which the jury could conclude that venue was proper. 739 F.2d 784, 791 (2d Cir. 1984).

<15-cr-00536-PGG   Document 624   Filed 12/20/17   Page 7 of 8



sent or received, to meet its burden, the Government must show that the use of the interstate wires furthered the scheme to defraud the Maiden Capital investors. This is not a "technical matter." The instant situation is not similar to *Leslie,* where the request to reopen the case was limited to proof that a bank was insured by the FDIC. Here we are dealing with a failure of the Government to establish the central elements of its case.

Mr. Amanat would be severely prejudiced by any reopening of the case. Had the Government offered proof with respect to the interstate wires, Mr. Amanat would have structured his defense case differently. The defense may have called different witnesses if the Government had introduced actual proof of an interstate wire in furtherance of the conspiracy. Indeed, as the Court knows, we explored calling various Maiden Capital investors – the defense attempted to subpoena records from a civil suit related to this exploration. Unlike the question of whether a bank is FDIC insured, which is unimpeachable, the question of whether any particular wire was sent in furtherance of the conspiracy is very susceptible to attack. Any attempt to prove the interstate wire element would have factored into Mr. Amaant's decision to submit certain pieces of evidence and informed his strategy on calling and examining certain witnesses. To allow the Government to continue its proof *after* both the Government and the defense have rested would undermine the entire structure of the trial, and work an extraordinary unfairness on the defensew. This is especially true where the Government has not truly professed "error" consistent with *Leslie* but stands by its initial purported proof in its case-in-chief, arguing in its letter that the purported initial proof of interstate wires is sufficient. Let. at 2 ("Accordingly, the Government believes it has easily proven an interstate wire that furthered the scheme charged in Count Two."). Having made this argument, the Government cannot now ask the Court to allow it to re-open its case to add a "belt and suspenders" to what it professes to have been sufficient proof. The Government's case already lasted far longer than the Government projected, and we are now at a crucial point in the case. Any further delay to the conclusion of the case will prejudice the defendants.[6]

The other cases cited by the Government suffer from the same defect on this point as *Leslie*. In *United States v. Parkes*, the defendant was charged with the Hobbs Act which requires only a showing of a "very slight effect on interstate commerce. Even a potential or subtle effect on commerce will suffice." 497 F.3d 220, 221 (2d Cir. 2007). Even so, the Second Circuit only affirmed the court's decision to allow the Government to re-open its case because of the intervening factor of the district court's change in the jury charge. *Id.* at 231 ("Here, the district court's decision to change the jury charge, which (according to the government) necessitated additional proof to establish the jurisdictional predicate, was a sufficiently compelling circumstance"). No such factor, out of the Government's control, exists here. And more importantly, the Government cannot show that the requested reopening is technical and will not prejudice Mr. Amanat.

The only other case cited by the Government is the Ninth Circuit's decision in *United States v. Suarez-Rosario*, 237 F.3d 1164, 1167 (9th Cir. 2001). In *Suarez-Rosario*, the Government was allowed to reopen its case only to offer limited proof as to the defendant's

---

[6] Moreover, while the Government asserts that there is no admissibility issue concerning its plan to offer GX 610, Mr. Amanat is not in a position to stipulate to the authenticity of GX 610. Additional witness testimony would therefore be necessary to authenticate and explain GX 610.



name, which the trial observed was not even an element of the crime. *See id.* None of the analysis in that case is informative here.

In contrast, the Courts of Appeals have found an abuse of discretion where the Government seeks to reopen its case without providing a sufficient justification for the failure to offer even non-essential proof during the Government's case-in-chief. *See, e.g., United States v. Crawford*, 533 F.3d 133, 139 (2d Cir. 2008) (reversing and finding abuse of discretion where district court allowed government to reopen case just after deliberations began, observing "[t]he government does not get a free pass merely because the district judge participates . . . that the district court played an active role in initiating reopening proceedings does not excuse the government from showing that it had a reasonable explanation for failing to introduce the evidence in a timely manner"); *United States v. Nunez*, 432 F.3d 573 (4th Cir. 2005) (district court abused its discretion by allowing government to reopen case after summations where "government [had] presented no 'reasonable explanation' for its failure to timely seek introduction of [report summarizing defendant interview] as substantive evidence during the trial")

Notably, part of the prejudice analysis in *Crawford* was that "the belated introduction of the trace report probably imbued the evidence with distorted importance." *Crawford*, 533 F.3d at 140. Here, similarly, introduction of bank records after both defendants have rested and a substantial rebuttal case has begun will imbue the records with outsize importance.

In sum, allowing the Government to re-open its case would severely prejudice Mr. Amanat. The Government has failed to submit any reasonable justification for their failure to offer the proof at issue, and the Government has failed to identify any authority showing that where the Government failed to prove its case—rather than failed to attend to a jurisdictional prerequisite—it should be allowed to simply try again.  The Court should deny the Government's application.

We appreciate the Court's consideration.

                                                  Respectfully submitted,

                                                   /s/  Randall W. Jackson
                                                  Randall W. Jackson

CC: All parties