

45 West 29th Street, Suite 303
New York, New York 10001

chaudrylaw.com

March 17, 2020

**VIA ECF**
The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Irfan Amanat*, 15 Cr. 536 (PGG)

Dear Judge Gardephe:

As the Court is aware, we represent defendant Irfan Amanat in the above-referenced matter. We are writing now to make an emergency bail application for Mr. Amanat, who is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn. As will be set forth in more detail below, we respectfully request that Mr. Amanat be released immediately on bail pending sentencing for four important reasons: (1) the MDC is facing an unprecedented health crises posed by the Coronavirus pandemic and the inmates lives are at risk; (2) Mr. Amanat is needed by his aging parents to care for them during this health crisis; (3) the defense believes the correct loss amount will result in a sentencing which may well be below the seventeen months Mr. Amanat has already served in pretrial detention; and (4) Mr. Amanat is exactly the kind of prisoner who should be released to alleviate the health crisis now facing the MDC as there is sufficient property to assure his appearance and he is not a danger to the community. [1]

*Procedural Background*

On October 29, 2018, the Court ordered the detention of Mr. Amanat following his jury conviction on the same date. Since then, Mr. Amanat has remained in custody at the MDC and at present, has served nearly seventeen months. Mr. Amanat has not yet been sentenced and due to the number of outstanding motions pending before this Court, there is no sentencing date scheduled at this time.

*Critical, near-Crisis Situation at MDC*

---

[1] We have sent this letter to the AUSAs in this matter and await their position on our request.

PRIYA CHAUDHRY           PRIYA@CHAUDHRYLAW.COM           212.785.5551

On March 13, 2020, counsel for Omar Amanat, brother and co-defendant of Mr. Amanat, submitted a lengthy and detailed emergency bail application to the Court. ("March 13th letter.") Rather than repeat the facts fully and accurately set forth in that letter, defense counsel adopts the portions of that letter that apply to Mr. Amanat.[2] Further, we expect that this Court has received similar applications from other detained defendants in unrelated cases which attest to the crises now facing inmates at the MDC.

In just the past week, we have all seen the political and health-care responses to the Coronavirus pandemic captiously careen as neither our government nor health care system has been able to predict the shocking and deadly course of the virus in the United States. Nor have we any reliable information regarding the end of the virus—what we do know is that a number of experts have identified New York City as "the next Italy" and have predicted a terrifying number of infections and deaths in the upcoming months. The only fact that all countries, governments, and politicians can agree on is that social isolation must be enforced in order to protect one's health and safety.

Given the confinement conditions at the MDC in general, it is hard to imagine a more virulent incubator for COVID-19. There can be no doubt that a high percentage of inmates at the MDC will become infected, far more than in the greater population. Continued confinement for Mr. Amanat under the circumstances is a form of cruel and unusual punishment.

*The Amanat Parents' condition*

As laid out in the March 13th letter, Mr. Amanat's parents fall squarely into the segment of society that is most at risk of death from COVID-19. Mr. Amanat's father, Dr. Sharif Amanat, suffers from grave medical concerns: he has stage four metastic prostate cancer, diabetes and a heart disease. He was recently hospitalized for all three of these conditions.

Their only safe option is total quarantine in their home to protect themselves from contracting the virus from the public. There is only one available member of their family to care for them at this time, their daughter Sana Amanat, and she must soon relocate to Los Angeles for work. Sana is not only physically caring for her parents, she is also the sole income of the Amanat household. If she is not able to relocate, then she will be forced to either stay in New Jersey to care for her elderly parents and have no income to support them, or to leave them alone so that she can financially support herself and them.

Clearly this Catch-22 must be avoided, and can be avoided, by releasing Mr. Amanat from custody. After any required quarantine period, he would be able to take the place of his sister as the caretaker for his parents—which is the role he occupied for years before his remand.

