UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>KALEIL ISAZA TUZMAN,<br><br>Defendant. | **ORDER**<br><br>15 Cr. 536 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

On December 26, 2017 – after a two-month trial – a jury returned a verdict finding Defendant Kaleil Isaza Tuzman guilty of two separate conspiracies to commit securities fraud and of conspiracy to commit wire fraud. (Verdict (Dkt. No. 627); Trial Tr. ("Tr.") 7280-82)[1]

Tuzman moved for a judgment of acquittal or a new trial under Rules 29 and 33 of the Federal Rules of Criminal Procedure. (Tuzman Br. (Dkt. No. 738); Tuzman Supp. Br. (Dkt. No. 999)) In doing so, Tuzman argued, inter alia, that a new trial was warranted due to the Government's failure to turn over Brady and Giglio material. (See generally Tuzman Supp. Br. (Dkt. No. 999))

On May 3, 2021, this Court issued a Memorandum Opinion & Order (the "May 3, 2021 Opinion") denying Tuzman's motion in its entirety. (May 3, 2021 Opinion (Dkt. No. 1145))

---

[1] Citations to page numbers of docketed material correspond to the pagination generated by this District's Electronic Case Files ("ECF") system. Citations to the trial transcript correspond to the pagination generated by the court reporter. Citations to documents filed under seal correspond to PDF pagination of said documents.

On June 16, 2021, Tuzman filed a sealed letter seeking to supplement the record and seeking reconsideration of this Court's May 3, 2021 Opinion. (See June 16, 2021 Def. Ltr. (filed under seal))[2] On June 28, 2021, the Government submitted a letter opposing Tuzman's motion. (See June 28, 2021 Gov't Ltr. (Dkt. No. 1158)) For the reasons stated below, Tuzman's motion for reconsideration will be denied.

## BACKGROUND

The factual and procedural background of this case is set forth at great length in the May 3, 2021 Opinion and will not be repeated here.[3] The Court will discuss only those facts necessary to resolve the instant reconsideration motion.

Tuzman's reconsideration motion is premised on a memorandum of interview concerning the Government's June 2, 2016 proffer session with cooperating witness Gavin Campion (the "Campion MOI"). (See June 16, 2021 Def. Ltr. (filed under seal) at 3; June 16, 2021 Def. Ltr., Ex. A (filed under seal) (Campion MOI); June 28, 2021 Gov't Ltr. (Dkt. No. 1158) at 2) Campion testified as a Government witness at trial, but the Government did not

---

[2] Tuzman explains that his June 16, 2021 letter and accompanying exhibits are being filed under seal to comply with this Court's March 18, 2021 Protective Order. (June 16, 2021 Def. Ltr. (filed under seal) at 1 n.1 (citing Mar. 18, 2021 Protective Order (Dkt. No. 1132) ¶ 5)) In directing the Government to respond to Tuzman's June 16, 2021 letter, the Court also directed the Government to address the sealing issue. (See June 17, 2021 Order (Dkt. No. 1157)) The Government states that it "does not object to the public filing of [Tuzman's June 16, 2021 letter], with the exception of Exhibit A, which is governed by the Protective Order." (June 28, 2021 Gov't Ltr. (Dkt. No. 1158) at 1 n.1) Accordingly, Tuzman's June 16, 2021 letter and Exhibits B and C to that letter will be unsealed and filed on the public docket. Exhibit A will remain sealed pursuant to the March 18, 2021 Protective Order. (See Mar. 18, 2021 Protective Order (Dkt. No. 1132))

[3] Familiarity with this Court's May 3, 2021 Opinion (Dkt. No. 1145) is assumed.

produce the Campion MOI to Tuzman as Section 3500 material prior to trial.[4]  (June 16, 2021 Def. Ltr., Ex. C. (filed under seal) at 2)