---

[2] Additionally, just yesterday an opinion article in the New York Times darkly forecasts that jails will quickly become the epicenter of the COVID-19 pandemic.
https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html#click=https://t.co/ZgUU5i8OO4

*Pending Motions*

As this Court knows well, the docket for this matter is heavy with pending motions which, *inter alia,* call into question the integrity of the verdict here, complain of the illegal conduct of the government's confidential informant, and challenge myriad aspects of the conviction. The parties await the Court's ruling on discovery motions, requests for a hearing, and even Rule 29 and 33 motions. The zealous and necessary litigation of these important issues has lengthened the timeline of this matter, and the outcome of many of these issues could significantly impact the conviction and sentence here.

We submit that the serious and constitutional issues triggered by the pending motions are yet additional factors the Court should consider in ruling on this emergency bail motion. These factors also support releasing Mr. Amanat at this time.

*Loss Amount*

The motions pending have not yet touched on the loss amount for Mr. Amanat. To be sure, counsel plans to vigorously challenge the loss amount applicable to Mr. Amanat, and the loss amount calculation for Mr. Amanat will be a mixed question of law, fact, and math. Having presided over the trial, the Court well understands the complexity of the transactions at issue, and the ultimate question of what loss amount—if any—is attributable to Mr. Amanat will likely require expert testimony.

While we reserve the right to supplement the record fully on this issue, we submit that the loss calculation suggested by the Department of Probation significantly exaggerates the true loss actually caused by this defendant. Our preliminary review and research shows that an accurate loss calculation would result in a sentencing guideline range for Mr. Amanat that would be far less than the time he has already served.

Alternatively, even if this Court ultimately sentences Mr. Amanat to a period of incarceration that exceeds seventeen months, it is entirely appropriate to release him now for three reasons. First, by the time the Court sentences Mr. Amanat, we will hopefully all be more educated as to the course of this virus, and the BOP (and government in general) will have had the ability to put into place safeguards to protect our incarcerated citizens. Therefore, continued incarceration for Mr. Amanat at a future date would be uncoupled with a deadly health crisis in the prisons. Second, if this Court deems that Mr. Amanat must face further imprisonment, he would serve the balance of his sentence in an entirely different facility, and hopefully one that could provide him with the health and safety he deserves. Third, surely the BOP is overwhelmed with trying to devise a safe plan while also battling the fire-like spread of the coronavirus in its facilities. Low-security, low-risk inmates such as Mr. Amanat pose a needless burden for the MDC at this time, and releasing Mr. Amanat would benefit the MDC and the inmates who—for security purposes—cannot be released at this time.

*Proposed Bail Package*

  Throughout this case, Mr. Amanat's friends and family have remained steadily at his side. Now they offer you their own homes and personal assurances that Mr. Amanat will remain in his parents' home in New Jersey until the conclusion of this matter. As everyone who knows Mr. Amanat will attest, he poses no risk of flight or danger to the community.[3]

  At this time, we ask that Your Honor release Mr. Amanat under the following conditions:

  A $500,000 bond co-signed by five financially responsible people, and secured by property. The proposed signors and property are—

1. Dr. Saima Sandhu, former employer and close friend of Mr. Amanat
    a. Dr. Sandhu has offered to pledge her home, valued at $1.2 million.
2. Muzna Mirza, a close friend of Mr. Amanat
    a. Ms. Mirza has offered to pledge her home, valued at $840,000.
3. Sana Amanat, sister of Mr. Amanat
    a. Ms. Amanat has offered to pledge her home, valued at $780,000, and has also offered bank assets of approximately $175,000.
4. Sultana Quraishi, aunt of Mr. Amanat
    a. Ms. Quraishi has offered to pledge her home, valued at approximately $750,000.
5. Sarvar Patel, a close friend of Mr. Amanat
    a. Mr. Patel has offered $50,000 in bank assets.

  Should the Court grant this application, we request Mr. Amanat's immediate release and thirty days to comply with the conditions of bail.

  Counsel stands ready to answer any questions. Thank you very much for your attention to this matter.

Very truly yours,<br><br>*[signature]*<br><br>Priya Chaudhry

Cc: All counsel of record (via ECF)

---

[3] It is our understanding that Mr. Amanat surrendered his passport as part of his previous release, and that the Probation Department still retains his passport. As part of this application, he agrees to surrender all travel documents, and apply for no new travel documents.