The Government contends that its failure to produce the Campion MOI as Section 3500 material "was an unintentional mistake"; that the Campion MOI had been given to paralegals for processing and production; but that the Campion MOI was mistakenly not processed and produced.  (Id. at 2-3)  The Government did not learn of the error until it received Tuzman's March 5, 2021 email.  (Id. at 3)  After receiving Tuzman's email, the Government confirmed to Tuzman's counsel that it had not produced the Campion MOI as Section 3500 material.  (Id.; June 16, 2021 Def. Ltr. (filed under seal) at 3; June 28, 2021 Gov't Ltr. (Dkt. No. 1558) at 2)

In a June 16, 2021 letter, Tuzman moves for reconsideration of this Court's May 3, 2021 Opinion denying his new trial motion, arguing that the Campion MOI constitutes Brady-Giglio material and contains information that is material to Tuzman's defense.  According to Tuzman, the Campion MOI has "unique impeachment value" and "would have fatally undermined Campion's testimony inculpating [Tuzman]."  (June 16, 2021 Def. Ltr. (filed under seal) at 4)  The Government opposes Tuzman's reconsideration motion, arguing that the

---

[4] The United States Postal Inspection Service produced the Campion MOI to Tuzman's co-defendant Irfan Amanat pursuant to a Rule 17(c) subpoena.  (June 16, 2021 Def. Ltr. (filed under seal) at 3; June 28, 2021 Gov't Ltr. (Dkt. No. 1158) at 2; see id. (stating that the Postal Inspection Service produced the Campion MOI to Irfan Amanat on January 8, 2021))  The charges against Irfan Amanat were severed from those brought against Tuzman (See Aug. 9, 2017 Tr. (Dkt. No. 380) at 5), and Irfan Amanat's trial took place on October 22, 2018, ten months after Tuzman's trial ended.  Irfan Amanat shared the Campion MOI with Tuzman.  (June 28, 2021 Gov't Ltr. (Dkt. No. 1158) at 2)  Although the timing of that is not entirely clear from the record, the sharing occurred prior to Tuzman's March 5, 2021 email to the Government, in which Tuzman inquired about why the Campion MOI had not been produced as Section 3500 material, stating that the Campion MOI "would have been favorable to the defense and uniquely damaging to Mr. Campion's credibility."  (June 16, 2021 Def. Ltr. at 3 and Ex. B (filed under seal); June 28, 2021 Gov't Ltr. (Dkt. No. 1158) at 2)

3

Campion MOI does not contain Brady or Giglio material, and that Campion's statements in the Campion MOI were disclosed in other Section 3500 material that was produced to Tuzman's counsel prior to trial.  (See June 28, 2021 Gov't Ltr. (Dkt. No. 1158))

## DISCUSSION

I. **LEGAL STANDARDS**

    A. **Reconsideration Motion**

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court."  Patterson v. United States, No. 04 Civ. 3170 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) (citing McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)).[5]  Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation and quotation marks omitted). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks and citation omitted).

Local Criminal Rule 49.1(d) requires motions for reconsideration to be filed within fourteen days of a Court's determination of the original motion.  See Local Criminal Rule 49.1(d); see also United States v. Lisi, No. 15 CR. 457 (KPF), 2020 WL 1331955, at *1 (S.D.N.Y. Mar. 23, 2020) (noting the time restrictions of Rule 49.1(d) and noting that "courts

---

[5] "The applicable standard for a reconsideration motion in a criminal case is the same as the civil standard under Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York."  United States v. Kerik, 615 F. Supp. 2d 256, 276 n.27 (S.D.N.Y. 2009).

retain the discretion to excuse an untimely filing"); id. at *1 n.2 (noting that generally "good cause" is necessary to "excuse an untimely filing" (citation and quotation marks omitted)).

### B. New Trial Motion

Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "Rule 33 confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). Courts may not only grant a Rule 33 motion where the evidence is legally insufficient, see United States v. Leslie, 103 F.3d 1093, 1100-01 (2d Cir. 1997), but also where a jury's verdict is contrary to the weight of the evidence. See United States v. Ferguson, 246 F.3d 129, 136 (2d Cir. 2001) ("We cannot say that the district judge abused her discretion when she concluded that the weight of the evidence showed that [the defendant] was an outside hit man and not a [gang] member acting to further that membership."). Moreover, a district court considering a Rule 33 motion need not view the evidence in the light most favorable to the Government. United States v. Lopac, 411 F. Supp. 2d 350, 359 (S.D.N.Y. 2006) (citing United States v. Ferguson, 49 F. Supp. 2d 321, 323 (S.D.N.Y. 1999), aff'd, 246 F.3d 129 (2d Cir. 2001)).

Under Rule 33, "[i]n the exercise of its discretion, the court may weigh the evidence and credibility of witnesses." United States v. Autuori, 212 F.3d 105, 120 (2d Cir. 2000). However, a "district court must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." Ferguson, 246 F.3d at 133 (citation, quotation marks, and alteration marks omitted). "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon

the jury function of credibility assessment." Id. at 133-34 (citation, quotation marks, and alteration marks omitted). Such "exceptional circumstances" may exist "where testimony is patently incredible or defies physical realities." Id. at 134 (citation and quotation marks omitted).

      C.      **The Government's *Brady/Giglio* Disclosure Obligations**

"The government has a duty to disclose evidence favorable to the accused when it is material to guilt or punishment." United States v. Madori, 419 F.3d 159, 169 (2d Cir. 2005) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). To prove a Brady violation, a defendant must establish that (1) the evidence at issue is "favorable to the accused"; (2) the evidence was "suppressed by the State, either willfully or inadvertently"; and (3) "prejudice . . . ensued" from the lack of disclosure such that it is "material." Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001) (describing the three components of a Brady violation).

As to the first element, evidence that is "favorable to the accused" "includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness," that is, Giglio material. Coppa, 267 F.3d at 139 (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).

As to the second element, a defendant must show that the Government suppressed evidence, meaning that the Government violated its "affirmative duty to disclose favorable evidence known to it." United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995). "[T]he government cannot be required to produce that which it does not control and never possessed or inspected." United States v. Hutcher, 622 F.2d 1083, 1088 (2d Cir. 1980) (citation and quotation marks omitted). A prosecutor, however, is "presumed . . . to have knowledge of all information

6

gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).

As to prejudice and materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Turner v. United States, 137 S. Ct. 1885, 1893 (2017) (citation and quotation marks omitted). "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." Id. (citation and quotation marks omitted); see also Strickler, 527 U.S. at 281 ("[T]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."). "Where the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be material than if the evidence of guilt is thin." United States v. Gil, 297 F.3d 93, 103 (2d Cir. 2002).

"Where impeachment evidence is at issue, such evidence generally is material when 'the witness at issue supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.'" United States v. Teman, 465 F. Supp. 3d 277, 335 (S.D.N.Y. 2020) (quoting Payne, 63 F.3d at 1210). "'In contrast, a new trial is generally not required when the testimony of the witness is "corroborated by other testimony" or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'" Id. (quoting Payne, 63 F.3d at 1210).

Where a defendant seeks a new trial based on the suppression of Section 3500 material, the applicable legal standard "'depends on whether the suppression was deliberate or inadvertent.'" United States v. Zhao Wu Chen, No. 05 CR. 0045 (WHP), 2008 WL 11438038, at *1 (S.D.N.Y. July 2, 2008), aff'd, 322 F. App'x 43 (2d Cir. 2009) (quoting United States v. Hilton, 521 F.2d 164, 166 (2d Cir. 1975)); see also Teman, 465 F. Supp. 3d at 335-36 ("Like the Brady materiality requirement, the failure to disclose . . . withheld Jencks Act material must be deemed harmless where there is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." (citation, quotation marks, and alteration marks omitted)).

> If the government deliberately suppresses evidence or ignores evidence of such high value that it could not have escaped its attention, a new trial is warranted if the evidence is merely material or favorable to the defense. But if the government's failure to disclose is inadvertent, a new trial is required only if there is a significant chance that this added item, developed by skilled counsel, could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction.

Hilton, 521 F. 2d at 166 (footnote citation omitted); see also United States v. Jackson, 345 F.3d 59, 77 (2d Cir. 2003) ("Where . . . the government's Jencks Act violation is inadvertent, the defendant must establish that there is a significant chance that the added item would instill a reasonable doubt in a reasonable juror.  Put another way, the failure to disclose may be disregarded if there is no reasonable probability that had the evidence been disclosed, the result would have been different.  A reasonable probability, in this context, means a probability sufficient to undermine confidence in the outcome.  This language closely tracks the materiality test applied under Brady and Giglio, and derives from the same sources." (citations and quotation marks omitted)).

## II.     ANALYSIS

As an initial matter, Tuzman's reconsideration motion is untimely under Local Criminal Rule 49.1(d).  See Lisi, 2020 WL 1331955, at *1; Local Criminal Rule 49.1(d).  Tuzman first raised an issue concerning the Campion MOI in a June 1, 2021 letter to the Court (June 1, 2021 Def. Ltr. (Dkt. No. 1154)), well more than fourteen days after this Court's May 3, 2021 Opinion denying his post-trial motions.  (May 3, 2021 Opinion (Dkt. No. 1145))  And Tuzman's counsel knew of the Campion MOI at least by March 5, 2021, when counsel sent an email to the Government concerning the failure to produce the Campion MOI as Section 3500 material, asserting that the Campion MOI "would have been favorable to the defense and uniquely damaging to Mr. Campion's credibility."  (June 16, 2021 Def. Ltr. at 3 and Ex. B (filed under seal))

Tuzman has provided no cogent explanation for his failure to raise this issue with the Court in March 2021, or at least within two weeks of this Court's May 3, 2021 decision denying his post-trial motions.  Tuzman's failure to timely raise this issue – standing alone – requires denial of his motion.  The reconsideration motion also fails on its merits, however.

The Campion MOI is not exculpatory.  See Coppa, 267 F.3d at 139.  Indeed, the Campion MOI is inculpatory of Tuzman.  In his June 2, 2016 proffer session, Campion told the Government that Tuzman had discussed the need to pay off the "elephant" – the ballooning accounting fraud at KIT Digital – and that Tuzman had hidden material information from auditors, including the "roundtripping" transactions through which Tuzman and his co-conspirators committed accounting fraud at KIT Digital.  (See generally June 16, 2021 Def. Ltr, Ex. A (filed under seal) (Campion MOI))

Considered as Giglio impeachment material, "there is [no] reasonable probability that, had the [Campion MOI] been disclosed, the result of the proceeding would have been different." Turner, 137 S.Ct. at 1893; see also Strickler, 527 U.S. at 281; Jackson, 345 F.3d at 77.[6]

Tuzman argues, however, that the Campion MOI "had unique impeachment value, and . . . would have fatally undermined Campion's testimony inculpating . . . Tuzman in the charged accounting fraud scheme." (June 16, 2021 Def. Ltr. (filed under seal) at 4) According to Tuzman, the Campion MOI shows that

> Campion attempted to inculpate numerous directors and employees at KIT Digital in the fraud scheme – individuals that he never identified as his co-conspirators at trial. The clear import of this evidence is that, in an effort to obtain a cooperation agreement, Campion was willing to incriminate anybody whom he thought the government might be interested in, whether or not they had engaged in criminal wrongdoing.

(Id.) Tuzman asserts that during the June 2, 2016 proffer session, Campion implied that members of KIT Digital's board of directors and KIT Digital's interim CEO participated in, or had knowledge of, the accounting fraud at KIT Digital, while at trial Campion made no such claim. (Id. at 4-5 (citing Trial Tr. 4128, 4618, 4751)) According to Tuzman, disclosure of the Campion MOI "would have led to critical additional questions of this and other witnesses." (Id. at 5)

---

[6] The Court concludes that the failure to disclose the June 2, 2016 Campion MOI was inadvertent. The Government's production in this case was enormous, amounting to millions of pages of documents and many hundreds of gigabytes of data. (See Nov. 14, 2016 Def. Ltr. (Dkt. No. 156) at 2 (citation omitted)) Pursuant to 18 U.S.C. § 3500, the Government made productions concerning "32 witnesses spanning over 1,100 pages of dense typewritten and hand-written notes." (Oct. 10, 2017 Def. Br. (Dkt. No. 479) at 7, 10) Campion participated in more than twenty-two proffer sessions with the Government; the Government produced Section 3500 material for all interviews other than the June 2, 2016 proffer session. (See June 16, 2021 Def. Ltr. (filed under seal) at 5)

The Campion MOI does not indicate, however, that Campion – at the June 2, 2016 proffer session – told the Government that the KIT Digital board was involved in the accounting fraud at KIT Digital, or that the board was witting of the fraud. (See generally June 16, 2021 Def. Ltr., Ex. A (filed under seal)) Instead, Campion told the Government that he "tried to confront the board of directors," telling one board member that Tuzman's behavior was "ridiculous," and that Tuzman "was instructing people to do things that were improper." (Id. at 10) Campion did not tell the Government that he informed the board member that outright fraud was being committed at KIT Digital, however. (Id.) And in response to Campion's remarks, the board member merely said that one "know[s] what happens if we stand up to [Tuzman]." (Id.)

At the June 2, 2016 proffer session, Campion said that he had told another board member that Tuzman was instructing KIT Digital employees to do things that they "should not be doing." (Id.) The board member told Campion that it was "[C]ampion[']s problem to fix." (Id.)

Campion also reported that, at a board meeting, he told the board that there was "a problem and that the operation team isn't happy." A board member said, "[T]uzman's behavior isn't good," but Tuzman "shut the conversation down." (Id. at 11)

Campion also told the Government that he had "assumed the board knew what was going on," and that "in hindsight" there were examples of board members not inquiring about questionable activity. (Id.)

In sum, Campion's remarks at the June 2, 2016 proffer session concerning the KIT Digital board's knowledge of the ongoing accounting fraud at KIT Digital were equivocal.

As to KIT Digital's interim CEO, Campion told the Government that KIT Digital's chief financial officer – Robin Smyth – had told Campion that Smyth had told the

interim CEO "everything" about the accounting fraud at KIT Digital. (Id. at 13-14) According to Smyth, the interim CEO "already knew some of [the] things," and had himself considered using phony software licenses to facilitate accounting fraud. (Id. at 14) Smyth told Campion that he and the interim CEO were working together to "sell off the elephant," and that the interim CEO had done "stuff" and "was in a heap of shit." (Id. at 15)

While nothing in the Campion MOI is exculpatory of Tuzman, the Campion MOI contains information that could have been used to cross-examine Campion. This information was provided to Tuzman prior to trial, however, in the form of other Section 3500 material for Campion produced by the Government. For example, Section 3500 material for a June 3, 2016 Campion proffer session reveals that Campion told the Government that Smyth believed that "'there was a culture of fraud' at KIT [Digital]," and that "[t]here was a strong sense that the board was in on it, which were the board members associated to kit media investors." (June 28, 2021 Gov't Ltr., Ex. 1 (filed under seal) at 3, 5) And Section 3500 material for an August 15, 2017 Campion proffer session indicates that Campion told the Government that Smyth had said that the interim CEO was "in a heap of shit," and that the interim CEO was aware that money booked as restructuring charges had been roundtripped. (Id., Ex. 2 (filed under seal) at 9, 14 (handwritten notes, dated August 15, 2017, regarding Campion)) And Section 3500 material for an August 17, 2017 Campion proffer session indicates that Campion told the Government that the interim CEO "kn[e]w all about it," which Campion understood to mean that the interim CEO knew that "there were fraudulent issues in [the] company." (Id., Ex. 3 (filed under seal) at 3)

In sum, Campion's June 2, 2016 remarks concerning the KIT Digital board and the company's interim CEO – as reflected in the Campion MOI – are cumulative of other Campion Section 3500 material that the Government produced to Tuzman prior to trial.

Cumulative impeachment material cannot serve as a basis for granting a new trial under Fed. R. Crim. P. 33.  United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993) ("A district court learning of newly discovered evidence after a conviction will only grant a new trial pursuant to Rule 33 if the evidence is material, noncumulative, and would probably lead to an acquittal." (citation and quotation marks omitted)); see also United States v. Persico, 645 F.3d 85, 111 (2d Cir. 2011) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable . . . , the undisclosed evidence may properly be viewed as cumulative, and hence not material, and not worthy of a new trial."  (citation and quotation marks omitted));United States v. Spinelli, 551 F.3d 159, 165 (2d Cir. 2008) ("Impeaching information is less likely to be considered material when it merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.  That is, if the information withheld is merely cumulative of equally impeaching evidence introduced at trial, so that it would not have materially increased the jury's likelihood of discrediting the witness, it is not material." (citation and quotation marks omitted)).

       Moreover, as explained in the May 3, 2021 Opinion (see May 3, 2021 Opinion (Dkt. No. 1145) at 20-27, 111-125), Campion did not "supply the only evidence linking" Tuzman to the charged offenses.  Teman, 465 F. Supp. 3d at 335 (citation and quotation marks omitted).  To the contrary, Campion was a secondary witness at trial.  Robin Smyth – KIT Digital's former chief financial officer – was the key witness for purposes of the accounting fraud charges brought against Tuzman, and Smyth's testimony was fully corroborated by numerous emails and other documents introduced at trial.  (See May 3, 2021 Opinion (Dkt. No.

1145) at 20-27, 111-125)[7]  As the Court stated in the May 3, 2021 Opinion, "the evidence of Tuzman's guilt on Count Six[– the Kit Digital accounting fraud charge –] was overwhelming" (id. at 111), and that evidence did not turn on Campion.

## CONCLUSION

For the reasons stated above, Tuzman's motion for reconsideration (see June 16, 2021 Def. Ltr. (filed under seal)) of this Court's May 3, 2021 Opinion is denied.

Dated: New York, New York
       July 27, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[7] In a footnote, Tuzman states that he is seeking "reconsideration of the Court's factual finding that the 'the relevant information' in the spreadsheet produced by Kevin Cronin to the government had been produced to . . . Tuzman by the [U.S. Securities and Exchange Commission ('SEC')]." (June 16, 2021 Def. Ltr. (filed under seal) at 2 n.4)  According to Tuzman, "[i]t is undisputed by the government that the SEC produced a different version spreadsheet . . . ." (Id. (citation omitted) (emphasis in original))  The Court addressed this argument in its May 3, 2021 Opinion (see May 3, 2021 Opinion (Dkt. No. 1145) at 113-18 (discussing Cronin's witness statements and related documents)), and Tuzman has provided no basis to disturb the Court's ruling.  Acknowledging that the spreadsheets are not identical, Tuzman has not demonstrated that he did not receive "the relevant information" through the SEC production.

Tuzman also asks "that the Court order the government to produce a log of all individuals interviewed by the government and the date of those interviews, so that the Court and the defense can confirm that no other witness statements have been improperly withheld." (June 16, 2021 Def. Ltr. (filed under seal) at 7)  The Government represents that "based on [its] review of its files, the Government does not believe there are any other MOIs, FBI 302s, or other notes that were inadvertently not produced in advance of the 2017 trial." (June 28, 2021 Gov't Ltr. (Dkt. No. 1158) at 2 n.3)  Accordingly, Tuzman's application is denied.